1  COOLEY LLP
   TERESA MICHAUD (296329)
2  (tmichaud@cooley.com)
   KELTON N. MURPHY (340366)
3  (kbasirico@cooley.com)
   ELLIE R. DUPLER (337607)
4  (edupler@cooley.com)
   355 South Grand Avenue, Suite 900
5  Los Angeles, California  90071
   Telephone:     +1 213 561 3250
6  Facsimile:     +1 213 561 3244

7  COOLEY LLP
   JINYOUNG LEE (359885)
8  (jinyoung.lee@cooley.com)
   3 Embarcadero Center, 20th Floor
9  San Francisco, California 94111
   Telephone:     +1 415 693 2000
10 Facsimile:     +1 415 693 2222

11
   Attorneys for Defendant
12 GOOGLE LLC

13                  UNITED STATES DISTRICT COURT

14      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

15

16
   PVC FENCE WHOLESALE, LLC,              Case No. 5:25-cv-05480-PCP
17 Individually and on Behalf of All Others
   Similarly Situated,                    **DEFENDANT GOOGLE LLC'S NOTICE OF
18                                        MOTION AND MOTION TO DISMISS AND
                       Plaintiff,         COMPEL ARBITRATION**
19
            v.                            Date:        December 4, 2025
20                                        Time:        10:00 a.m.
   GOOGLE LLC, a Delaware LLC,            Dept:        8
21                                        Judge:       Hon. P. Casey Pitts
                       Defendant.
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

I.   INTRODUCTION ............................................................................................................ 2

II.  FACTUAL BACKGROUND .......................................................................................... 2

    A.  The Parties ............................................................................................................. 2

    B.  The Google Ads Platform ...................................................................................... 2

    C.  The Google Ads Terms of Service Require Arbitration of Disputes ..................... 3

    D.  Plaintiff Accepted the Terms and Never Opted Out of Arbitration ...................... 4

III. LEGAL STANDARD ...................................................................................................... 5

IV.  ARGUMENT ................................................................................................................... 6

    A.  The Court Should Dismiss This Action in Favor of Arbitration ............................ 6

        1.  The Parties Entered into a Binding Agreement to Arbitrate. ..................... 6

            a.  Plaintiff accepted the Arbitration Provision. .................................. 7

        2.  The Dispute is Covered by the Arbitration Provision. ............................... 7

        3.  The Terms are Enforceable. ....................................................................... 8

    B.  In The Alternative, The Court Should Dismiss This Action Because the Complaint Fails to State a Single Actionable Claim ............................................ 11

        1.  Plaintiff Fails to State a Claim for Breach of Contract. ........................... 11

            a.  Plaintiff has not identified any provision of the Terms Google allegedly breached. ......................................................... 11

            b.  Plaintiff does not allege an actual breach of the Terms. ............... 11

            c.  Google's help center pages are not an enforceable contract. ........ 12

            d.  Plaintiff fails to allege contract damages. ..................................... 13

        2.  Plaintiff Lacks Article III Standing. ........................................................ 14

        3.  Plaintiff Fails to State a Claim for Breach of the Implied Covenant. ....... 16

        4.  Plaintiff Cannot State a Quasi-Contract Claim. ....................................... 16

        5.  Plaintiff Lacks Standing to Bring a CLRA Claim. ................................... 17

        6.  Plaintiff Fails to State a Claim under the FAL. ......................................... 18

        7.  Plaintiff Fails to State a Claim Under the UCL. ....................................... 20

            a.  Plaintiff lacks UCL standing. ....................................................... 20

            b.  Plaintiff fails to allege unlawful conduct. .................................... 21

            c.  Plaintiff fails to allege a duty to disclose. .................................... 22

            d.  Plaintiff fails to allege unfair conduct. ......................................... 22

        8.  Plaintiff Fails to State a Claim for Declaratory Relief ............................. 24

V.   CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajamian v. CantorCO2e, L.P.*,
203 Cal. App. 4th 771 (2012)..................................................................................... 9

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ................................................................................................. 25

*Amtower v. Photon Dynamics, Inc.*,
158 Cal. App. 4th 1582 (2008)................................................................................. 13

*Animal Legal Def. Fund v. Mendes*,
160 Cal. App. 4th 136 (2008)................................................................................... 21

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal.4th 83 (2000) .............................................................................................. 8, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................. 6, 12

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)................................................................................................. 25

*B.D. v. Blizzard Ent., Inc.*,
76 Cal. App. 5th 931 (2022)....................................................................................... 7

*Beecher v. Google N. Am. Inc.*,
2018 WL 4904914 (N.D. Cal. Oct. 9, 2018)...................................................... 11, 13

*Bell v. City of Kellogg*,
922 F.2d 1418 (9th Cir. 1991).................................................................................. 15

*Benson v. Casa de Capri Enters., LLC*,
980 F.3d 1328 (9th Cir. 2020)................................................................................... 5

*Berlanga v. Univ. of S.F.*,
100 Cal. App. 5th 75 (2024), *reh'g denied* (Mar. 15, 2024).............................. 16, 17

*Berryman v. Merit Prop. Mgmt., Inc.*,
152 Cal. App. 4th 1544 (2007)................................................................................. 22

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009).................................................................................... 15

*Boynton v. Reliance Standard Life Ins. Co.*,
2015 WL 11570935 (S.D. Cal. Jan. 29, 2015) ........................................................ 14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Cal. Crane Sch., Inc. v. Google LLC*,
   621 F. Supp. 3d 1024 (N.D. Cal. 2022) ................................................................. 8

*Cal. Crane Sch., Inc. v. Google LLC*,
   722 F. Supp. 3d 1026 (N.D. Cal. 2024) ................................................................. 8

*Cal. Grocers Ass'n, Inc. v. Bank of Am.*,
   22 Cal. App. 4th 205 (1994) ................................................................................. 9

*Campbell v. eBay, Inc.*,
   2013 WL 4764526 (N.D. Cal. Sept. 5, 2013) ........................................................ 18

*Crittenden v. Apple, Inc.*,
   2022 WL 2132224 (N.D. Cal. June 14, 2022) ....................................................... 14

*D'Arrigo Bros. of Cal. v. United Farmworkers of Am.*,
   224 Cal. App. 4th 790 (2014) ............................................................................... 11

*Dana v. Hershey Co.*,
   180 F. Supp. 3d 652 (N.D. Cal. 2016) .................................................................. 19

*Daugherty v. Am. Honda Motor Co.*,
   144 Cal. App. 4th 824 (2006) ............................................................................... 22

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ................................................................................ 19

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985) .............................................................................................. 24

*Dohrmann v. Intuit, Inc.*,
   823 F. App'x 482 (9th Cir. 2020) ........................................................................... 7

*Drum v. San Fernando Valley Bar Ass'n*,
   182 Cal. App. 4th 247 (2010) ......................................................................... 23, 24

*Ehret v. Uber Techs., Inc.*,
   68 F. Supp. 3d 1121 (N.D. Cal. 2014) ............................................................. 13, 14

*Epic Sys. Corp. v. Lewis*,
   584 U.S. 497 (2018) .............................................................................................. 25

*Feitelson v. Google Inc.*,
   80 F. Supp. 3d 1019 (N.D. Cal. 2015) .................................................................. 23

*Frances T. v. Village Green Owners Ass'n*,
   42 Cal.3d 490 (1986) ............................................................................................ 12

Cooley LLP
Attorneys at Law
San Francisco

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3
*Gardiner v. Walmart Inc.*,
   2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ........................................................... 9

4
*Glaude v. Macy's Inc.*,
   2012 WL 6019069 (N.D. Cal. Dec. 3, 2012) ........................................................... 5

5

6
*Gonzalez v. Comenity Bank*,
   2019 WL 5596800 (E.D. Cal. Oct. 30, 2019) ......................................................... 25

7
*Gonzalez v. Planned Parenthood of L.A.*,
   759 F.3d 1112 (9th Cir. 2014) ................................................................................. 6

8

9
*Harris v. Tap Worldwide, LLC*,
   248 Cal. App. 4th 383 ............................................................................................. 6

10

*Hawkins v. Comparet-Cassani*,
   251 F.3d 1230 (9th Cir. 2001) ............................................................................... 15

11

12
*Houtchens v. Google LLC*,
   649 F. Supp. 3d 933 (N.D. Cal. 2023) ................................................................... 10

13

14
*Illumina, Inc. v. Ariosa Diagnostics, Inc.*,
   2014 WL 3897076 (N.D. Cal. Aug. 7, 2014) .......................................................... 14

15

16
*In re iPhone Application Litig.*,
   2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ....................................................... 15

17

18
*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................................... 19

19
*Keebaugh v. Warner Bros. Ent. Inc.*,
   100 F.4th 1005 (9th Cir. 2024) ................................................................................ 7

20

21
*Klein v. Chevron U.S.A., Inc.*,
   202 Cal. App. 4th 1342 (2012) .............................................................................. 17

22
*Konik v. Time Warner Cable*,
   2010 WL 11549435 (C.D. Cal. July 19, 2010) ....................................................... 21

23

24
*Kulp v. Munchkin, Inc.*,
   678 F. Supp. 3d 1158 (C.D. Cal. 2023) ............................................................. 19, 20

25

26
*Lee v. Ticketmaster LLC*,
   817 F. App'x 383 (9th Cir. 2020) ............................................................................ 7

27

28
*Lhotka v. Geographic Expeditions, Inc.*,
   181 Cal. App. 4th 816 (2010) ................................................................................ 10

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
   363 F.3d 1010 (9th Cir. 2004)..................................................................................... 6

4

*Loewen v. Lyft, Inc.*,

5

   129 F. Supp. 3d 945 (N.D. Cal. 2015) ....................................................................... 5

6

*Lopez v. Nissan N. Am., Inc.*,
   201 Cal. App. 4th 572 (2011)..................................................................................... 19

7

*Low v. LinkedIn Corp.*,

8

   900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................................... 13

9

*Martinez v. Welk Grp., Inc.*,

10

   907 F. Supp. 2d 1123 (S.D. Cal. 2012) .................................................................... 21

11

*McDonald v. John P. Scripps Newspaper*,
   210 Cal. App. 3d 100 (1989)..................................................................................... 14

12

*Miron v. Herbalife Int'l, Inc.*,

13

   11 F. App'x 927 (9th Cir. 2001) ......................................................................... 11, 12

14

*Mohammed v. Uber Techs., Inc.*,

15

   848 F.3d 1201 (9th Cir. 2016)................................................................................... 8, 9

16

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
   460 U.S. 1 (1983) .................................................................................................. 5, 24

17

*Murphy v. Twitter, Inc.*,

18

   60 Cal. App. 5th 12 (2021)........................................................................................... 8

19

*Nelson v. Dual Diagnosis Treatment Ctr., Inc.*,
   77 Cal. App. 5th 643 (2022)....................................................................................... 10

20

*Norcia v. Samsung Telcomms. Am., LLC*,

21

   2015 WL 4967247 (N.D. Cal. Aug. 20, 2015)..................................................... 19, 20

22

*Perez v. Nidek Co.*,

23

   711 F.3d 1109 (9th Cir. 2013).................................................................................... 15

24

*Person v. Google, Inc.*,

25

   2007 WL 832941 (N.D. Cal. Mar. 16, 2007)............................................................. 18

26

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583 (2008)................................................................................... 21

27

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev., LLC*,

28

   55 Cal.4th 223 (2012) ............................................................................................. 6, 8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Prager Univ. v. Google LLC*,
    2018 WL 1471939 (N.D. Cal. Mar. 26, 2018) ........................................................................ 6

*Racine & Laramie, Ltd. v. Cal. Dep't of Parks & Recreation*,
    11 Cal. App. 4th 1026 (1992) .............................................................................................. 16

*Ramirez v. Charter Commc'ns. Inc.*,
    16 Cal.5th 478 (2024) ........................................................................................................... 8

*Ramos v. Super. Ct.*,
    28 Cal. App. 5th 1042 (2018) ............................................................................................... 7

*Reilly v. Apple Inc.*,
    2022 WL 1215305 (N.D. Cal. Apr. 25, 2022) ..................................................................... 22

*Roderick v. Mazzetti & Assocs.*,
    2004 WL 2554453 (N.D. Cal. Nov. 9, 2004) ...................................................................... 10

*Rodriguez v. Google LLC*,
    2021 WL 6621070 (N.D. Cal. Aug. 18, 2021) .................................................................... 13

*Rodriguez v. Wells Fargo Bank, N.S.*,
    2019 WL 13472212 (N.D. Cal. Jan. 24, 2019) ................................................................... 22

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985) ............................................................................................... 19

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (2020) ........................................................................................ 18, 22

*Shearson/Am. Express, Inc. v. McCahon*,
    482 U.S. 220 (1987) ............................................................................................................... 5

*Shell Gulf of Mexico, Inc. v. Ctr. for Biological Diversity, Inc.*,
    771 F.3d 632 (9th Cir. 2014) ............................................................................................... 24

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    93 Cal. App. 4th 700 (2001) .......................................................................................... 21, 22

*Snapkeys, Ltd. v. Google LLC*,
    442 F. Supp. 3d 1196 (N.D. Cal. 2020) .............................................................................. 16

*Song Fi, Inc. v. Google, Inc.*,
    2016 WL 1298999 (N.D. Cal. Apr. 4, 2016) ...................................................................... 18

*Soriano v. Countrywide Home Loans, Inc.*,
    2011 WL 2600759 (N.D. Cal. June 30, 2011) .................................................................... 23

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Spiegler v. Home Depot U.S.A., Inc.*,
    552 F. Supp. 2d 1036 (C.D. Cal. 2008), *aff'd* 349 F. App'x 174 (9th Cir. 2009)...................23

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ........................................................................................ 14, 15

*Stewart v. Electrolux Home Prods., Inc.*,
    304 F. Supp. 3d 894 (E.D. Cal. Jan. 9, 2018) ............................................................ 19

*Suchard v. Sonoma Academy*,
    109 Cal. App. 5th 1089 (2025)............................................................................... 21

*Thompson v. Isagenix Int'l LLC*,
    849 F. App'x 712 (9th Cir. 2021) .............................................................................. 5

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ........................................................................................ 14, 15

*Trudeau v. Google LLC*,
    349 F. Supp. 3d 869 (N.D. Cal. 2018) *aff'd* 816 F. App'x 68 (9th Cir. 2020) .................. 7, 10

*Twaite v. Allstate Ins. Co.*,
    216 Cal. App. 3d 239 (1989)................................................................................... 11

*United States v. Google LLC*,
    747 F. Supp. 3d 1 (D.D.C. 2024) ............................................................................ 23

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017)................................................................................. 20

*Veera v. Banana Republic, LLC*,
    6 Cal. App. 5th 907 (2016)..................................................................................... 18

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2019 WL 4581340 (N.D. Cal. Sept. 20, 2019) ........................................................ 16

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................................... 14

*Woods v. Google Inc.*,
    2011 WL 3501403 (N.D. Cal. Aug. 10, 2011).......................................................... 13

*Yoshida v. Vista Energy Mktg. LP*,
    2022 WL 88505 (E.D. Cal. Jan. 6, 2022)................................................................... 9

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ................................................................... 11

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- vii -

**GOOGLE LLC'S MOTION TO DISMISS**
**5:25-CV-05480**

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

9 U.S.C. § 2 ............................................................................................................ 5, 25

28 U.S.C. § 2201(a) ..................................................................................................... 24

Cal. Civ. Code
§ 1281 ................................................................................................................... 25
§ 1761(d) ............................................................................................................... 17
§ 1770(a) ............................................................................................................... 17

Fed. R. Civ. P.
9(b) ....................................................................................................................... 19
12(b)(1) ................................................................................................................... 5
12(b)(6) .............................................................................................................. 1, 5

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- viii -

**GOOGLE LLC'S MOTION TO DISMISS**
**5:25-CV-05480**

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT, on December 4, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable P. Casey Pitts, at the United States District Court for the Northern District of California, San Jose Division, 280 South 1st Street, 4th Floor, Courtroom 8, San Jose, California, 95113, Defendant Google LLC ("Google") will and hereby does move this Court for an order compelling Plaintiff PVC Fence Wholesale, LLC ("Plaintiff") to arbitrate before the American Arbitration Association ("AAA") each and every claim set forth in the Complaint, pursuant to the Parties' agreement to arbitrate, and dismissing the Complaint in its entirety or, alternatively, staying this action pending arbitration. Google will also and hereby does move for an order in the alternative dismissing Plaintiff's Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

First, under well-established law, the arbitration provision and class action waiver in Google's Advertising Program Terms (the "Terms") are enforceable. The Court's inquiry can end there. Indeed, considering the strong public policy favoring arbitration, Plaintiff's claims cannot proceed in this forum, and this action should be dismissed with Plaintiff's individual claims compelled to arbitration before the AAA. This threshold issue is dispositive, and mandates dismissal or a stay without reaching the merits.

Second, and as a separate and independent ground for dismissal, the Complaint fails to state an actionable claim for relief on any of Plaintiff's seven causes of action, as Plaintiff merely alleges potential harm without pleading that it personally suffered any injury. Moreover, Plaintiff does not—and cannot—identify a single term in the Parties' contract that Google purportedly breached. Nor does Plaintiff allege any affirmative misrepresentations or any unlawful, unfair, or fraudulent conduct prohibited by California's False Advertising Law and Unfair Competition Law, or otherwise sufficient to confer standing under California's Consumer Legal Remedies Act.

This Motion is based on the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and Declarations of Teresa Michaud and Armete Mobin, any other written or oral argument submitted in connection with this Motion, and any other materials properly before the Court.

## Memorandum Of Points And Authorities[1]

### I.    INTRODUCTION

Plaintiff is a business that utilizes Google's pay-per-click advertising services and is suing to obtain more information from Google than Google is contractually obligated to provide. To purchase ads on Google's advertising platform, Plaintiff agreed to Google's Advertising Program Terms, thereby agreeing to arbitrate this dispute with Google on an individual basis. Plaintiff was also put on notice that Google would provide a report of the search terms and phrases that most often lead users to Plaintiff's ads and website, but *not all* search terms and phrases. Notwithstanding, Plaintiff filed its claims in court and alleged falsely that Google breached the Parties' contract and engaged in unfair and deceptive trade practices by not giving it *all* the information it desired. But, since Plaintiff cannot unilaterally alter the terms of the parties' agreement and expand Google's obligations, the Court should dismiss its complaint or send it to arbitration for an arbitrator to make that determination.

### II.    FACTUAL BACKGROUND

#### A.    The Parties

Google operates an online advertising platform, known as "Google Ads," which allows businesses to purchase targeted advertisements on a variety of websites and apps. Plaintiff is a Florida-based company that sells fencing materials to retailers, contractors, and consumers. (Compl. ¶ 116.) Since 2011, Plaintiff has purchased ads on the Google Ads platform. (Mobin Decl. ¶ 16.) It currently operates one Google Ads Account: 784-142-6301, created on September 19, 2011 (the "Account"). (*Id*. ¶¶ 15, 17.)

#### B.    The Google Ads Platform

Businesses that utilize Google Ads' "pay-per-click" service choose "keywords" they wish to "bid" on, and when users type a relevant search term or phrase into Google Search, Google holds an auction (instantaneously) for the advertising space on the search results page. (Compl. ¶ 24.) The matching or "winning" bid is the one whose ads are shown to the user. (*Id*.) If a user clicks on

---

[1] All "Mobin Decl." cites are to the Declaration of Armete Mobin. All "Ex." cites are to the Exhibits attached to the Mobin Decl. Unless otherwise noted, all emphases are added, all quotations are cleaned up, and all internal citations are omitted.

the business's ad, Google charges the business – i.e., "the advertiser pays *per click*." (*Id.* ¶ 46.) When selecting keywords, businesses choose among three levels of "matching": (1) "broad match" – which places ads in response to "searches that are related" to a keyword but "don't contain the direct meaning" of the keyword; (2) "phrase match" – which places ads in response to "searches that include the meaning" of a keyword that "can be implied"; and (3) "exact match" – which places ads in response to "searches that have the same meaning or same intent as the keyword." (*Id.* ¶¶ 32-39.) In other words, advertisers—not Google—"identify specific search parameters on which they wish to bid[.]" (*Id.* ¶ 32.)

Although not required under its Advertising Program Terms (the "Terms"), Google Ads provides businesses with a "Search Query Report," which helps businesses understand which keyword bids had the best click results, and in turn, helps optimize their keyword selection for future bids. (*Id.* ¶ 42.) The Search Query Report shows the search terms that a "significant number of users searched for[.]" (*Id.* ¶ 68.) Where "only one or a small handful" of search terms triggered an ad placement, those search terms are not necessarily disclosed in the Search Query Report and are often "grouped within" a category labeled "other search terms[.]" (*Id.* ¶ 67-68.) For example, if a user's search term is uncommon or contains long, detailed sentences, those may not be individually reported on the Search Query Report due to the idiosyncratic or highly personal nature of the query. Instead, such queries are grouped under "other search terms." (*Id.* ¶ 67.)

### C.    The Google Ads Terms of Service Require Arbitration of Disputes

When advertisers sign up for Google Ads, they are shown the Terms and are required to agree to the Terms by clicking a button labeled "Accepted" located under the Terms. (Mobin Decl. ¶ 3.) When there is a material update to the Terms, advertisers are required to accept the updated Terms and may not continue to use Google's services until they have done so. (*Id.* ¶¶ 3-4.) Those Terms "govern Customer's participation in Google's advertising programs and services," and make clear that—absent an express opt-out—advertisers must agree to the arbitration of disputes. (*Id.*, Ex. A.) Specifically, set out in bold in the first paragraph of the Terms, advertisers are instructed:

> Please read these Terms carefully. They require the use of binding individual arbitration to resolve disputes rather than jury trials or class actions. If Customer wishes, Customer may opt out of the requirement to arbitrate disputes by following

the instructions in Section 13(F) below within 30 days of the first acceptance date of any version of these Terms containing an arbitration provision.

Section 13 of the Terms contains the "Arbitration Provision," which was added on September 1, 2017, and has remained in place since that date. (*Id.*, ¶¶ 4, 13.) Under Section 13(A), Google and the Customer agree to arbitrate "all disputes and claims between Google and Customer" that "arise out of or relate in any way to the Program or these Terms":

> Arbitration of disputes. Google, Customer, and Advertiser agree to arbitrate all disputes and claims between Google and Customer or between Google and Advertiser that arise out of or relate in any way to the Program or these Terms. This agreement to arbitrate…is intended to be broadly interpreted and includes, for example: claims brought under any legal theory…claims that may arise after the termination of Customer's or Advertiser's Use of the Programs…

Section 13(F) provides that a Customer may opt out of the Arbitration Provision if it notifies Google within 30 days of acceptance through a link in Section 13(F). (*Id.*, Ex. A.)

### D. Plaintiff Accepted the Terms and Never Opted Out of Arbitration

Plaintiff accepted the Arbitration Provision on October 25, 2017, after Google added the Arbitration Provision to the Terms on September 1, 2017. (*Id.* ¶ 18.)

Before adding the Arbitration Provision, Google notified all existing customers that it was updating the Terms to include the Arbitration Provision, that advertisers were required to take action to accept the updated Terms or their ads would be paused, and that advertisers could opt-out of the Arbitration Provision if they chose to do so. (*Id.* ¶ 7.) Specifically, Google notified all advertisers through an August 17, 2017 blog post and direct email that Google had updated its Terms to include an arbitration provision and provided advertisers with instructions to review and accept the new Terms, and how to opt out of the Arbitration Provision if desired. (*Id.* ¶¶ 4, 7, Ex. B.) Advertisers were also notified that if they "Decline[d]" or did not accept the new Terms, their "ads [would] no longer be eligible to serve." (*Id.*, Ex. B.)

Each of these notices included a link that directed advertisers to an acceptance page displaying the entire text of the September 2017 Terms. (*Id.* ¶ 7.) Advertisers then had to choose between two options, either clicking: (1) "Accept."; or (2) "Decline." (*Id*, Ex. C.) If the advertiser clicked "Accept" to agree to the Terms but wished to opt-out of arbitration, they could click the

"Learn more" link to go to the opt-out page. (*Id.* ¶ 11, Ex. D.) Advertisers were therefore put on notice—via the August 17 blog post, the direct email, and the alert in their accounts—that the September 2017 Terms contained an arbitration clause, that advertisers could opt out, and that advertisers were required to review and accept the Terms to continue serving ads.

Plaintiff accepted the September 2017 Terms. At the time the Arbitration Provision was added, Plaintiff was operating its Account on the Google Ads platform. (*Id.* ¶ 16.) Plaintiff's Account was created by Don Crepeau, at the email address fenceinstock@gmail.com, on September 19, 2011. (*Id.* ¶ 17.) On October 25, 2017, Mr. Crepeau accepted the September 2017 Terms. Mr. Crepeau did not opt out on behalf of Plaintiff, nor did any of Plaintiff's agents. (*Id.* ¶ 18.)

## III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") establishes a "federal policy favoring arbitration" and requires courts to "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McCahon*, 482 U.S. 220, 226 (1987). The FAA provides that an arbitration agreement in any "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A motion to compel arbitration under the FAA is intended to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22 (1983). When considering such a motion, "[a] court may consider evidence outside the pleadings." *Thompson v. Isagenix Int'l LLC*, 849 F.App'x 712, 712 (9th Cir. 2021). And "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *see also Benson v. Casa de Capri Enters., LLC*, 980 F.3d 1328, 1330 (9th Cir. 2020) (same). This presumption of arbitrability "is particularly strong in the case of broad arbitration clauses." *Loewen v. Lyft, Inc*., 129 F. Supp. 3d 945, 951 (N.D. Cal. 2015). Once a court determines that a plaintiff's claims are subject to arbitration, "the court loses its subject matter jurisdiction over any [such] claims" and must dismiss them under Rule 12(b)(1). *Glaude v. Macy's Inc.*, 2012 WL 6019069, at *3 & n.39 (N.D. Cal. Dec. 3, 2012).

To survive a motion under Rule 12(b)(6), "[t]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Prager Univ. v. Google LLC*, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)). Nor must the Court accept allegations that contradict documents attached to or incorporated by reference in the Complaint, or judicially noticed. *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014).

## IV.    ARGUMENT

### A.    The Court Should Dismiss This Action in Favor of Arbitration

In a motion to compel arbitration, all a moving party must show, is (1) "whether a valid arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The burden then shifts to the opposing party to prove grounds for denial. *See Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev., LLC*, 55 Cal.4th 223, 236 (2012). Here, Google easily satisfies both prongs, and there is no ground for denial. Plaintiff agreed to the Terms, which created a binding contract. (*See* Compl. ¶¶ 26, 118.) Those Terms contain a broad Arbitration Provision which covers Plaintiff's claims here, and the Arbitration Provision must be enforced.

#### 1.    The Parties Entered into a Binding Agreement to Arbitrate.

A binding, written, and enforceable arbitration agreement exists between the Parties through Plaintiff's consent to the Terms and Arbitration Provision on October 25, 2017. *See Harris v. Tap Worldwide, LLC*, 248 Cal. App. 4th 373, 383 (2016) (agreement to arbitrate may be express or implied so long as it is written). Indeed, the Complaint explicitly incorporates, and seeks to enforce, the Terms. (*See* Compl. ¶ 26 ("the [Terms] . . . is the sole document that governs the relationship between Plaintiff and Defendant"); ¶ 118 ("The contract between the parties is defined by . . . the [Terms]").) So there can be no question that Plaintiff consented to arbitrate its claims.

Courts routinely enforce online arbitration agreements—and have previously enforced this one—where, as here, the user was presented with terms that conspicuously provided notice of the

agreement's existence and required the user to click an "I accept" button to be bound. *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 881 (N.D. Cal. 2018), *aff'd*, 816 F. App'x 68 (9th Cir. 2020) (compelling arbitration based on advertiser's acceptance of the Terms); *see also Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020-21 (9th Cir. 2024); *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 946 (2022). These agreements, commonly referred to as "clickwrap" agreements, are enforceable regardless of whether the user read the terms. *Id.* (noting courts generally find "clickwrap agreements" enforceable). Indeed, courts have consistently enforced clickwrap agreements far less explicit than those at issue here. *See Lee v. Ticketmaster LLC*, 817 F. App'x 383, 394-95 (9th Cir. 2020) (affirming motion to compel arbitration even where terms did not require clicking a separate box agreeing to the terms); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (reversing denial of motion to compel where user was presented with language that by clicking "Sign In," user agreed to terms).

### a.    Plaintiff accepted the Arbitration Provision.

On October 25, 2017, Mr. Crepeau accepted the Terms as a prerequisite to continue purchasing and using Google's advertising services. Mr. Crepeau's acceptance bound Plaintiff to the Arbitration Provision and governs Plaintiff's "participation in Google's advertising programs and services." (*See* Mobin Decl. Ex. A.)

### 2.    The Dispute is Covered by the Arbitration Provision.

The Arbitration Provision undisputably encompasses Plaintiff's claims in this action. The provision requires the Parties to arbitrate "all disputes and claims between Google and Customer" that "arise out of or relate in any way to the Program or these Terms." (Mobin Decl., Ex. A at § 13(A).) This provision "is intended to be broadly interpreted and includes," for example, "claims brought under any legal theory[,]" "claims that arose before . . . [the] Advertiser first accepted any version of these Terms containing an arbitration provision[,]" and "claims that may arise after the termination of . . . [the] Advertiser's Use of the Programs." (*Id.*) California courts recognize that this language creates a binding agreement to arbitrate a wide range of disputes, and that, "for a party's claims to come within the scope of such a clause, the factual allegations of the complaint 'need only 'touch matters' covered by the contract containing the arbitration clause.'" *Ramos v.*

*Super. Ct.*, 28 Cal. App. 5th 1042, 1052 (2018) (acknowledging that similar clause can "encompass tort, statutory, and contractual disputes"). Here, Plaintiff alleges that Google charges advertisers utilizing Google Ads' pay-per-click advertising service without disclosing "any details" about charges for every search query that returns advertising results to those advertisers. (Compl. ¶¶ 1-2.) Plaintiff's claims not only "touch matters" covered by the Arbitration Provision but fall comfortably within the scope of the Parties' broad agreement to arbitrate any dispute arising out of Plaintiff's use of Google Ads. *See, e.g.*, *Cal. Crane Sch., Inc. v. Google LLC*, 621 F. Supp. 3d 1024, 1030 (N.D. Cal. 2022) (finding that the Arbitration Provision at issue *here* applied to allegations that plaintiff "overpaid Google for showing advertisements on Google's search results pages due to an anticompetitive agreement . . . in the internet search business").

### 3.    The Terms are Enforceable.

To invalidate an arbitration provision as unconscionable, the party resisting arbitration must show that the provision is *both* procedurally and substantively unconscionable. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). Plaintiff lacks proof of both.

Procedural unconscionability focuses on "oppression" or "surprise" due to unequal bargaining power. *Id*. at 88. While Plaintiff alleges that the Arbitration Provision is a contract of adhesion (Compl. ¶¶ 106-07), the "fact that [Plaintiff] had no opportunity to negotiate the [Terms], standing alone, is insufficient to plead a viable unconscionability claim." *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 37 (2021). Where, as here, Plaintiff could have opted out of arbitration by simply clicking an opt-out link and selecting the clearly indicated opt-out bubble, there is no inequity of bargaining power and no surprise. *Mohammed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) ("[U]nder Ninth Circuit precedent, 'the existence of a meaningful right to opt-out of arbitration necessarily renders the arbitration clause . . . procedurally *conscionable* as a matter of law."); *Pinnacle*, 55 Cal.4th at 247 (procedural unconscionability requires a lack of "meaningful choice"). Indeed, as this Court previously held, the "opt out provision in Google's [Terms] defeats [Plaintiff's] argument that the arbitration agreement is adhesive." *Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1034 (N.D. Cal. 2024). Because the Arbitration Provision is not procedurally unconscionable, the inquiry stops here. *See Ramirez v. Charter Commc'ns. Inc.*, 16

1   Cal.5th 478, 494 (2024) ("A court should consider substantive unconscionability *only after*

2   *procedural unconscionability has been established*."); *Mohammed*, 848 F.3d at 1210-11 (declining

3   to address substantive unconscionability when no procedural unconscionability shown).

4     Regardless, the provision is not substantively unconscionable. *See Ajamian v. CantorCO2e,*

5   *L.P.*, 203 Cal. App. 4th 771, 796 (2012) (where "the degree of procedural unconscionability . . . is

6   low, [ ] the agreement will be enforceable unless the degree of substantive unconscionability is

7   high"). Substantive unconscionability examines the term and whether it creates "overly harsh" or

8   "one-sided results" that "shock the conscience." *Armendariz*, 24 Cal.4th at 114; *Cal. Grocers Ass'n,*

9   *Inc. v. Bank of Am.*, 22 Cal.App.4th 205, 213-15 (1994). No such showing can be made here.

10    To avoid arbitration, Plaintiff selectively quotes the limitation of liability provision in the

11  Terms—which stand apart from the Arbitration Provision—to argue that the provision "penalizes

12  users by capping their damages" and "results in an effective waiver" of remedies mandated by law.

13  (Compl. ¶¶ 95-97, 101.) Plaintiff slickly omits the rest of the provision, which voids this limit where

14  prohibited by applicable law. (Compl., Ex. A at § 10 (providing that the limit is applied "to the

15  fullest extent *permitted by law*").) Similar provisions are "routinely upheld by courts." *Gardiner v.*

16  *Walmart Inc.*, 2021 WL 2520103, at *9 (N.D. Cal. Mar. 5, 2021) (enforcing limitation of liability

17  provision that plaintiff argued "purport[ed] to waive liability for all damages of any kind").

18  Plaintiff's attempt to cast the limitation of liability provision as overly one-sided is similarly

19  unavailing, and, in some instances, patently false. (*See* Compl. ¶¶ 93-94.) For example, Plaintiff

20  alleges that the limitation of liability provision requires Plaintiff to indemnify "claims by [Google]

21  against Plaintiff for 'use or breach' by Plaintiff[.]" (*Id.* ¶ 93.) Not so. The provision requires

22  Plaintiff to indemnify Google for claims by "*third-part[ies]* . . . to the extent arising out of or related

23  to Ads, Targets, Destinations, Services, Use or any breach of these terms *by Customer*." (*Id.*, Ex.

24  A at § 11.) Moreover, Plaintiff fails to mention that each limitation applies to both "Google,

25  *Customer*, and *their* respective affiliates[.]" (*Id.* at § 10.) But even if it was unconscionable,

26  "offending limitations of liability do not render an entire arbitration provision void or the agreement

27  unconscionable." *Yoshida v. Vista Energy Mktg. LP*, 2022 WL 88505, at *7 (E.D. Cal. Jan. 6, 2022).

28  //

Plaintiff's reliance on *Lhotka* and *Nelson* is misplaced. In *Lhotka*, the court did not find that the arbitration provision was substantively unconscionable solely by virtue of the limitations of liability clause. Instead, the court found the provision substantively unconscionable because it also required plaintiffs to indemnify defendants for costs and fees for defending against the claims, and because the provision required plaintiffs—residents of Colorado—to mediate and arbitrate their claims in San Francisco "all but guaranteeing . . . that any recovery plaintiffs might obtain would be devoured by the expense they incur in pursuing their remedy." *Lhotka v. Geographic Expeditions, Inc*., 181 Cal. App. 4th 816, 825 (2010). And in *Nelson*, the court did not take issue with the limitation of liability clause, but with the release provision requiring plaintiff to waive *all* claims against defendant and third parties, and to indemnify not only defendant, but "'any other person' in any dispute arising from [plaintiff's] presence at a Sovereign facility[,]" such that plaintiff became the "financial guarantor against" third parties' conduct. *Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 77 Cal. App. 5th 643, 663-64 (2022). No such provisions are present here. Indeed, many of the Arbitration Provision's terms expressly favor advertisers, like Plaintiff. For example, the Arbitration Provision requires that any arbitration hearing take place in the county of the *advertiser's* principal place of business, (Compl., Ex. A at §13.C), requires that Google pay the *advertiser's* arbitration fees for claims below a certain threshold, (*id.* at §13.D), and, for higher value claims, requires that the advertiser's arbitration fees be capped (with Google covering the remaining costs) (*id.*). And multiple courts applying California law have found that Google's Terms and Arbitration Provision are not unconscionable. *See, e.g.*, *Trudeau*, 349 F. Supp. 3d at 872, 881; *Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 944 (N.D. Cal. 2023) (same for similar provision).

Finally, by "bring[ing] this action simultaneously with individual arbitration claims" (Compl. ¶ 115), if true, Plaintiff concedes that the Arbitration Provision is enforceable. *Roderick v. Mazzetti & Assocs*., 2004 WL 2554453, at *5 (N.D. Cal. Nov. 9, 2004) ("the initiation of arbitration . . . renders the arbitration process binding on the parties"). In the absence of procedural and substantive unconscionability, the Arbitration Provision must be enforced.

//

//

**B.    In The Alternative, The Court Should Dismiss This Action Because the Complaint Fails to State a Single Actionable Claim**

**1.    Plaintiff Fails to State a Claim for Breach of Contract.**

To adequately plead a breach of contract claim, a plaintiff must show: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *D'Arrigo Bros. of Cal. v. United Farmworkers of Am.*, 224 Cal. App. 4th 790, 800 (2014). Here, while the existence of a contract—*i.e.*, the Terms (Compl. ¶ 26)—is not in dispute, Plaintiff has otherwise failed to put forth any allegations that would otherwise support the elements of a breach of contract claim.

**a.    Plaintiff has not identified any provision of the Terms allegedly breached.**

As a threshold matter, "[i]n an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached." *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (dismissing contract claim). Indeed, without this basic allegation, a plaintiff's pleading is fundamentally flawed and must be dismissed. *See Beecher v. Google N. Am. Inc.*, 2018 WL 4904914, at *2 (N.D. Cal. Oct. 9, 2018) (dismissing contract claim where plaintiff failed to "point to specific contractual terms which were allegedly breached"); *Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252 (1989). Here, the only "contract" to which Plaintiff refers is the Terms. (*See* Compl. ¶ 26 (conceding that the "Terms . . . is the *sole* document that governs the relationship between Plaintiff and Defendant").) But Plaintiff fails to identify *any* provision in the Terms that Google purportedly breached, and its claim fails. *See Miron v. Herbalife Int'l, Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001) (upholding dismissal of breach of contract claim where plaintiffs did not identify the specific provision allegedly breached).

**b.    Plaintiff does not allege an actual breach of the Terms.**

In Plaintiff's own framing, "[t]he [Terms] . . . contains *scant* commitments or obligations by [Google] in connection with its role as the operator of the Google Ads program including how Google Ads function [and] how Defendant places users' ads in response to internet searches[.]"

(Compl. ¶ 29.) Notwithstanding this acknowledgment, Plaintiff alleges that Google breached its contractual obligations by (1) "placing Plaintiff's . . . ads in response to search terms that are not consistent with those designated by Plaintiff" (*id.* ¶ 140) and (2) "fail[ing] and refus[ing] to disclose the 'other search terms' results" (*id.* ¶ 141).

As to the first, Plaintiff fails to allege that *any* of its ads were placed inconsistent with its keyword designations, and, instead, simply alleges that it "may, or may not have" occurred. (Compl. ¶ 141.) Such conclusory allegations are plainly insufficient. *See Ashcroft*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"); *see also* Section IV(B)(1)(d), *infra*. Here Plaintiff concedes by omission that the information in the reports otherwise shows Google placed ads wholly *consistent* with Plaintiff's keywords, and resulted in user "clicks" – which is the whole point of the service. Then Plaintiff makes a baseless leap devoid of any facts to allege the "other search terms" results may or may not be consistent.

As to the second purported breach – *i.e.*, that Google did not provide Plaintiff with every search query that hit on its keyword designations – the Terms do not promise or even suggest that Google will disclose any, let alone all the thousands of search queries that successfully triggered Plaintiff's ads. Indeed, the phrase "other search terms" does not appear in the Terms at all, nor does *any* obligation requiring Google to disclose such information. Because Plaintiff has not identified any provision in the Terms or a corresponding breach, Plaintiff's claim must fail. *Miron*, 11 F. App'x at 929 ("[I]n order for [a breach of contract] action to be based on an instrument in writing, the writing must express the obligation sued upon."); *see also Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490 (1986) (holding that a breach of contract claim must fail where no provision of the alleged contract imposed an obligation on the defendant).

### c.     Google's help center pages are not an enforceable contract.

Unable to identify a specific contractual provision in the Terms, Plaintiff attempts to manufacture a contract by piecing together various "online materials"—specifically, two Google Ads Help Center Pages. (*See* Compl. ¶¶ 34–36, 38–41, 45.) But Plaintiff does not allege (nor could

it) that those materials are incorporated into the Terms or otherwise form an enforceable contract.

Indeed, a plaintiff cannot rely on statements originating outside of the parties' contract as a source of purported contractual obligations, without alleging that those pages were fully *incorporated* into the contract. *See Beecher*, 2018 WL 4904914, at *2 (dismissing contract claim where plaintiff did "not allege that the FAQs" on Google's website were incorporated into the Terms). Here, Plaintiff fails to allege that the Help Center Pages were incorporated into the Terms. Nor could it. The Terms make no reference, either implicit or explicit, to *any* Help Center Pages available on Google's website. (*See generally* Compl., Ex. A); *see also Rodriguez v. Google LLC*, 2021 WL 6621070, at *3-4 (N.D. Cal. Aug. 18, 2021) (Help Center Page on Google's website "afford[ed] plaintiffs no basis to state a viable claim for breach of contract" where it was "not incorporated by reference into the" parties' agreement); *Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1608 (2008) (no incorporation without a "clear and unequivocal reference . . . that the terms of the external document are incorporated"). Where, as here, "statements about [other search terms] are spread across a variety of pages in a variety of formats" it is "difficult to identify the terms of any actual and unambiguous contractual obligations[.]" *Woods v. Google Inc.*, 2011 WL 3501403, at *4-5 (N.D. Cal. Aug. 10, 2011) (dismissing contract claim and finding that Help Center Pages on Google's website were not incorporated into the Advertising Program Terms).

Moreover, because Plaintiff "do[es] not allege . . . having secured [the Help Center Pages'] terms with valid consideration[,]" it is "preclude[d] . . . from functioning as a standalone contract[.]" *Rodriguez*, 2021 WL 6621070, at *3 (Google's Help Center Pages are not a "standalone contract"). Because the Help Center Pages are not contractual, Plaintiff's contract claim based on any purported obligations in those online materials fails.

### d.    Plaintiff fails to allege contract damages.

To adequately plead contract damages, a plaintiff must establish "appreciable and actual damage." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012) (quoting *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000)). "Where a plaintiff has failed to allege that the defendant's breach has caused her to suffer any damage, a breach of contract action for damages will not lie." *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1139-40 (N.D.

Cal. 2014). A claim for "[n]ominal damages, speculative harm, or threat of future harm do[es] not suffice to show legally cognizable injury." *Id.*; *see also McDonald v. John P. Scripps Newspaper*, 210 Cal. App. 3d 100, 104 (1989) (same).

Plaintiff fails to meet this threshold pleading requirement. Plaintiff merely speculates that Google's alleged failure to disclose "other search terms" resulted in charges "for advertising that *may, or may not*, be responsive to its search terms and parameters, that [Google] *may or may not* have ever placed" such that it incurred "useless ghost charges." (Compl. ¶ 141.) The allegation that Plaintiff "may or may not" have suffered damages is not only insufficient to plead contract damages, but is unsupported by any factual allegations, rendering Plaintiff's claim for damages wholly speculative. *See e.g.*, *Boynton v. Reliance Standard Life Ins. Co.*, 2015 WL 11570935, at *4 (S.D. Cal. Jan. 29, 2015) ("[p]laintiffs cannot claim the *possibility* that [defendant] may withhold payments in the future as a basis for their breach of contract action"); *Illumina, Inc. v. Ariosa Diagnostics, Inc.*, 2014 WL 3897076, at *4 (N.D. Cal. Aug. 7, 2014) (dismissing contract claim where the alleged harms "relate to potential future harm, not harm that has already occurred"); *see also Crittenden v. Apple, Inc.*, 2022 WL 2132224, at *4 (N.D. Cal. June 14, 2022) (granting motion to dismiss because "parroting internet musings about things [defendant] *may or may* not being [*sic*] doing, and which plaintiffs *may or may* not have experienced themselves," is insufficient to establish a plausible inference of culpability). In the absence of a cognizable claim for damages, Plaintiffs' contract claim fails.

### 2.    Plaintiff Lacks Article III Standing.

For each claim and form of relief sought, Article III requires Plaintiff to demonstrate that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Plaintiff bears the burden of establishing these elements and, at the pleading stage, "must clearly allege facts demonstrating each element." *Spokeo*, 136 S. Ct. at 1547. In a class action like this one, Plaintiff must also allege facts showing that it *personally* suffered injury. *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (it is insufficient to show "injury has been suffered by other, unidentified members

of the class"). Absent standing, a court must dismiss the case. *Bell v. City of Kellogg*, 922 F. 2d 1418, 1422 (9th Cir. 1991); *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001).

The Complaint must be dismissed in its entirety because Plaintiff fails to plead any plausible injury. *See TransUnion LLC*, 141 S. Ct. at 2200 ("No concrete harm, no standing."). The crux of Plaintiff's Complaint is that Google charged it for serving Plaintiff's advertisements to users as requested, which resulted in users clicking on the ads, but Google did not disclose every users' search queries. (Compl. ¶¶ 1-2.) But Plaintiff only points to *potential* harms that *may* arise because of the alleged conduct. (*Id.* ¶¶ 141, 155, 166.) Plaintiff concludes without alleging facts, that it "has been injured and damaged by . . . being charged for key words it did not choose, paying and being charged for key words that Google never ran, Google manipulating its pricing structure to charge an effectively higher-than-disclosed price for key words, and by precluding Plaintiff from being able to take any action to modify and improve its search terms[.]" (*Id.* ¶ 122.) But Plaintiff's alleged *facts* disclose it was charged for advertisements that were served and clicked on by users, thereby garnering more visibility for its business. (*Id.* ¶¶ 118-21.) Plaintiff fails to allege how this amounts to harm – rather than success – since more users clicking on the ads means more business for Plaintiff, not less. Plaintiff's allegations amount to nothing more than "[c]onclusory and bare bones words and phrases without any factual content" are, thus, "vacuous claims [] insufficient to establish standing or to survive a motion to dismiss." *Perez v. Nidek Co*., 711 F.3d 1109, 1113 (9th Cir. 2013); *see also Spokeo*, 578 U.S. at 1548 ("Particularization is necessary to establish an injury in fact," meaning "an injury . . . must affect the plaintiff in a personal and individual way.").

Without factual allegations showing that *it personally* was subject to the purported harms, Plaintiff cannot show that it suffered a particularized or concrete injury and so lacks standing to bring its claims. *See, e.g.*, *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960–61 & n.4 (9th Cir. 2009) (affirming dismissal for lack of standing where plaintiffs alleged "a potential risk . . . not to themselves, but to other unidentified [] users"); *In re iPhone Application Litig.*, 2011 WL 4403963, at *4 (N.D. Cal. Sept. 20, 2011) (plaintiffs lacked standing where they made only "general allegations about the [defendants], . . . but [did] not identif[y] an actual injury to themselves").

//

### 3.    Plaintiff Fails to State a Claim for Breach of the Implied Covenant.

Under California law, the implied covenant "cannot be extended to create obligations not contemplated in the contract." *Racine & Laramie, Ltd. v. Cal. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031–32 (1992). Plaintiff's claim falters because it largely concerns extra-contractual terms to which the parties *never agreed*. (*See* Compl. ¶¶ 148, 154-55; *see also* Section IV(B)(1), *supra*.) Indeed, at no point does Plaintiff identify a contractual term imposing a duty requiring Google to disclose "other search terms" to advertisers (because none exists). *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 4581340, at *4 (N.D. Cal. Sept. 20, 2019) (dismissing implied covenant claim because plaintiff "attempt[ed] to impose substantive duties beyond those incorporated in the specific terms of the agreement"). What is more, Plaintiff's claim is entirely duplicative of its breach of contract claim and, thus, cannot survive. (*Compare* Compl. ¶¶ 138, 140-41, *with id.* ¶¶ 148, 154-55); *see*, *e.g.*, *Snapkeys, Ltd. v. Google LLC*, 442 F. Supp. 3d 1196, 1211 (N.D. Cal. 2020) (dismissing implied covenant claim because the same allegations were "at the heart" of the breach of contract claim). Because Plaintiff impermissibly seeks to either duplicate its contract claim or to impose new, extra-contractual obligations on Google, this claim fails.

### 4.    Plaintiff Cannot State a Quasi-Contract Claim.

Plaintiff's quasi-contract claim is duplicative of its breach of contract claim and, thus, must fail. It is well-settled that "a cause of action for quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Berlanga v. Univ. of S.F.*, 100 Cal. App. 5th 75, 89 (2024), *reh'g denied* (Mar. 15, 2024). Here, the Complaint thoroughly and repeatedly describes a valid contract between the Parties that Plaintiff purports governs its relationship with Google Ads. (*See, e.g.*, Compl. ¶ 26.)

Given the uncontested existence of a valid express contract, the only question for the Court is whether the contract covers the "same subject matter" as Plaintiff's quasi-contract claim. *See Berlanga*, 100 Cal. App. 5th at 89. It does. Plaintiff's claim centers on whether Google complied with its purported obligations to advertisers pursuant to its Advertising Program, which are the entire subject matter of the governing contract in this suit—the Terms. (*See* Compl. Ex. A ("These

1    Terms govern Customer's participation in Google's advertising programs and services").)

2           It does not matter that the Terms do not explicitly reference the level of detail in the Search

3    Query Reports that form the basis for Plaintiff's quasi-contract claim. Courts regularly conclude

4    that written contracts encompass the "same subject matter" even where those contracts do not

5    explicitly reference the purported contractual obligations in dispute. *See, e.g.*, *Berlanga*, 100 Cal.

6    App. 5th at 89 ("Because a valid and enforceable contract existed between student appellants and

7    USF regarding their enrollment, *albeit without the terms they sought*, appellants are precluded from

8    pursuing their quasi-contract claim."); *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389

9    (2012) (quasi-contract claim precluded where contract governed the sale of gasoline but no written

10   instrument specified contract's terms). Because the Terms expressly govern each Party's

11   obligations pursuant to Google's Advertising Program—the basis for both its quasi-contract and

12   breach of contract claims—Plaintiff's quasi-contract claim is barred.

13          Moreover, Plaintiff's claim is not saved because it is pled "in the alternative to Plaintiff's

14   claims for breach of contract and breach of the implied covenant[.]" (Compl. ¶ 159.) Indeed,

15   Plaintiff may not plead "the existence of an enforceable agreement" alongside a quasi-contract

16   claim that does not "deny the existence or enforceability of that agreement." *Klein*, 202 Cal. App.

17   4th at 1389. Here, Plaintiff does not deny that a contract exists between the Parties. At best, Plaintiff

18   claims that it pleads a quasi-contract claim "to the extent that *Defendant* claims that . . . it was not

19   contractually obligated" to provide Plaintiff with certain data related to ad placement. (Compl. ¶

20   161.) Plaintiff does not *itself* "deny the existence or enforceability" of the Terms or plead any facts

21   that would enable the Court to draw such an inference, nor could it plausibly do so, and its claim

22   fails. (*See, e.g.*, *id*. ¶ 4 (referring to allegations as a "quintessential breach of contract").)

23          **5.      Plaintiff Lacks Standing to Bring a CLRA Claim.**

24          The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or

25   practices" in connection with the "sale or lease of goods or services to a[] *consumer*." Cal. Civ.

26   Code § 1770(a). The statute defines "consumer" to mean "an *individual* who seeks or acquires . . .

27   any goods or services for *personal, family, or household purposes*." Cal. Civ. Code § 1761(d).

28   Plaintiff's CLRA claim fails because it is not a "consumer" under the statute, nor does it plead it is

1    one. *Campbell v. eBay, Inc.*, 2013 WL 4764526, at *5 (N.D. Cal. Sept. 5, 2013).

2         By Plaintiff's own admission, it "is a Florida limited liability *company* . . . that use[s]

3    Google Ads to advertise and market its products and services" and "is engaged in selling . . . fencing

4    materials to retailers, contractors, and consumers" (Compl. ¶¶ 10, 116), effectively conceding it did

5    not use Google's services for "personal, family, or household purposes." Accordingly, Plaintiff

6    lacks standing to bring a CLRA claim. *See Song Fi, Inc. v. Google, Inc.*, 2016 WL 1298999, at *11

7    (N.D. Cal. Apr. 4, 2016) (dismissing CLRA claim for lack of standing because plaintiffs did not

8    use YouTube "for other than a commercial or business use"); *see also Person v. Google, Inc.*, 2007

9    WL 832941, at *7 (N.D. Cal. Mar. 16, 2007) ("Since Plaintiff's stated purpose for using [Google]

10   AdWords is commercial and political, he is not a consumer under" the CLRA).

11        In fact, no putative class member could ever state a CLRA claim under these facts because

12   Google Ads' services are plainly not for "personal, family, or household purposes" and are solely

13   available to businesses running ads for promotional purposes. (*See* Compl. ¶ 123 (defining the

14   proposed class to include "[a]ll persons and *entities* . . . who used Google Ads to place

15   advertisements"); *id.* ¶ 1 ("This service . . . is essentially the only effective way for *a business* to

16   advertise online."); *id.* ¶ 23 ("Google allows *businesses* to purchase a right of placement as a paid

17   advertisement").) Because Google Ads users do not use Google's advertising services for

18   "personal, family, or house purposes," they all lack the requisite statutory standing to bring a claim

19   under the CLRA. *See Campbell*, 2013 WL 4764526, at *5 (plaintiff's CLRA class claims dismissed

20   because it was a company selling bicycles and bicycle parts though eBay).

21              **6.    Plaintiff Fails to State a Claim under the FAL.**

22        The FAL bars "any advertising device . . . which is untrue or misleading." *Shaeffer v. Califia*

23   *Farms, LLC*, 44 Cal. App. 5th 1125, 1136 (2020). The statute prohibits "not only advertising which

24   is false, but also advertising which[,] although true, is either actually misleading or which has a

25   capacity, likelihood or tendency to deceive or confuse the public." *Veera v. Banana Republic, LLC*,

26   6 Cal. App. 5th 907, 914 (2016). To prevail on an FAL claim, a plaintiff must show that "members

27   of the public are likely to be deceived[,]" and must do so "as adjudged through the eyes of 'the

28   reasonable consumer.'" *Shaeffer*, 44 Cal. App. 5th at 1136. Indeed, "[an] FAL claim is not

1    cognizable when based solely on an omission of material information." *Stewart v. Electrolux Home*

2    *Prods., Inc.*, 304 F. Supp. 3d 894, 907 (E.D. Cal. Jan. 9, 2018); *see also Kulp v. Munchkin, Inc.*,

3    678 F. Supp. 3d 1158, 1170 (C.D. Cal. 2023) ("[T]he complaint must still identify an affirmative

4    statement that was made false or misleading by the omission of relevant and material

5    information."); *Norcia v. Samsung Telcomms. Am., LLC*, 2015 WL 4967247, at *8 (N.D. Cal. Aug.

6    20, 2015); *Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 669 (N.D. Cal. 2016). Instead, to support an

7    FAL claim, Plaintiff must identify at least *one* affirmative misrepresentation. *See Lopez v. Nissan*

8    *N. Am., Inc.*, 201 Cal. App. 4th 572, 595 (2011) (FAL claim properly dismissed where no

9    affirmative misrepresentations in the record). Here, Plaintiff pleads none.

10       As an initial matter, when pleading an FAL claim, a plaintiff must satisfy Rule 9(b)'s

11   heightened pleading standard. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir.

12   2018). Rule 9(b) requires pleading with particularity – including providing allegations "specific

13   enough to give defendants notice of the particular misconduct which is alleged to constitute the

14   fraud charged[.]" *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). In other words, any claim

15   sounding in fraud must state the "who, what, when, where, and how of the misconduct charged."

16   *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Plaintiff fails to plead these crucial

17   details. Plaintiff does not allege *what* Google advertisements it viewed, *when* it viewed them, or

18   *how* they influenced Plaintiff's behavior and decision to use Google's advertising services.

19       Assuming, *arguendo*, that Plaintiff's claim was pled with the requisite specificity, none of

20   the purported "advertisements" scattered throughout the Complaint are false or misleading.

21   Plaintiff contends that Google advertises that (1) it "places a Google Ads user's ad in response to

22   the specific search terms and parameters as set by the user, and that it does not trigger an ad's

23   placement if it includes any 'negative search terms'" (Compl. ¶ 180); and (2) "Google Ads users

24   have access to reports that will allow the user to identify search terms and parameters that are

25   successfully triggering conversions, identify those not triggering conversions, focus on ad

26   parameters that are successful, and identify search terms that it should exclude" (*id.* ¶ 181). Both

27   are true. Google does place ads in response to search terms, and it does provide advertisers with

28   reports regarding those search terms. (*See e.g.*, *id.* ¶¶ 42, 46, 68.)

1    Moreover, Plaintiff's allegation that "Google never discloses that it is going to charge for

2    keywords that it will not disclose or that the customer did not select," (*id.* ¶ 37), is not only untrue,

3    but is insufficient to support an FAL claim. *See, e.g., Kulp*, 678 F. Supp. 3d at 1170; *Norcia*, 2015

4    WL 4967247, at *8. Indeed, information concerning what Search Query Reports will encompass is

5    publicly available, and Google explicitly discloses that "[s]ome search terms that don't have enough

6    query activity are omitted from the search terms report" and are "group[ed] . . . or aggregat[ed] . .

7    . as 'other queries', without exposing the queries themselves." (Michaud Decl. Ex. A; *see also id.*

8    Ex. B.)

9    Even if Plaintiff's claim could proceed in the absence of an affirmative misrepresentation

10   (it cannot), it still fails because it does not allege that Google held a duty to disclose what

11   information would be contained in Search Query Reports. "[T]here are four circumstances in which

12   an obligation to disclose may arise: 1) when the defendant is in a fiduciary relationship with the

13   plaintiff; 2) when the defendant had exclusive knowledge of material facts not known to the

14   plaintiff; 3) when the defendant actively conceals a material fact from the plaintiff; and 4) when

15   the defendant makes partial representations but also suppresses some material facts." *Kulp*, 678 F.

16   Supp. 3d at 1169. None of these circumstances are present here. At no point does Plaintiff allege

17   that it is in a fiduciary relationship with Google (it is not), and, as discussed above, Google actively

18   discloses that certain search terms are omitted from Search Query Reports.

19   In the absence of an affirmative misrepresentation, Plaintiff's FAL claim fails.

20   ### 7.    Plaintiff Fails to State a Claim Under the UCL.

21   #### a.    Plaintiff lacks UCL standing.

22   To have statutory standing under the UCL, Plaintiffs must "(1) establish a loss or

23   deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and

24   (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice . . .

25   that is the gravamen of the claim." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048

26   (9th Cir. 2017) (emphasis in original). Plaintiff has done neither.

27   *First*, Plaintiff fails to allege it suffered an economic injury. As a threshold matter, Plaintiff

28   only generally alleges Google's alleged failure to disclose "other search terms" resulted in charges

1  "for advertising that *may, or may not*, be responsive to its search terms and parameters, that

2  [Google] *may or may not* have ever placed." (Compl. ¶ 141.) Without more, it is impossible to

3  know what, if any, economic loss Plaintiff "may" have suffered as a result of the challenged

4  conduct. *See Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1137 (S.D. Cal. 2012). But even

5  assuming Plaintiff pled precisely how many ads were not placed in response to its keywords, how

6  much those ads cost, and that the ads did not result in more clicks from users, Plaintiff still has not

7  pled an economic injury because it received precisely what it bargained for: placement of ads in

8  response to search terms that were either similar to or related to Plaintiff's keywords. (*See e.g.,*

9  Compl. ¶¶ 35, 151-52.) Plaintiff does not allege that it paid more for its use of Google Ads than it

10 would have had it known what data would or would not be disclosed in Search Query Reports. Nor

11 does Plaintiff allege that the service it received was of an inferior quality or otherwise devoid of

12 the benefit Plaintiff contracted for. Where, as here, a plaintiff received the "benefit of their bargain,"

13 the plaintiff "ha[s] not shown they suffered actual economic injury[,]" and, thus, cannot establish

14 standing under the UCL. *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1591 (2008); *see also*

15 *Suchard v. Sonoma Academy*, 109 Cal. App. 5th 1089, 1100-01 (2025); *Animal Legal Def. Fund v.*

16 *Mendes*, 160 Cal. App. 4th 136, 147 (2008).

17    *Second*, even if Plaintiff's alleged "loss" could confer standing (it does not), Plaintiff does

18 not allege that loss flowed from *Google's* conduct, separately dooming Plaintiff's bid to establish

19 UCL standing. *See Konik v. Time Warner Cable*, 2010 WL 11549435, at *5 (C.D. Cal. July 19,

20 2010) (the challenged conduct must be "an immediate cause of [their] injury-producing conduct").

21 Indeed, Plaintiff concedes that it had at least three options from which it could select that "specifies

22 how close a match it will accept in order to bid" on search terms: (1) broad match; (2) phrase match;

23 and (3) exact match. (Compl. ¶¶ 32-39.) Critically, Plaintiff does not allege which option *it* chose.

24 (*Id.* ¶¶ 116-22.) Regardless, Plaintiff's own pleading makes clear that *it* was in full control of this

25 selection, and Google's obligation to match. Thus, Plaintiff lacks UCL statutory standing.

26          **b.    Plaintiff fails to allege unlawful conduct.**

27    The UCL's "unlawful" prong covers "anything that can properly be called a business

28 practice and that at the same time is forbidden by law." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93

Cal. App. 4th 700, 717–18 (2001). Courts have remarked that the UCL "'borrows' violations of other laws and treats them as 'unlawful' practices independently actionable under the [UCL]." *Id.* at 718. Where the allegedly wrongful conduct is not otherwise unlawful, a plaintiff cannot state a claim under the unlawful prong of the UCL. *Id.* Because Plaintiff's CLRA and FAL claims—the claims upon which it relies to satisfy the unlawful prong (Compl. ¶ 191)—fail, Plaintiff's claim under the UCL's "unlawful" prong necessarily fails. (*See* Sections IV(B)(5)-(6), *infra.*)

### c.    Plaintiff fails to allege a duty to disclose.

The "fraudulent" prong of the UCL and FAL overlap substantially, such that a plaintiff's pleading burden is largely the same under both statutes. *Shaeffer*, 44 Cal. App. 5th at 1136. A fraudulent business practice is one in which members of the public are likely to be deceived. *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1556 (2007). But the "failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App .4th 824, 838 (2006). Just as under the FAL, Plaintiff cannot state a claim under the fraudulent prong of the UCL without establishing a legal basis for imposing an obligation on Google to disclose "other search terms" to advertisers. *Berryman*, 152 Cal. App. 4th at 1557; (*see also* Section (IV)(B)(6), *infra*). Accordingly, Plaintiff's claim under the "fraudulent" prong fails.

### d.    Plaintiff fails to allege unfair conduct.

Plaintiff's claim under the "unfair" prong appears to be rooted in Plaintiff's allegation that Google has been held liable for anticompetitive conduct in the advertising market. (*See* Compl. ¶¶ 193, 195.) What constitutes an "unfair" business practice under the UCL is not clearly settled, but "it is not unlimited," *Smith*, 93 Cal. App. 4th at 719, and, where, as here, a plaintiff bases its claim on an antitrust violation but is not a direct competitor of the defendant, a plaintiff must demonstrate "that [defendant's] actions [that caused the plaintiff harm] can be tethered to some 'actual or threatened impact on competition.'" *Reilly v. Apple Inc.*, 2022 WL 1215305, at *7 (N.D. Cal. Apr. 25, 2022) (*quoting Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 186-87 (1999); *see also Rodriguez v. Wells Fargo Bank, N.S.*, 2019 WL 13472212, at *2 (N.D. Cal. Jan. 24, 2019) (the tethering test requires conduct that violates a public policy that is "tethered to specific

constitutional, statutory or regulatory provisions."); *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (same).

Plaintiff's "tether" is to antitrust findings against Google in another action, but, significantly, the anticompetitive conduct identified there is completely unrelated to the conduct Plaintiff alleges here. Plaintiff points to *United States v. Google LLC*, 747 F. Supp. 3d 1 (D.D.C. 2024) in which the court found that Google entered into exclusive distribution agreements with browser developers and carriers that forced Google's rivals, like Bing and Yahoo, to distribute their competing search engine services through less efficient means resulting in fewer users and fewer ad dollars. That court found anticompetitive conduct because Bing and Yahoo could not offer their competitive services in the search services marketplace on equal footing.

But Plaintiff does not compete in the market for search services. Nor does it allege that it suffered direct harm as a consumer *as a result of* the search services marketplace dynamic. Instead, Plaintiff simply does not like that "other search terms" are not disclosed in Search Query Reports. But disliking how a service functions and being disappointed in the amount of business your ads generate are not bases to find harm under the UCL. *See e.g.*, *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1028 (N.D. Cal. 2015) (finding no standing where the plaintiffs' "alleged injuries…are not the necessary means by which Defendant is allegedly accomplishing its anticompetitive ends").

Similarly, a plaintiff cannot complain of unfair conduct where, as here, a defendant complied with the terms of its contract with the plaintiff. *See Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1046 (C.D. Cal. 2008), *aff'd* 349 F. App'x 174 (9th Cir. 2009) ("'The 'unfairness' prong of the UCL 'does not give the courts a general license to review the fairness of contracts.'"). Indeed, while Plaintiff appears to take issue with the "scant commitments" the Terms impose on Google (Compl. ¶ 29), "the UCL cannot be used to rewrite their contracts or to determine whether the terms of their contracts are fair." *Spiegler*, 552 F. Supp. 2d at 1046. And, to the extent Plaintiff's "unfairness" claim is predicated on Google's alleged breach of its contract with Plaintiff, "[s]imply asserting that a party breached a contract is not enough to make the breach 'unfair' under the UCL. The breach must *independently* constitute unfair conduct[.]" *Soriano v. Countrywide Home Loans, Inc.*, 2011 WL 2600759, at *12 (N.D. Cal. June 30, 2011) (emphasis in original).

Finally, the Complaint argues that Plaintiff's allegations satisfy the balancing test because Google's "justification for charging Plaintiff and the Class for advertising about which Defendant does not reveal any information or data under the guise that privacy concerns preclude Defendant from disclosing such information, is baseless" because Google "never provides any personally identifiable information about any persons or entities that click on Google Ads that result in charges to Plaintiff and the Class." (Compl. ¶ 192.) But these allegations still fail to allege specified harm to *Plaintiff*, or any putative class member, from not receiving such information. *See Drum*, 182 Cal. App. 4th at 256. As discussed in Section IV(B)(1)(d), *supra*, though Plaintiff alleges *potential* harms that *may* arise by virtue of the challenged conduct, it again fails to allege that it *personally* suffered any.

### 8.    Plaintiff Fails to State a Claim for Declaratory Relief.

Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy," the court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "This statute does not create new substantive rights, but merely expands the remedies available in federal courts." *Shell Gulf of Mexico, Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014). "To determine whether a declaratory judgment action presents a justiciable case or controversy, courts consider 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.*

Here, Plaintiff seeks declaratory judgment that the Arbitration Provision, limitation of liability provision, and class action waiver in the Terms are unconscionable and, thus, unenforceable. (Compl. ¶ 202.) But, as discussed in Section IV(A)(3), *supra*, the arbitration and limitation of liability provisions are enforceable. All that remains is Plaintiff's boilerplate allegation, which stands wholly unsupported by any facts, that the class action waiver is unconscionable. Not so.

The FAA is a "congressional declaration of a liberal federal policy favoring arbitration agreements[.]" *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24; *Dean Witter Reynolds Inc. v. Byrd*,

470 U.S. 213, 221 (1985). Under this strong policy, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also* Cal. Civ. Code § 1281. This weighty presumption applies with equal force to class action waivers. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018); *see also AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 351 (2011); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013); *Gonzalez v. Comenity Bank*, 2019 WL 5596800, at *6 (E.D. Cal. Oct. 30, 2019).

In the absence of any unconscionable terms in the Parties' contract, there is no actual controversy nor sufficient immediacy to warrant the issuance of a declaratory judgment.

## V.    CONCLUSION

Google respectfully requests the Court enter an order compelling Plaintiff's claims to arbitration and staying or dismissing this case, or alternatively, dismissing the Complaint in its entirety for failure to state a claim.

Dated: September 9, 2025                    COOLEY LLP


By: */s/ Teresa Michaud*
Teresa Michaud

Attorneys for Defendant
GOOGLE LLC