1    COOLEY LLP
     TERESA H. MICHAUD (296329)
2    (tmichaud@cooley.com)
     KELTON N. MURPHY (340366)
3    (kbasirico@cooley.com)
     ELLIE R. DUPLER (337607)
4    (edupler@cooley.com)
     355 South Grand Avenue, Suite 900
5    Los Angeles, California 90071
     Telephone:     +1 213 561 3250
6    Facsimile:     +1 213 561 3244

7    COOLEY LLP
     JINYOUNG LEE (359885)
8    (jinyoung.lee@cooley.com)
     3 Embarcadero Center, 20th Floor
9    San Francisco, California 94111
     Telephone:     +1 415 693 2000
10   Facsimile:     +1 415 693 2222

11

12   Attorneys for Defendant
     GOOGLE LLC

13

14                     UNITED STATES DISTRICT COURT

15          NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

16

17   PVC FENCE WHOLESALE, LLC,          Case No. 5:25-cv-05480-PCP
     Individually and on Behalf of All Others
18   Similarly Situated,                        **DEFENDANT GOOGLE LLC'S NOTICE OF**
                                           **MOTION AND MOTION TO STRIKE,**
19                 Plaintiff,              **COMPEL TO ARBITRATION, OR DISMISS**
                                           **PLAINTIFF'S AMENDED COMPLAINT**
20         v.

                                  Date:           January 22, 2026
     GOOGLE LLC, a Delaware LLC,          Time:          10:00 a.m.
21                                  Dept:           8
                   Defendant.           Judge:        Hon. P. Casey Pitts
22

23

24

25

26

27

28

                                      **GOOGLE LLC'S MOTION TO STRIKE,**
                            **COMPEL TO ARBITRATION, OR DISMISS**
                                      **5:25-CV-05480--PCP**

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 3

I.    INTRODUCTION ...................................................................................................... 3

II.   FACTUAL BACKGROUND ....................................................................................... 3

  A.    The Parties ..................................................................................................... 3

  B.    The Google Ads Platform .............................................................................. 3

  C.    Google Ads Terms of Service ........................................................................ 4

  D.    The Ads Terms Require Arbitration of Disputes ........................................... 5

  E.    Plaintiff Accepted the Ads Terms and Never Opted Out of Arbitration ......... 5

III.  LEGAL STANDARD ................................................................................................. 7

IV.   ARGUMENT ............................................................................................................ 8

  A.    The Court Should Strike the FAC and Grant Google's First Motion. ............ 8

  B.    The Court Should Dismiss This Action in Favor of Arbitration. .................... 9

    1.    The Parties Entered into a Binding Agreement to Arbitrate. ................ 9

    2.    The Dispute is Covered by the Arbitration Provision. ......................... 10

    3.    The Ads Terms are Enforceable. ........................................................ 10

      a.    The Ads Terms are Not Procedurally Unconscionable. ............ 11

      b.    The Ads Terms are Not Substantively Unconscionable. .......... 13

  C.    In The Alternative, The Court Should Dismiss This Action Because the
        FAC Fails to State a Single Actionable Claim. ............................................. 16

    1.    Plaintiff Lacks Article III Standing. .................................................... 16

    2.    Plaintiff Fails to State a Claim for Breach of Contract. ...................... 17

      a.    Plaintiff Has Not Identified Any Provision of the Ads Terms
            Google Allegedly Breached. .................................................... 17

      b.    Plaintiff Does Not Allege an Actual Breach of the Ads
            Terms. ...................................................................................... 18

      c.    Google's Help Center Pages Are Not an Enforceable
            Contract. ................................................................................... 19

      d.    Plaintiff Fails to Allege Contract Damages. ............................. 21

    3.    Plaintiff Fails to State a Claim for Breach of the Implied Covenant. ....... 22

    4.    Plaintiff Cannot State a Quasi-Contract Claim. .................................. 23

    5.    Plaintiff Fails to State a Claim Under the FAL. ................................... 24

    6.    Plaintiff Fails to State a Claim Under the UCL. .................................. 26

      a.    Plaintiff Lacks UCL Standing. .................................................. 26

      b.    Plaintiff Fails to Allege Unlawful Conduct. .............................. 28

      c.    Plaintiff Fails to Allege Fraudulent Conduct. ........................... 28

      d.    Plaintiff Fails to Allege Unfair Conduct. .................................. 28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

- i -

**GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP**

**TABLE OF CONTENTS**
(continued)

                                                                                                        **Page**

   e. Plaintiff's Request for Injunctive Relief Must Be Denied. ........... 30

  7. Plaintiff Fails to State a Claim for Declaratory Relief. ............................ 31

V. CONCLUSION ..................................................................................................... 33

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ............................................................................... 15

*Animal Legal Def. Fund v. Mendes*,
    160 Cal. App. 4th 136 (2008) ................................................................. 27

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
    24 Cal. 4th 83 (2000) ...................................................................... 10, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................ 8, 18

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ............................................................................... 15

*Austin v. ABC Legal*,
    2022 WL 847307 (N.D. Cal. Mar. 22, 2022) ........................................... 7

*B.D. v. Blizzard Ent., Inc.*,
    76 Cal. App. 5th 931 (2022) .................................................................... 9

*Beecher v. Google N. Am. Inc.*,
    2018 WL 4904914 (N.D. Cal. Oct. 9, 2018) .................................... 17, 20

*Bell v. City of Kellogg*,
    922 F.2d 1418 (9th Cir. 1991) ............................................................... 16

*Benson v. Casa de Capri Enters., LLC*,
    980 F.3d 1328 (9th Cir. 2020) ................................................................. 8

*Berlanga v. Univ. of S.F.*,
    100 Cal. App. 5th 75 (2024), reh'g denied (Mar. 15, 2024) ............ 23, 24

*Berryman v. Merit Prop. Mgmt., Inc.*,
    152 Cal. App. 4th 1544 (2007) ............................................................... 28

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ................................................................. 17

*Bodenburg v. Apple Inc.*,
    146 F.4th 761 (9th Cir. 2025) ................................................................ 25

*Boynton v. Reliance Standard Life Ins. Co.*,
    2015 WL 11570935 (S.D. Cal. Jan. 29, 2015) ....................................... 21

Cooley LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iii -

**GOOGLE LLC'S MOTION TO DISMISS**
**5:25-CV-05480-PCP**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Buckeye Check Cashing, Inc. v. Cardegna,*
    546 U. S. 440 (2006) ................................................................................ 14

*Cal. Grocers Ass'n, Inc. v. Bank of Am.,*
    22 Cal. App. 4th 205 (1994) ...................................................................... 13

*Charles v. Portfolio Recovery Assocs., LLC,*
    2024 WL 1672350 (9th Cir. Apr. 18, 2024) ........................................ 8, 10

*Crittenden v. Apple, Inc.,*
    2022 WL 2132224 (N.D. Cal. June 14, 2022) .......................................... 21

*D'Arrigo Bros. of Cal. v. United Farmworkers of Am.,*
    224 Cal. App. 4th 790 (2014) .................................................................... 17

*Dana v. Hershey Co.,*
    180 F. Supp. 3d 652 (N.D. Cal. 2016) ...................................................... 25

*Daugherty v. Am. Honda Motor Co.,*
    144 Cal. App. 4th 824 (2006) .................................................................... 28

*Davis v. HSBC Bank Nev., N.A.,*
    691 F.3d 1152 (9th Cir. 2012) ................................................................... 26

*Dohrmann v. Intuit, Inc.,*
    823 F. App'x 482 (9th Cir. 2020) .............................................................. 10

*Dreamstime.com, LLC v. Google, LLC,*
    2019 WL 2372280 (N.D. Cal. June 5, 2019) ............................................ 32

*Drum v. San Fernando Valley Bar Ass'n,*
    182 Cal. App. 4th 247 (2010) ............................................................. 29, 31

*Ehret v. Uber Techs., Inc.,*
    68 F. Supp. 3d 1121 (N.D. Cal. 2014) ...................................................... 21

*Epic Sys. Corp. v. Lewis,*
    584 U.S. 497 (2018) ................................................................................... 15

*Frances T. v. Village Green Owners Ass'n,*
    42 Cal. 3d 490 (1986) ................................................................................ 19

*Gardiner v. Walmart Inc.,*
    2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ............................................ 32

*Gerlinger v. Amazon.com, Inc.,*
    311 F. Supp. 2d 838 (N.D. Cal. 2004) ................................................ 23, 24

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Glaude v. Macy's Inc.*,
2012 WL 6019069 (N.D. Cal. Dec. 3, 2012) ................................................... 8

*Gonzalez v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014) ....................................................................... 8

*Harris v. Tap Worldwide, LLC*,
248 Cal. App. 4th 383 ..................................................................................... 9

*Hodges v. Comcast Cable Commc'ns, LLC*,
21 F.4th 535 (9th Cir. 2021) ......................................................................... 33

*Houtchens v. Google LLC*,
649 F. Supp. 3d 933 (N.D. Cal. 2023) ......................................................... 16

*Illumina, Inc. v. Ariosa Diagnostics, Inc.*,
2014 WL 3897076 (N.D. Cal. Aug. 7, 2014) ............................................... 21

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ............................................. 17

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ..................................................................... 25

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ....................................................................... 9

*Khan v. City of Pinole Police Dep't*,
2020 WL 3617903 (N.D. Cal. July 2, 2020) ................................................. 7

*Klein v. Chevron U.S.A., Inc.*,
202 Cal. App. 4th 1342 (2012) ..................................................................... 24

*Konik v. Time Warner Cable*,
2010 WL 11549435 (C.D. Cal. July 19, 2010) ............................................. 27

*Kulp v. Munchkin, Inc.*,
678 F. Supp. 3d 1158 (C.D. Cal. 2023) ........................................................ 25

*Lee v. Ticketmaster LLC*,
817 F. App'x 393 (9th Cir. 2020) ................................................................. 10

*Lhotka v. Geographic Expeditions, Inc.*,
181 Cal. App. 4th 816 (2010) ....................................................................... 15

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................................... 21

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Lucas v. Gund, Inc.*,
   450 F. Supp. 2d 1125 (2006) ............................................................................................... 14

*Martinez v. Welk Grp., Inc.*,
   907 F. Supp. 2d 1123 (S.D. Cal. 2012) ................................................................................ 27

*Massel v. Successfulmatch.com*,
   2025 WL 2452371 (9th Cir. Aug. 26, 2025) ........................................................................ 12

*McDonald v. John P. Scripps Newspaper*,
   210 Cal. App. 3d 100 (1989) ............................................................................................... 21

*Miron v. Herbalife Int'l, Inc.*,
   11 F. App'x 927 (9th Cir. 2001) ..................................................................................... 18, 19

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ........................................................................................ 11, 13

*Morrison v. Yippee Ent., Inc.*,
   2025 WL 2389424 (9th Cir. Aug. 18, 2025) ........................................................................ 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ................................................................................................................... 7

*Moyer v. Chegg, Inc.*,
   2023 WL 4771181 (N.D. Cal. July 25, 2023) ........................................................................ 9

*Nelson v. Dual Diagnosis Treatment Ctr., Inc.*,
   77 Cal. App. 5th 643 (2022) ................................................................................................. 15

*Newton v. Am. Debt Servs., Inc.*,
   854 F. Supp. 2d 712 (2012) .................................................................................................. 14

*Overton v. Uber Techs., Inc.*,
   333 F. Supp. 3d 927 (N.D. Cal. 2018), *aff'd*, 805 F. App'x 485 (9th Cir. 2020) ................. 23

*Perez v. Nidek Co.*,
   711 F.3d 1109 (9th Cir. 2013) .............................................................................................. 17

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583 (2008) ............................................................................................. 27

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
   55 Cal. 4th 223 (2012) .................................................................................................... 9, 11

*Prager Univ. v. Google LLC*,
   2018 WL 1471939 (N.D. Cal. Mar. 26, 2018) ....................................................................... 8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Racine & Laramie, Ltd. v. Cal. Dep't of Parks & Recreation*,
    11 Cal. App. 4th 1026 (1992) ........................................................................................ 22

*Ramos v. Super. Ct.*,
    28 Cal. App. 5th 1042 (2018) ....................................................................................... 10

*Reilly v. Apple Inc.*,
    2022 WL 1215305 (N.D. Cal. Apr. 25, 2022) .............................................................. 29

*Roderick v. Mazzetti & Assocs., Inc.*,
    2004 WL 2554453 (N.D. Cal. Nov. 9, 2004) .............................................................. 16

*Rodriguez v. Google LLC*,
    2021 WL 6621070 (N.D. Cal. Aug. 18, 2021) ............................................................ 20

*Rodriguez v. Wells Fargo Bank, N.S.*,
    2019 WL 13472212 (N.D. Cal. Jan. 24, 2019) ........................................................... 29

*Sanchez v. Gruma Corp.*,
    2019 WL 1545186 (N.D. Cal. Apr. 9, 2019) ......................................................... 10, 11

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (2020) ........................................................................... 24, 25, 28

*Shearson/Am. Express, Inc. v. McMahon*,
    482 U.S. 220 (1987) ........................................................................................................ 7

*Shell Gulf of Mexico, Inc. v. Ctr. for Biological Diversity, Inc.*,
    771 F.3d 632 (9th Cir. 2014) ....................................................................................... 31

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    93 Cal. App. 4th 700 (2001) ................................................................................... 28, 29

*Snapkeys, Ltd. v. Google LLC*,
    442 F. Supp. 3d 1196 (N.D. Cal. 2020) ...................................................................... 23

*Soriano v. Countrywide Home Loans, Inc.*,
    2011 WL 2600759 (N.D. Cal. June 30, 2011) ............................................................ 30

*Spiegler v. Home Depot U.S.A., Inc.*,
    552 F. Supp. 2d 1036 (C.D. Cal. 2008), *aff'd* 349 F. App'x 174 (9th Cir. 2009) ................ 30

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................................ 16, 17

*Stewart v. Electrolux Home Prods., Inc.*,
    304 F. Supp. 3d 894 (E.D. Cal. Jan. 9, 2018) ............................................................ 25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- vii -

**GOOGLE LLC'S MOTION TO DISMISS**
**5:25-CV-05480**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Suchard v. Sonoma Academy,*
    109 Cal. App. 5th 1089 (2025) ................................................................... 27

*Thompson v. Isagenix Int'l LLC,*
    849 F. App'x 712 (9th Cir. 2021) ............................................................... 7

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ................................................................................... 16

*Trudeau v. Google LLC,*
    349 F. Supp. 3d 869 (N.D. Cal. 2018), *aff'd*, 816 F. App'x 68 (9th Cir. 2020) ............. *passim*

*United States v. Google LLC,*
    2025 WL 2523010 (Sep. 2, 2025) *(Antitrust II)* ...................................... 31

*United States v. Google LLC,*
    747 F. Supp. 3d 1 (D.D.C. 2024) *(Antitrust I)* ........................................ 29

*United States v. Google LLC,*
    778 F. Supp. 3d 797 (E.D. Va. 2025) ....................................................... 30

*Van Patten v. Vertical Fitness Grp., LLC,*
    847 F.3d 1037 (9th Cir. 2017) ................................................................. 27

*Veera v. Banana Republic, LLC,*
    6 Cal. App. 5th 907 (2016) ....................................................................... 25

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.,*
    2019 WL 4581340 (N.D. Cal. Sep. 20, 2019) ........................................... 2

*Warth v. Seldin,*
    422 U.S. 490 (1975) ................................................................................... 16

*Woods v. Google Inc.,*
    2011 WL 3501403 (N.D. Cal. Aug. 10, 2011) ........................................ 20

*Yoshida v. Vista Energy Mktg. LP,*
    2022 WL 88505 (E.D. Cal. Jan. 6, 2022) ................................................. 3

*Young v. Facebook, Inc.,*
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ................................................... 17

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- viii -

**GOOGLE LLC'S MOTION TO DISMISS**
**5:25-CV-05480**

**NOTICE OF MOTION AND MOTION TO STRIKE, MOTION TO COMPEL ARBITRATION,**

**OR IN THE ALTERNATIVE, MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT, on January 22, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable P. Casey Pitts, at the United States District Court for the Northern District of California, San Jose Division, 280 South 1st Street, 4th Floor, Courtroom 8, San Jose, California, 95113, Defendant Google LLC ("Google") will and hereby does move this Court for an order striking Plaintiff PVC Fence Wholesale, LLC's ("Plaintiff's") first Amended Complaint ("FAC"), and compelling Plaintiff to arbitrate before the American Arbitration Association ("AAA") each and every claim set forth in the FAC pursuant to the Parties' agreement to arbitrate, and dismissing the FAC in its entirety or, alternatively, staying this action pending arbitration.  Google will also and hereby does move for an order in the alternative dismissing Plaintiff's FAC for failure to state a claim under Rule 12(b)(6).

As an initial matter, Google seeks to strike the FAC on account of Plaintiff's failure to seek Google's consent or the Court's leave to amend its Complaint and therefore, Plaintiff improperly filed the FAC in violation of Rule 15(a)(2).  Google's First Motion to Compel, or in the alternative, Motion to Dismiss under Rule 12(b) (the "First Motion") was filed on September 9, 2025. (Dkt. No. 24.)  Plaintiff had 21 days thereafter, or until September 30, 2025, to amend its Complaint as of right under Rule 15(a)(1)(B).  But the parties entered a stipulation to extend only the deadline for Plaintiff to "file any *opposition* to the Motion" to October 7, 2025, but not to amend the Complaint. (Dkt. No. 29 (emphasis added).)  Therefore, Plaintiff's filing of the FAC on October 7, 2025, without seeking Google's consent or the Court's leave was procedurally improper under the Federal Rules.  Google therefore respectfully requests that the FAC be stricken, and the Court grant Google's First Motion on the grounds that Plaintiff failed to oppose it.

Should the Court be inclined to excuse Plaintiff's violation, Google moves to compel Plaintiff's FAC to arbitration since Plaintiff agreed to proceed in that venue, not in court.  First, under well-established law, the arbitration provision and class action waiver in Google's Advertising Program Terms are enforceable.  Indeed, considering the strong public policy favoring

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

1

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

arbitration, Plaintiff's claims cannot proceed in this forum, and this action should be dismissed with Plaintiff's individual claims compelled to arbitration before the AAA.  This threshold issue is dispositive, and mandates dismissal or a stay without reaching the merits. The Court's inquiry can end there.

But if the Court declines to strike the FAC and declines to compel Plaintiff to arbitrate, it can dismiss the case outright because the FAC fails to state an actionable claim for relief on any of Plaintiff's six causes of action.  Specifically, Plaintiff merely alleges potential harm without pleading that it suffered any injury.  Moreover, Plaintiff does not—and cannot—identify a single term in the Parties' contract that Google purportedly breached.  Nor does Plaintiff allege any affirmative misrepresentations or any unlawful, unfair, or fraudulent conduct by Google.

This Motion is based on the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and Declarations of Teresa Michaud (Counsel) and Armete Mobin (of Google), any other written or oral argument submitted in connection with this Motion, and any other materials properly before the Court.

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

2

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The Court has at least three ways in which it can dispose of this case. *First*, because Plaintiff improperly filed the FAC and failed to respond to Google's First Motion, the Court can strike the FAC and grant Google's First Motion. *Second*, the Court can compel Plaintiff to arbitrate. Plaintiff is a business that utilizes Google's pay-per-click advertising platform and to purchase such ads, Plaintiff agreed to Google's Advertising Program Terms ("Ads Terms"), thereby agreeing to arbitrate this dispute with Google on an individual basis. *Third*, the Court can dismiss the FAC for failure to state a claim. Plaintiff is suing Google not because Google failed to run the ads Plaintiff purchased, but to obtain more information about its ads' performance from Google than Google is contractually obligated to provide. Plaintiff was put on notice that Google would provide a report of *some* of the search terms and phrases that most often lead users to Plaintiff's ads and website, but *not all* search terms and phrases. Such service was not a contractual promise made by Google, and Plaintiff gave no separate consideration for this information. Thus, Google respectfully requests that the Court enforce the Federal Rules and the parties' agreement, and either strike, compel to arbitration, or dismiss Plaintiff's case.

### II.   FACTUAL BACKGROUND

#### A.    The Parties

Google operates an online advertising platform, known as "Google Ads," which allows businesses to bid at auction to place targeted advertisements on a variety of websites and apps. Plaintiff is a Florida-based company that sells fencing materials to retailers, contractors, and consumers. (FAC ¶ 193.) Since 2011, Plaintiff has had a Google Ads account and purchased ads on the Google Ads platform. (Mobin Decl. ¶¶ 36–38.) Plaintiff currently operates one Google Ads Account: 784-142-6301, created on September 19, 2011 (the "Account"). (*Id*.)

#### B.    The Google Ads Platform

Businesses that utilize Google Ads' "pay-per-click" service choose "keywords" they wish to "bid" on, and when users type a relevant search term or phrase into Google Search, Google holds an auction (instantaneously) for the advertising space on the search results page. (FAC ¶¶ 24, 31.)

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

3

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

The matching or "winning" bid is the one whose ads are shown to the user. (*Id*. ¶¶ 31–32.) If a user clicks on the business's ad, Google charges the business, i.e., "the advertiser pays *per click*." (*Id*. ¶ 45 (emphasis added).) When selecting keywords to bid on, businesses choose among three levels of "matching": (1) "broad match" – which places ads in response to "searches that are related" to a keyword but "don't contain the direct meaning" of the keyword; (2) "phrase match" – which places ads in response to "searches that include the meaning" of a keyword that "can be implied"; and (3) "exact match" – which places ads in response to "searches that have the same meaning or same intent as the keyword." (*Id*. ¶¶ 33–40.) In other words, advertisers—not Google—"identify specific search parameters on which they wish to bid[.]" (*Id*. ¶ 31.)

Under the Ads Terms, Google promises to run ads for advertisers when they win in the auction process. Separately from this contract, Google provides businesses with performance metrics, including a "Search Query Report," which helps businesses understand which keyword bids had the best click results, and in turn, helps optimize their keyword selection for future bids. (*Id*. ¶ 41.) The Search Query Report shows the search terms that a "significant number of users searched for[.]" (*Id*. ¶ 69.) As a general policy, where "only one or a small handful" of people have used a certain search term, those search terms are not disclosed in the Search Query Report and are often "group[ed] in" a category labeled "Other Search Terms[.]" (*Id*. ¶ 68.) For example, if a user's search term is uncommon or contains long, detailed sentences, those may not be individually reported on the Search Query Report due to the idiosyncratic or highly personal nature of the query. Instead, such queries are grouped under "Other Search Terms." (*Id*. ¶¶ 68–69.)

### C. Google Ads Terms of Service

To sign up for Google Ads and create an Ads campaign, the user must first create or sign-in to their Google account. (Mobin Decl. ¶ 6.) When creating a Google account, the user is consistently shown a hyperlink to the Google Terms of Service ("Google ToS"), which governs the user's relationship with Google, permitting them to use Google's services in exchange for following certain policies and guidelines. (*Id*. ¶¶ 3, 8.) At the final step of the Google account creation process, the user is explicitly asked to accept the Google ToS and is provided a direct hyperlink to the full version of the Google ToS operative at the time of account creation. The page states: "[t]o

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

4

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

1   create a Google Account, you'll need to agree to the Terms of Service below." (*Id.* ¶ 10.)  To

2   proceed past this screen and finish creating the account, the user *must* press a button labeled "**I**

3   **agree**." (*Id.* (emphasis added).)

4        Only after the user agrees to the Google ToS can they set up an ads campaign to use

5   Google's advertising services.  To do so, the user must go through a step-by-step process, including

6   the acceptance of the Ads Terms. (*Id.* ¶ 11.)  The steps entail providing a business name and details

7   regarding the advertised products or services, choosing a goal for the campaign, choosing the set

8   of keywords to define who should see the ads, setting the budget, and providing payment details.

9   (*Id.* ¶¶ 13–22.)  At the final step, before the advertiser can create the campaign, the advertiser is

10  shown a message containing a direct hyperlink to the full Ads Terms operative at the time of

11  campaign creation.  (*Id.* ¶¶ 23–24.)  The page explicitly gives notice to the user of both the Ads

12  Terms, the binding arbitration clause, and the ability to opt-out of the arbitration clause, stating:

13  "By continuing, *you agree* to the <u>Google Ads Terms</u>.  They include the use of binding arbitration

14  to resolve disputes rather than jury trials or class actions.  Please follow the instructions in the terms

15  if you wish to opt out of this provision." (*Id.* ¶ 22 (emphasis added).)  This is set out in **bold** in the

16  first paragraph of the Ads Terms.  (Mobin Decl., Ex. B.)

17       **D.**     **The Ads Terms Require Arbitration of Disputes**

18       Section 13 of the Ads Terms contains an "Arbitration Provision," which was added to the

19  Ads Terms on September 1, 2017, and has remained in place since that date.  (*Id.* ¶¶ 25, 30, 34.)[1]

20  Under Section 13(A), Google and the Customer agree to arbitrate "all disputes and claims between

21  Google and Customer" that "arise out of or relate in any way to the Programs or these Terms." (*Id*.)

22  Section 13(F) provides that a Customer may opt out of the Arbitration Provision if it notifies Google

23  within 30 days of acceptance through a link in Section 13(F).  (*Id.* ¶ 31.)

24       **E.**     **Plaintiff Accepted the Ads Terms and Never Opted Out of Arbitration**

25       Plaintiff's Account was created by Don Crepeau on September 19, 2011.  (Mobin Decl. ¶

26  38.)  Plaintiff accepted the Arbitration Provision on October 25, 2017.  (*Id.* ¶ 39.)  Mr. Crepeau did

27

28  ---
[1] Each time there is a material update to the Ads Terms, advertisers are required to accept the update and may not continue to use Google Ads services until they have done so.  (*Id.* ¶¶ 25, 27–28.)

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

5

**GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP**

not opt out on behalf of Plaintiff, nor did any of Plaintiff's agents. (*Id.*)

Before adding the Arbitration Provision, Google notified all existing customers, including Plaintiff, through an August 17, 2017 blog post and direct email that it was updating the Ads Terms to include the Arbitration Provision:

> When you first created your AdWords account, you agreed to Terms and Conditions that provide a common understanding in basic areas like policy, payment and liability. As AdWords grows to meet the needs of businesses around the world, we sometimes need to make updates.
>
> **Starting today, we're rolling out new Terms and Conditions in all countries and territories.** Please read through these updated terms carefully. They include:
>
> - More flexibility to notify or inform you via phone calls, text messages and emails.
>
> - New provisions related to how products and features are tested within AdWords.
>
> - In the U.S., Canada, and most countries in Latin America and Asia, a provision to use arbitration to resolve disputes rather than jury trials or class actions. Follow the instructions in the dispute resolution section of the terms to opt-out of this provision (U.S. and Brazil only).
>
> - New provisions related to the disclosure of technical errors and bugs within AdWords.
>
> - New data protection terms related to the EU General Data Protection Regulation (GDPR) and other EU privacy frameworks.
>
> As with any legal document, you might consider consulting an attorney if you have any questions.
>
> ## Action required
>
> **Please review and accept the new Terms and Conditions by signing in to your AdWords account.** When prompted, click "Accept" to indicate your acceptance.
>
> If you use the AdWords API or a third-party tool, you'll need to log directly into your AdWords account to accept. Accepting won't affect any of your bids, budgets, invoicing or other campaign settings. However, if you "Decline," your ads will no longer be eligible to serve.

These communications informed advertisers that they would be required to take action to accept the updated Ads Terms or their ads would be paused, and that they could opt-out of the Arbitration Provision if they did not wish to be bound by it. (*Id.* ¶ 25 & Ex. D.) Advertisers were also notified that if they "Decline[d]" or did not accept the new Ads Terms, their "ads [would] no longer be eligible to serve." (*Id.*, Ex. D.)

Each of these notices included a link that directed advertisers to an acceptance page displaying the entire text of the September 2017 Terms. (*Id.* ¶ 28.) Advertisers then had to choose between two options, either clicking: (1) "Accept."; or (2) "Decline." (*Id*, Ex. E.) If the advertiser

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

6

**GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP**

1  clicked "Accept" to agree to the Ads Terms but wished to opt-out of arbitration, they could click
2  the "Learn more" link to go to the opt-out page.  (*Id*. ¶ 28, Ex. E.)

3  ### III.    LEGAL STANDARD

4  Under Rule 12(f), "a court may strike an amended complaint where the plaintiff fails to
5  comply with the requirements and limitations set forth in [Rule 15]." *Khan v. City of Pinole Police*
6  *Dep't*, 2020 WL 3617903, at *6 (N.D. Cal. July 2, 2020).  Rule 15 authorizes plaintiffs to file an
7  amended complaint once as a matter of course either 21 days after serving the initial complaint, or
8  21 days after receiving service of a responsive motion or pleading.  *See* Fed. R. Civ. P. 15(a)(1).
9  Otherwise, plaintiffs who wish to amend a complaint must obtain either the opposing party's
10  written consent or leave of the court. Fed. R. Civ. P. 15(a)(2).  If the plaintiff is "well outside the
11  confines of Rule 15(a)(1)[,]" the court may grant the motion to strike.  *Khan*, 2020 WL 3617903,
12  at *6; *see also Austin v. ABC Legal*, 2022 WL 847307, at *2 (N.D. Cal. Mar. 22, 2022) (granting
13  motion to strike an untimely amended complaint because it was filed without the court's leave).[2]

14  A motion to compel arbitration is reviewed in light of the Federal Arbitration Act's ("FAA")
15  "federal policy favoring arbitration," which requires courts to "rigorously enforce agreements to
16  arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (citations omitted).
17  The FAA provides that an arbitration agreement in any contract evidencing a transaction involving
18  commerce shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or
19  in equity for the revocation of any contract.  9 U.S.C. § 2.  Such a motion is intended to move "an
20  arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H.*
21  *Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).  "A court may consider
22  evidence outside the pleadings" when deciding the motion. *Thompson v. Isagenix Int'l LLC*, 849
23  F. App'x 712, 712 (9th Cir. 2021).  And "any doubts concerning the scope of arbitrable issues
24  should be resolved in favor of arbitration[.]"  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25; *see*
25  *also Benson v. Casa de Capri Enters., LLC*, 980 F.3d 1328, 1330 (9th Cir. 2020) (same).  This
26  presumption of arbitrability "carries particular force where the arbitration clause is phrased in broad

[2] Google acknowledges the Court's Standing Order that leave should be freely given when justice so requires, but also that without agreement, such motion to amend must be filed "by the deadline for amending the pleadings."

and general terms." *Charles v. Portfolio Recovery Assocs., LLC*, 2024 WL 1672350, at *2 (9th Cir. Apr. 18, 2024) (citation omitted).  Once a court determines that a plaintiff's claims are subject to arbitration, "the court loses its subject matter jurisdiction over any [such] claims" and must dismiss them under Rule 12(b)(1).  *Glaude v. Macy's Inc.*, 2012 WL 6019069, at *3 & n.39 (N.D. Cal. Dec. 3, 2012).

Finally, to survive a motion under Rule 12(b)(6), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Instead, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The Court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Prager Univ. v. Google LLC*, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)).  Nor must the Court accept allegations that contradict documents attached to or incorporated by reference in the complaint or judicially noticed.  *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014).

## IV.    ARGUMENT

### A.    The Court Should Strike the FAC and Grant Google's First Motion.

Plaintiff filed an untimely amended complaint on October 7, 2025, without seeking Google's consent or leave of Court, in violation of the Federal Rules.  Under Rule 15(a)(1), Plaintiff only had 21 days after the service of Google's First Motion, or until September 30, 2025, to amend its complaint as of right.  The parties previously entered a stipulation to extend only the deadline for Plaintiff to "file any *opposition* to the Motion" to October 7, 2025, but not to amend the Complaint.  (Dkt. No. 29 (emphasis added).)  Plaintiff never asked Google for written consent and had no basis to assume that it had Google's consent to amend the complaint based on the parties' stipulation.  The record of this case is also clear that Plaintiff never filed a request for leave to file an amended complaint to the Court.  Thus, Plaintiff's FAC is improper under Rule 15(a)(1), and should be stricken from the record pursuant to Rule 12(f).  Consequently, the Court should grant Google's First Motion on the grounds that Plaintiff failed to oppose it.

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

8

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

1

**B.      The Court Should Dismiss This Action in Favor of Arbitration.**

2

If the Court does not strike the FAC, it should compel Plaintiff to arbitration.  In a motion

3

to compel arbitration, all a moving party must show is (1) "whether a valid arbitration agreement

4

exists" and (2) "whether the agreement encompasses the disputes at issue."  *Moyer v. Chegg, Inc.*,

5

2023 WL 4771181, at *2 (N.D. Cal. July 25, 2023) (citation omitted).  The burden then shifts to

6

the opposing party to prove grounds for denial.  *See Pinnacle Museum Tower Ass'n v. Pinnacle*

7

*Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012).  Here, Google easily satisfies both prongs, and

8

there is no ground for denial.  Plaintiff agreed to the Ads Terms, which created a binding contract.

9

(*See* Mobin Decl. ¶ 39; FAC ¶¶ 25, 195.)  The Ads Terms contain a broad Arbitration Provision

10

which covers Plaintiff's claims here, and the Arbitration Provision must be enforced.

11

**1.      The Parties Entered into a Binding Agreement to Arbitrate.**

12

A binding, written, and enforceable arbitration agreement exists between the Parties through

13

Plaintiff's consent to the Ads Terms on October 25, 2017, and decision not to opt-out of the

14

Arbitration Provision.  *See Harris v. Tap Worldwide, LLC*, 248 Cal. App. 4th 373, 383 (2016)

15

(agreement to arbitrate may be express or implied as long as it is written); *see also* Section II.E,

16

*supra*.  Indeed, Plaintiff's own FAC explicitly seeks to enforce the Ads Terms.  (*See* FAC ¶ 195

17

("The contract between the parties is defined by . . . the [Ads Terms]").)  Therefore, there is no

18

question that Plaintiff consented to arbitrate its claims.

19

Courts routinely enforce online arbitration agreements where, as here, the user was

20

presented with terms that conspicuously provided notice of the agreement's existence and required

21

the user to click an "I accept" button to be bound.  *Trudeau v. Google LLC*, 349 F. Supp. 3d 869,

22

881 (N.D. Cal. 2018), *aff'd*, 816 F. App'x 68 (9th Cir. 2020); *Keebaugh v. Warner Bros. Ent. Inc.*,

23

100 F.4th 1005, 1020–21 (9th Cir. 2024); *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 946

24

(2022).  Indeed, this District has already determined that the Ads Terms create an enforceable

25

agreement to arbitrate.  *Trudeau*, 349 F. Supp. 3d at 881 (compelling arbitration based on

26

advertiser's acceptance of the Ads Terms). These agreements, commonly referred to as "clickwrap"

27

agreements, are enforceable regardless of whether the user read the terms.  *Id*. at 946 (noting courts

28

generally find "clickwrap agreements" enforceable).  Indeed, courts have consistently enforced

Cooley LLP
Attorneys at Law
Downtown Los Angeles

9

**Google LLC's Motion to Strike,
Compel to Arbitration, or Dismiss
5:25-cv-05480-PCP**

clickwrap agreements far less explicit than those at issue here. *See Lee v. Ticketmaster LLC*, 817 F. App'x 393, 394–95 (9th Cir. 2020) (affirming motion to compel arbitration even where terms did not require clicking a separate box to agree); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 483–84 (9th Cir. 2020) (reversing denial of motion to compel where user was presented with language that by clicking "Sign In," user agreed to terms).

### 2.    The Dispute is Covered by the Arbitration Provision.

The Arbitration Provision encompasses Plaintiff's claims in this action. The provision requires the Parties to arbitrate "all disputes and claims between Google and Customer" that "arise out of or relate in any way to the Program or these Terms." (Mobin Decl., Ex. B § 13(A).) This provision "is intended to be broadly interpreted and includes," for example, "claims brought under any legal theory[,]" "claims that arose before . . . [the] Advertiser first accepted any version of these Terms containing an arbitration provision[,]" and "claims that may arise after the termination of . . . [the] Advertiser's Use of the Programs." (*Id.*)  California courts recognize that this language creates a binding agreement to arbitrate a wide range of disputes, and that, "[f]or a party's claims to come within the scope of such a clause, the factual allegations of the complaint 'need only "touch matters" covered by the contract containing the arbitration clause.'" *Ramos v. Super. Ct.*, 28 Cal. App. 5th 1042, 1052 (2018) (acknowledging that similar clause can "encompass tort, statutory, and contractual disputes") (citations omitted).

Here, Plaintiff's allegations arise directly out of the Google Ads service: it complains that Google charges advertisers utilizing Google Ads' pay-per-click advertising but "provides no information" other than the amount charged.  (FAC ¶¶ 1–2.)  Plaintiff's claims thus not only "touch matters" covered by the Arbitration Provision but fall comfortably within the scope of the broad agreement to arbitrate. *See Charles v. Portfolio Recovery Assocs., LLC*, 2024 WL 1672350, at *2 (9th Cir. Apr. 18, 2024) (citations omitted).

### 3.    The Ads Terms are Enforceable.

To invalidate an arbitration provision as unconscionable, the party resisting arbitration must show that the provision is *both* procedurally and substantively unconscionable. *Sanchez v. Gruma Corp.*, 2019 WL 1545186, at *4 (N.D. Cal. Apr. 9, 2019) (citing *Armendariz v. Found. Health*

Cooley LLP
Attorneys at Law
Downtown Los Angeles

10

Google LLC's Motion to Strike,
Compel to Arbitration, or Dismiss
5:25-cv-05480-PCP

1    *Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). Plaintiff can show neither.

2                    **a.      The Ads Terms are Not Procedurally Unconscionable.**

3          Procedural unconscionability occurs where a contract or clause involves "oppression,

4    consisting of a lack of negotiation and meaningful choice, or surprise, such as where the term at

5    issue is hidden within a wordy document." *Sanchez*, 2019 WL 1545186, at *4. Neither of these

6    conditions exist in the Ads Terms. *First*, because Plaintiff (and other users) could have opted out

7    of arbitration by simply clicking an opt-out link and selecting the clearly indicated opt-out bubble,

8    there is no inequity of bargaining power and no surprise. *Mohamed v. Uber Techs., Inc.*, 848 F.3d

9    1201, 1210 (9th Cir. 2016) ("[T]he existence of a meaningful right to opt-out of [arbitration]

10   necessarily renders [the arbitration clause] . . . procedurally *conscionable* as a matter of law."

11   (alterations in original) (emphasis added) (citation omitted)); *Pinnacle*, 55 Cal. 4th at 247

12   (procedural unconscionability requires a lack of "meaningful choice" (citation omitted)); *see also*

13   *Trudeau*, 349 F. Supp. 3d at 877 (finding that Google's Ads Terms provided a meaningful

14   opportunity to opt out of the arbitration provision).

15         *Second*, Plaintiff alleges that the Arbitration Provision is procedurally unconscionable

16   because of the "multiple steps that make it near-impossible to locate the terms at issue." (FAC ¶¶

17   118–161.) On the contrary, Google gives clear notice of the Ads Terms, the Arbitration Provision,

18   and the opt-out option to every user during the Ads account creation process, dooming Plaintiff's

19   argument. (Mobin Decl. ¶¶ 22.)

20         Every user who seeks to create an ads campaign through Google Ads must first sign in or

21   create a Google account by accepting the Google ToS, then proceed to create an ads account by

22   accepting the Google Ads Terms. (Mobin Decl. ¶ 6.) Plaintiff's observation that "[n]othing on

23   [the Google account creation] page refers to an arbitration agreement" (FAC ¶¶ 124, 128) is correct

24   – because the Google ToS does not contain an arbitration clause. But the Google ToS is ***not*** the

25   contract Google relies on to compel arbitration in this Motion. Google relies on the Ads Terms,

26   which ***does*** contain an Arbitration Provision. (Mobin Decl., Ex. B.)

27         Once the user creates a Google account, the user can navigate to the Google Ads page.

28   (Mobin Decl. ¶¶ 11–12.) From there, the user goes through a clear step-by-step process to create a

Cooley LLP
Attorneys at Law
Downtown Los Angeles

11

**Google LLC's Motion to Strike,
Compel to Arbitration, or Dismiss
5:25-cv-05480-PCP**

1    Google Ads advertising campaign, during which, and before finalizing the campaign, the user ***must***

2    accept the Terms.  (*Id.* ¶¶ 12–24.)  At the last step, the user is shown a message containing a

3    hyperlink, set out in blue font from the surrounding text, to the full Ads Terms operative at the time

4    of campaign creation.  (*Id.* ¶¶ 22–23.)  This page explicitly gives notice to the user of the Ads

5    Terms, the binding arbitration clause, and the ability to opt-out of the arbitration clause, stating:

6    "By continuing, you agree to the <u>Google Ads Terms</u>. They include the use of binding arbitration to

7    resolve disputes rather than jury trials or class actions.  Please follow the instructions in the terms

8    if you wish to ***opt out*** of this provision." (*Id.* ¶ 22 (emphasis added).)  The Ninth Circuit has found

9    similar notice of the terms of service to be reasonably conspicuous when considering a motion to

10   compel arbitration.  *Morrison v. Yippee Ent., Inc.*, 2025 WL 2389424, at *1 (9th Cir. Aug. 18,

11   2025); *Massel v. Successfulmatch.com*, 2025 WL 2452371, at *1 (9th Cir. Aug. 26, 2025).

12   Google's disclosure of the arbitration clause and the opt-out option that appears immediately

13   following the hyperlinked Terms more than satisfies the reasonably conspicuous requirement, and

14   dispositively refutes Plaintiff's false allegation that during account creation, "there is no reference

15   to terms of service specific to Google Ads or an arbitration provision."  (FAC ¶¶ 140–141.)

16        Moreover, the "Google Ads Terms" hyperlink leads directly to the full Ads Terms (Mobin

17   Decl. ¶ 23 & Ex. B), and does not require the user to go through the steps that Plaintiff identified

18   in the FAC.  (FAC ¶¶ 142–151.)  Even if the user were to retroactively look for the Ads Terms,

19   outside of the account creation process, and arrive at the page that Plaintiff provided (FAC, Ex. H),

20   the user can click on "Print" to immediately access the Terms in a new window.  In addition,

21   Plaintiff's argument that the opt-out provision is "buried" is unavailing when the first paragraph of

22   the Ads Terms states in bold that "**If Customer wishes, Customer may opt out of the**

23   **requirement to arbitrate disputes by following the instructions in Section 13(F) below within**

24   **30 days of the first acceptance date of any version of these Terms containing an arbitration**

25   **provision**."  (Mobin Decl. Ex. B (emphasis in original).)

26        Finally, Plaintiff's allegations of procedural unconscionability for users who created an Ads

27   account prior to the September 1, 2017 Terms are meritless.  (FAC ¶¶ 156–161.)  Not only were

28   these users directly emailed notice regarding the revised Ads Terms, which led them to a link that

Cooley LLP
Attorneys at Law
Downtown Los Angeles

12

**Google LLC's Motion to Strike,
Compel to Arbitration, or Dismiss
5:25-cv-05480-PCP**

1    disclosed the newly-added arbitration provision and the entitlement to opt out, but Plaintiff

2    completely omits the clear message at the top of revised Ads Terms themselves.  (Mobin Dec. ¶¶

3    27–29.)  Upon clicking the hyperlink in the September 2017 notice to accept the amended Ads

4    Terms, the top of the page users received stated: "Please review these Terms carefully. They include

5    the use of ***binding arbitration*** to resolve disputes rather than jury trials or class actions. Please

6    follow the instructions in the terms below if you wish to opt out of ***this provision***. Learn more."

7    (Mobin Decl. ¶ 29 & Ex. E (emphasis added).)   Against the backdrop of these unambiguous

8    disclosures, Plaintiff's contention that "a reasonable user is led to believe that the opt-out relates to

9    *all* of the Terms and will prevent the user from listing ***any*** ads going forward," is untenable.  (Mobin

10   Decl. Ex. E (emphasis added).)   Most importantly, this District found this same 2017 notice

11   procedure to have "provided a meaningful opportunity to opt out of the arbitration provision[,]"

12   and held that the provision is not procedurally unconscionable.  *See, e.g.*, *Trudeau*, 349 F. Supp. 3d

13   at 877 & 879 ("Google implemented an extensive notice campaign and required that advertisers

14   expressly accept the new 2017 TOS.").

15        Accordingly, because the Arbitration Provision is not procedurally unconscionable, the

16   inquiry stops here.   *Mohamed*, 848 F.3d at 1210–11 (declining to address substantive

17   unconscionability when no procedural unconscionability shown).

18              **b.       The Ads Terms are Not Substantively Unconscionable.**

19        Substantive unconscionability examines whether an Arbitration Provision creates "overly

20   harsh" or "one-sided results" that "shock the conscience." *Armendariz*, 24 Cal. 4th at 114; *Cal.*

21   *Grocers Ass'n, Inc. v. Bank of Am.*, 22 Cal. App. 4th 205, 213-15 (1994).  Plaintiff's argument that

22   the Arbitration Provision is substantively unconscionable is based primarily on a damages

23   limitation that exists separate and apart from the Arbitration Provision in the Ads Terms.  But where

24   an unconscionability challenge is not to the arbitration provision itself, and instead focuses on other

25   aspects of the Ads Terms or the Ads Terms as a whole, the issue is considered by the arbitrator in

26   the first instance. *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U. S. 440, 445-46 (2006).  Indeed,

27   "courts within this Circuit have held that offending limitations of liability do not render an entire

28   arbitration provision void or the agreement unconscionable." *Yoshida v. Vista Energy Mktg. LP*,

Cooley LLP
Attorneys at Law
Downtown Los Angeles

13

**Google LLC's Motion to Strike,
Compel to Arbitration, or Dismiss
5:25-cv-05480-PCP**

2022 WL 88505, at *7 (E.D. Cal. Jan. 6, 2022). Plaintiff concedes that the allegedly offending damages limitation falls outside of the agreement to arbitration. (FAC ¶ 165.) Thus, even if it were unconscionable (and it is not, for the reasons discussed below), the damages limitation would not provide a legal basis to avoid arbitration. *Id.* The Court's inquiry can and should end here.

Recognizing this failing, Plaintiff attempts to conflate the terms and wrap the damages limitation into its agreement to arbitrate, arguing that arbitration should be viewed in combination with the damages limitation, because when read together the damages limitation "effectively renders the arbitration provision illusory because there is no incentive for users to engage in arbitration that nearly eliminates its remedies" and would make "finding legal representations nearly impossible." (FAC ¶¶ 165–68, 172–73.) But these unsupported conclusions are of no legal significance, and lack support in law and fact. For example, without any supporting factual allegations, Plaintiff contends that the damages limitation renders the arbitration agreement unconscionable because "eliminates the incentive for an attorney to accept representation." (FAC ¶¶ 101–103.) This makes no sense. The benefit of arbitration is that claimants do not need to hire counsel—it offers them access to expedited proceedings to resolve their claims on the merits without the need to hire expensive representation. Cases finding substantive unconscionability on grounds that a contract creates barriers to legal representation have been limited to provisions that impose prohibitive costs and create fee-shifting requirements. *See, e.g., Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1133 (2006) (noting that arbitration in employment contexts must not require employee to bear costs, as this is prohibitive to claimants); *Newton v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d 712, 733 (2012) (holding clause eliminating statutorily mandated attorney's fees contributed to unconscionability). Neither applies here.

The few aspects of the ***Arbitration Provision*** itself that Plaintiff point to likewise do not offer evidence of substantive unconscionability. First, Plaintiff's attempts to analogize the Arbitration Provision to cases where the imposition of unreasonable arbitration costs renders the clause substantively unconscionable fall flat. (FAC ¶¶ 174–178.) Unlike in *Lhotka* (FAC ¶ 169), where the at-issue arbitration provision would have forced the plaintiffs to spend more than the limited value of available damages to travel across multiple states to litigate their claims (and

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

14

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

required them to indemnify defendants for costs and fees for defending against the claims), the Arbitration Provision here requires that any arbitration hearing take place in the county of the *advertiser's* principal place of business. *Lhotka v. Geographic Expeditions, Inc*., 181 Cal. App. 4th 816, 825 (2010); (Mobin Decl., Ex. B § 13.C).  Likewise, the Ads Terms' arbitration provision bears no relation to the release provision in *Nelson* (FAC ¶ 95), which required that plaintiff not only to waive *all* claims against defendant and third parties, and to indemnify not only defendant, but "'any other person' in any dispute arising from [plaintiff's] presence at a Sovereign facility[,]" such that plaintiff became the "financial guarantor against" third parties' conduct. *Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 77 Cal. App. 5th 643, 663-64 (2022).  No such provisions are present here. Indeed, many of the Arbitration Provision's terms expressly favor and limits costs for advertisers, like Plaintiff.  For example, despite Plaintiff's vague protestation regarding fees, the Arbitration Provision requires that Google pay the *advertiser's* arbitration fees for claims below a certain threshold, (Mobin Decl., Ex. B § 13.D); and, for higher value claims, requires that the advertiser's arbitration fees be capped (with Google covering the remaining costs), in many cases imposing fees far below the standard AAA fee schedule (*id.*).

The application of the Commercial Arbitration Rules is also entirely reasonable, since Google Ads is a commercial service, used *by businesses*, like Plaintiff, to advertise their products or services.  Plaintiff offers no justification why its business should be subject to the *consumer* rules.  Likewise, class action waivers are routinely enforced.  *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011); *Am. Express Co. v. Italian Colors Rest*., 570 U.S. 228, 234 (2013).

Tellingly, multiple courts, including in this district, have found that Google's Ads Terms and Arbitration Provision are not unconscionable.  *See, e.g.*, *Trudeau*, 349 F. Supp. 3d at 872, 881; *Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 944 (N.D. Cal. 2023) (same for similar provision). Nothing here should change this result.

Finally, by "bring[ing] an action simultaneously with individual arbitration claims" (FAC ¶ 190), Plaintiff concedes that the Arbitration Provision is enforceable.  *Roderick v. Mazzetti & Assocs., Inc.*, 2004 WL 2554453, at *5 (N.D. Cal. Nov. 9, 2004) ("the initiation of arbitration . . .

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

15

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

renders the arbitration process binding on the parties").   In the absence of procedural and substantive unconscionability, the Arbitration Provision must be enforced.

## C.    In The Alternative, The Court Should Dismiss This Action Because the FAC Fails to State a Single Actionable Claim.

### 1.    Plaintiff Lacks Article III Standing.

For each claim, Article III requires Plaintiff to demonstrate that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 450 (2021).   Plaintiff bears the burden of establishing these elements and, at the pleading stage, "must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338 (citation omitted).   In a class action like this one, Plaintiff must also allege facts showing that it *personally* suffered injury.   *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (it is insufficient to show "injury has been suffered by other, unidentified members of the class").   Absent standing, a court must dismiss the case.   *Bell v. City of Kellogg*, 922 F.2d 1418, 1422 (9th Cir. 1991).

The FAC must be dismissed in its entirety because Plaintiff fails to plead any plausible injury.   *See TransUnion LLC*, 594 U.S. at 417 ("No concrete harm, no standing.").   The crux of Plaintiff's FAC is that Google charged it for serving Plaintiff's advertisements to users as requested, which resulted in users clicking on the ads, but Google did not disclose every user's search queries. (FAC ¶¶ 1–2.)   But Plaintiff only points to *potential* harms that *may* arise because of the alleged conduct.   (*Id*. ¶ 232.)   Plaintiff concludes without alleging facts, that it "has been injured and damaged by . . . being charged for keywords it did not choose, paying and being charged for keywords that Google never ran, Google manipulating its pricing structure to charge an effectively higher-than-disclosed price for keywords, and by precluding Plaintiff from being able to take any action to modify and improve its search terms[.]" (*Id*. ¶ 199.)   On the contrary, Plaintiff's alleged *facts* show that it was charged for advertisements that were served and ***clicked on*** by users, resulting in actual conversions, thereby garnering more visibility and revenue for its business.   (*Id.* ¶ 198 & Ex. K.)   Plaintiff was not charged for search matches, but when users *clicked on* the ads Plaintiff

Cooley LLP
Attorneys at Law
Downtown Los Angeles

16

Google LLC's Motion to Strike,
Compel to Arbitration, or Dismiss
5:25-cv-05480-PCP

itself chose to serve.  Plaintiff fails to allege how this amounts to harm – rather than success – since more users clicking on its ads means more business for Plaintiff, not less.  Plaintiff's allegations amount to nothing more than "conclusory and bare bones words and phrases without any factual content" are, thus, "vacuous claims [] insufficient to establish standing or to survive a motion to dismiss." *Perez v. Nidek Co.*, 711 F.3d 1109, 1113 (9th Cir. 2013); *see also Spokeo*, 578 U.S. at 339 ("Particularization is necessary to establish an injury in fact," meaning "an injury . . . 'must affect the plaintiff in a personal and individual way.'" (citations omitted)).  Without factual allegations showing that *it personally* was subject to the purported harms, Plaintiff cannot show that it suffered a particularized or concrete injury and so lacks standing to bring its claims.  *See, e.g.*, *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960–61 & n.4 (9th Cir. 2009) (affirming dismissal for lack of standing where plaintiffs alleged "a potential risk . . . not to themselves, but to other unidentified [] users"); *In re iPhone Application Litig.*, 2011 WL 4403963, at *5 (N.D. Cal. Sept. 20, 2011) (plaintiffs lacked standing where they made only "general allegations about the [defendants], . . . but [p]laintiffs [did] not identif[y] an actual injury to themselves").

### 2.    Plaintiff Fails to State a Claim for Breach of Contract.

To adequately plead a breach of contract claim, a plaintiff must show: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  *D'Arrigo Bros. of Cal. v. United Farmworkers of Am.*, 224 Cal. App. 4th 790, 800 (2014) (citations omitted).  Here, while the existence of a contract— i.e., the Ads Terms (FAC ¶¶ 25, 195)—is not in dispute, Plaintiff has otherwise failed to put forth any allegations that would otherwise support the elements of a breach of contract claim.

### a.    Plaintiff Has Not Identified Any Provision of the Ads Terms Google Allegedly Breached.

As a threshold matter, "[i]n an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached." *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (dismissing contract claim).  Indeed, without this basic allegation, a plaintiff's pleading is fundamentally flawed and must be dismissed. *See Beecher v. Google N. Am. Inc.*, 2018 WL 4904914, at *2 (N.D. Cal.

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

17

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

Oct. 9, 2018) (dismissing contract claim where plaintiff failed to "point to specific contractual terms which were allegedly breached").  Here, the only contract between the Parties to which Plaintiff refers is the Ads Terms. (*See* FAC ¶ 25 (attaching as evidence a copy of the applicable Google Ads Terms "between Plaintiff and Defendant").)  But Plaintiff fails to identify *any* provision in the Ads Terms that Google purportedly breached, so its claim fails.  *See Miron v. Herbalife Int'l, Inc*., 11 F. App'x 927, 929 (9th Cir. 2001) (upholding dismissal of breach of contract claim where plaintiffs did not identify the specific provision allegedly breached).

<h3 style="text-align:center">b.    Plaintiff Does Not Allege an Actual Breach of the Ads Terms.</h3>

Plaintiff alleges that "[t]he [Ads Terms] . . . contain[] *scant* contractual commitments or obligations by [Google] in connection with its role as the operator of the Google Ads program including how Google Ads function [and] how Defendant places users' ads in response to internet searches[.]"  (FAC ¶ 28.)  But the commitments in Google's Ads Terms at Section 1 are clear: Google agrees to place Customer's advertising materials on any content or property provided by Google (e.g., search results pages) using automated tools, but "Customer is solely responsible for all: (i) Ads, (ii) Ads trafficking or targeting decisions (e.g., keywords) ("**Targets**"), (iii) destinations to which Ads direct viewers (e.g., landing pages, mobile applications) along with the related URLs, waypoints, and redirects ("**Destinations**"), and (iv) services and products advertised on Destinations (collectively "**Services**")."  (FAC, Ex. A § 1 (emphasis in original).)  In other words, Google is providing billboard space, but *Plaintiff* must decide which billboard to bid on (e.g., what streets their target customers are most likely to take), how to best utilize the space, and what content to place there.

Notwithstanding the express terms, Plaintiff concludes that Google breached its contractual obligations by (1) "placing Plaintiff's . . . ads in response to search terms that are not consistent with those designated by Plaintiff" (*id.* ¶ 231) and (2) "fail[ing] and refus[ing] to disclose the 'Other Search Terms' results" (*id*. ¶ 232).  As to the first, Plaintiff fails to allege facts that *any* of its ads were placed inconsistent with its keyword designations, and, instead, simply concludes that this "***may***, or may not have" occurred.  (*Id*. (emphasis added).)  Such conclusory allegations are plainly insufficient.  *See Ashcroft*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

18

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

1    to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

2    'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted)); *see*

3    *also* Section IV(C)(2)(d), *infra*.  Here, Plaintiff concedes by omission that the information in the

4    Search Query Reports otherwise shows that Google placed ads wholly *consistent* with Plaintiff's

5    keywords and resulted in user clicks and "conversions" – which is the whole point of the service.

6    (FAC, Ex. K (attaching Plaintiff's Search Query Reports from January 2020 to December 2024).)

7    Then Plaintiff makes a baseless leap devoid of any facts to allege the "Other Search Terms" results

8    ***may*** or may not be consistent.  But the fact that users clicked on Plaintiff's ads after entering the

9    search terms suggests the ad was relevant to what they were searching for – undercutting Plaintiff's

10   allegations.

11       As to the second purported breach – i.e., that Google did not provide Plaintiff with every

12   search query that hit on its keyword designations – the Ads Terms do not promise or even suggest

13   that Google will disclose any, let alone all the thousands of search queries that successfully

14   triggered Plaintiff's ads.  Indeed, the phrase "other search terms" does not appear in the Ads Terms

15   at all, nor does any obligation requiring Google to disclose such information.  Because Plaintiff has

16   not identified any provision in the Ads Terms or a corresponding breach, Plaintiff's claim must fail.

17   *Miron*, 11 F. App'x at 929 ("[I]n order for [a breach of contract] action to be based on an instrument

18   in writing, the writing must express the obligation sued upon." (alterations in original) (citations

19   omitted)); *see also Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 512–13 (1986)

20   (holding that a breach of contract claim must fail where no provision of the alleged contract

21   imposed an obligation on the defendant).

22            **c.    Google's Help Center Pages Are Not an Enforceable Contract.**

23       Unable to identify a specific contractual provision in the Ads Terms, Plaintiff attempts to

24   manufacture a contract by piecing together various "online materials" and "other policies"—

25   specifically, two Google Ads Help Center Pages: "About keyword matching options" and "About

26   the search terms report."  (*See* FAC ¶¶ 29, 33–35, 37–40, 38–41, 44, 220–222.)  Plaintiff argues

27   these online materials and "other policies" must be relied upon to "provide [the] missing terms of

28   the parties' contract," (FAC ¶ 29), but that assertion has no basis in law when Plaintiff does not

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

19

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

allege (nor could it) that those materials are properly incorporated into the Ads Terms or otherwise form an enforceable contract.

Indeed, a plaintiff cannot rely on statements originating outside of the parties' contract as a source of purported contractual obligations, without alleging that those pages were fully incorporated into the contract. *See Beecher*, 2018 WL 4904914, at *2 (dismissing contract claim where plaintiff did "not allege that the FAQs" on Google's website were incorporated into the Terms). A document is only incorporated by reference into a contract where the incorporation is "clear and unequivocal, the reference is called to the attention of the other party and he consents thereto, and the terms of the incorporated document are known or easily available to the contracting parties." *Rodriguez v. Google LLC*, 2021 WL 6621070, at *4 (N.D. Cal. Aug. 18, 2021) (citations omitted).

Here, The Terms do not "guide the reader" to the two Help Center Pages at issue nor make any reference to them at all, either implicit or explicit. *Id.* (citation omitted). While the Ads Terms do reference "other policies," the Help Center Pages are *not* policies. As explained on the Google Ads policies page, the "Help Center" is merely designed to "help [advertisers] build Google Ads campaigns that align with our advertising policies" and do not represent policies themselves. (Michaud Decl., Ex. C.) Accordingly, the Ads Terms do not incorporate by reference the Help Center Pages Plaintiff cite to, and these pages thus cannot confer any obligations upon Google. (FAC ¶¶ 220–222.)

Furthermore, where, as here, "statements about [other search terms] are spread across a variety of pages in a variety of formats" it is "difficult to identify the terms of any actual and unambiguous contractual obligations." *Woods v. Google Inc.*, 2011 WL 3501403, at *4–5 (N.D. Cal. Aug. 10, 2011) (dismissing contract claim and finding that Help Center Pages on Google's website were ***not incorporated*** into the Ads Terms). Finally, because Plaintiff "do[es] not allege . . . having secured [the Help Center Pages'] terms with valid consideration[,]" it is "preclude[d] . . . from functioning as a standalone contract[.]" *Rodriguez*, 2021 WL 6621070, at *3 (Google's Help Center Pages are not a "standalone contract"). Without an enforceable agreement, Plaintiff cannot state a claim based on a breach of information in Google's Help Center pages. Absent another

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

20

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

1    actionable breach, Plaintiff's contract claim fails.

2                    **d.    Plaintiff Fails to Allege Contract Damages.**

3         To adequately plead contract damages, a plaintiff must establish "appreciable and actual

4    damage." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012) (quoting *Aguilera*

5    *v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000)). "Where a plaintiff has failed

6    to allege that the defendant's breach has caused her to suffer any damage, a breach of contract

7    action for damages will not lie." *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1139–40 (N.D.

8    Cal. 2014). A claim for "[n]ominal damages, speculative harm, or threat of future harm do[es] not

9    suffice to show legally cognizable injury." *Id.* (alterations in original) (citation omitted); *see also*

10   *McDonald v. John P. Scripps Newspaper*, 210 Cal. App. 3d 100, 104 (1989) (same).

11        Plaintiff fails to meet this threshold pleading requirement. Plaintiff merely speculates that

12   Google's alleged failure to disclose "other search terms" resulted in charges "for advertising that

13   ***may, or may not***, be responsive to its search terms and parameters, that [Google] ***may** or may not*

14   have ever placed" such that it incurred "useless ghost charges[.]" (FAC ¶ 232 (emphasis added).)

15   The allegation that Plaintiff "may or may not" have suffered damages is not only insufficient to

16   plead contract damages, but is unsupported by any factual allegations, rendering Plaintiff's claim

17   for damages wholly speculative. *See, e.g.*, *Boynton v. Reliance Standard Life Ins. Co.*, 2015 WL

18   11570935, at *4 (S.D. Cal. Jan. 29, 2015) ("[p]laintiffs cannot claim the *possibility* that [defendant]

19   may withhold payments in the future as a basis for their breach of contract action" (emphasis

20   added)); *Illumina, Inc. v. Ariosa Diagnostics, Inc.*, 2014 WL 3897076, at *4 (N.D. Cal. Aug. 7,

21   2014) (dismissing contract claim where the alleged harms "relate to potential future harm, not harm

22   that has already occurred"); *see also Crittenden v. Apple, Inc.*, 2022 WL 2132224, at *4 (N.D. Cal.

23   June 14, 2022) (granting motion to dismiss because "parrot[ing] internet musings about things

24   [d]efendant *may or may* not being [*sic*] doing, and which [p]laintiffs *may or may* not have

25   experienced themselves," is insufficient to establish a plausible inference of culpability (emphasis

26   added) (citation omitted)).

27        Plaintiff's other theory of harm that "without access to the information hidden under 'Other

28   Search Terms' [Plaintiff has] been unable to refine their search terms and ha[s] wasted ad spend on

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

21

**GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP**

search parameters that they could have refined if afforded the promised information" also must fail. (FAC ¶ 233.)  To be clear, Google never "promised" Plaintiff or any advertiser search query information that is categorized as "Other Search Terms."  Therefore, Plaintiff's theory cannot go to show contract damages because Google expressly stated that this information would ***not*** be provided. Plaintiff has at its disposal a litany of tools that it can use to refine its ads results, including being more specific in its choice of words and phrases on which to place a bid, using "exact" versus "broad" match queries, and using negative keywords, among other things.  Google is in the business of serving ads pursuant to *Plaintiff's* choices; Google is not in the business of giving advice to Plaintiff on how to optimize those choices or design more successful advertisements.

Moreover, even if this information were promised and provided, Plaintiff still cannot demonstrate harm because its own evidence attached to the FAC clearly shows that Plaintiff received the bargained-upon conversions based on the keyword matching that took place for "Other Search Terms." (FAC, Ex. K.)  In other words, Plaintiff received clicks and resulting business from its ads.  Thus, Plaintiff's own evidence defies its allegations that its ad dollars were spent on non-responsive search terms and parameters that were inconsistent with its choice of keywords. Therefore, Plaintiff has established no obligation, no breach, and no harm to establish a cognizable claim for breach of contract.

### 3.    Plaintiff Fails to State a Claim for Breach of the Implied Covenant.

Under California law, where "there exists a contractual relationship between the parties, . . . the implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract." *Racine & Laramie, Ltd. v. Cal. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031–32 (1992).  Plaintiff's claim falters because it largely concerns extra-contractual terms to which the parties *never agreed*.  (*See* FAC ¶¶ 238, 242, 248–249; *see also* Section IV(C)(2), *supra*.)  At no point does Plaintiff identify a contractual term, or any express obligation, imposing a duty upon Google to disclose "other search terms" to advertisers (because none exists) or provide "fulsome SQRs." (FAC ¶ 238.)  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 4581340, at *4 (N.D. Cal. Sep. 20, 2019) (dismissing implied covenant claim because plaintiff "attempt[ed]

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

22

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

to impose substantive duties beyond those incorporated in the specific terms of the agreement"). Indeed, this is because Google never "agreed to provide Plaintiff and Class Members access to information necessary . . . to refine their search terms and parameters." (FAC ¶ 242.) In fact, Google explicitly disclosed in the Help Center Pages that "[s]ome search terms that don't have enough query activity are omitted from the search terms report[.]" (Michaud Decl. Exs. A & B.) Because the Ads Terms do not impose any express obligation upon Google to disclose "Other Search Terms," and the implied covenant cannot create new obligations, this claim fails.

What is more, Plaintiff's claim is entirely duplicative of its breach of contract claim and, thus, cannot survive. (*Compare* FAC ¶¶ 231–232, *with id.* ¶¶ 248–249); *see, e.g.*, *Snapkeys, Ltd. v. Google LLC*, 442 F. Supp. 3d 1196, 1211 (N.D. Cal. 2020) (dismissing implied covenant claim because the same allegations were "at the heart" of the breach of contract claim). Because Plaintiff impermissibly seeks to either duplicate its contract claim or to impose new, extra-contractual obligations on Google, this claim fails.

### 4. Plaintiff Cannot State a Quasi-Contract Claim.

Plaintiff's quasi-contract claim is also duplicative of its breach of contract claim and, thus, must fail. It is well-settled that "[a]n action based on quasi-contract cannot lie where a valid express contract covering the same subject matter exists between the parties." *Overton v. Uber Techs., Inc.*, 333 F. Supp. 3d 927, 950 (N.D. Cal. 2018) (citation omitted) (dismissing quasi-contract claim with prejudice), *aff'd*, 805 F. App'x 485 (9th Cir. 2020); *see also Berlanga v. Univ. of S.F.*, 100 Cal. App. 5th 75, 89 (2024), reh'g denied (Mar. 15, 2024). Here, Plaintiff acknowledges the Ads Terms as the contract between the parties. (*See, e.g.*, FAC ¶¶ 25, 195 & Ex. A.) Given the uncontested existence of a valid express contract, the only question for the Court is whether the contract covers the "same subject matter" as Plaintiff's quasi-contract claim. *See Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (finding that plaintiff's assertion for overpayments is covered by the express contract between the parties). It does. Plaintiff's claim centers on whether Google complied with its obligations to advertisers using Google Ads, i.e., the precise subject matter of the Ads Terms. (*See* FAC, Ex. A ("These Terms govern Customer's participation in Google's advertising programs and services").)

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

23

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

It does not matter that the Ads Terms do not explicitly reference the level of detail in the Search Query Reports that form the basis for Plaintiff's quasi-contract claim. Courts regularly conclude that written contracts encompass the "same subject matter" even where those contracts do not explicitly reference the purported contractual obligations in dispute. *See, e.g.*, *Berlanga*, 100 Cal. App. 5th at 89 ("Because a valid and enforceable contract existed between student appellants and USF regarding their enrollment, *albeit without the terms they sought*, appellants are precluded from pursuing their quasi-contract claim." (emphasis added)); *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389 (2012) (quasi-contract claim precluded where contract governed the sale of gasoline, but no written instrument specified contract's terms). Because the Ads Terms expressly govern each Party's obligations in connection with Google's advertising program, Plaintiff's quasi-contract claim is barred.

Moreover, Plaintiff's claim is not saved because it is pled "in the alternative to Plaintiff's claims for breach of contract and breach of the implied covenant[.]" (FAC ¶ 254.) Indeed, Plaintiff may not plead "the existence of an enforceable agreement" alongside a quasi-contract claim that does not "deny the existence or enforceability of that agreement." *Klein*, 202 Cal. App. 4th at 1389; *see also Gerlinger*, 311 F. Supp. 2d at 856 ("Such an alternative claim might be stated if . . . plaintiff alleged that no express agreement existed between plaintiff and [] defendant."). Here, Plaintiff does not deny that a contract exists between the Parties. At best, Plaintiff purports to plead a quasi-contract claim "to the extent that *Defendant* claims that . . . it was not contractually obligated" to provide Plaintiff with certain data related to ad placement. (FAC ¶ 256.) Plaintiff does not *itself* "deny the existence or enforceability" of the Ads Terms or plead any facts that would enable the Court to draw such an inference, nor could it plausibly do so, and its claim fails. (*See, e.g.*, *id*. ¶ 4 (referring to allegations as a "quintessential breach of contract").)

### 5.    Plaintiff Fails to State a Claim Under the FAL.

California's False Advertising Law bars "any advertising device . . . which is untrue or misleading." *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1136 (2020) (citation omitted). The statute prohibits "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

24

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

confuse the public." *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 914 (2016) (alteration in original) (citations omitted).  To prevail on an FAL claim, a plaintiff must show that "members of the public are likely to be deceived[,]" and must do so "as adjudged through the eyes of 'the reasonable consumer.'" *Shaeffer*, 44 Cal. App. 5th at 1136 (citations omitted).  Indeed, "[an] FAL claim is not cognizable when based solely on an omission of material information." *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 907 (E.D. Cal. Jan. 9, 2018); *see also Kulp v. Munchkin, Inc.*, 678 F. Supp. 3d 1158, 1170 (C.D. Cal. 2023) ("[T]he complaint must still identify an affirmative statement that was made false or misleading by the omission of relevant and material information." (citations omitted)); *Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 669 (N.D. Cal. 2016).  Here, Plaintiff fails to identify either an advertising statement that was untrue or misleading in the eyes of a reasonable consumer, or an affirmative statement that was made false or misleading by Google's omission of relevant and material information.

As an initial matter, when pleading an FAL claim, a plaintiff must satisfy Rule 9(b)'s heightened pleading standard.  *Bodenburg v. Apple Inc.*, 146 F.4th 761, 770 (9th Cir. 2025).  Rule 9(b) requires that parties "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how' of the misconduct charged." *Id.* at 771 (citations omitted); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  Plaintiff fails to plead these crucial details.  Plaintiff fails to allege *what* Google advertisements it viewed, *when* it viewed them, or *how* they influenced Plaintiff's behavior and decision to use Google's advertising services.  Without this detail, Plaintiff's FAL claim fails.

Assuming, *arguendo*, that Plaintiff's claim was pled with the requisite specificity, none of the purported "advertisements" scattered throughout the FAC are false or misleading.  Plaintiff contends Google advertises that (1) it "places a Google Ads user's ad in response to the specific search terms and parameters as set by the user, and that it does not trigger an ad's placement if it includes any 'negative search terms'" (FAC ¶ 267); and (2) "Google Ads users have access to reports that will allow the user to identify search terms and parameters that are successfully triggering conversions, identify those not triggering conversions, focus on ad parameters that are successful, and identify search terms that it should exclude" (*id.* ¶ 268).  Both representations are

Cooley LLP
Attorneys at Law
Downtown Los Angeles

25

Google LLC's Motion to Strike,
Compel to Arbitration, or Dismiss
5:25-cv-05480-PCP

entirely true. Google does place ads in response to search terms, and it does provide advertisers with reports regarding those search terms, and Plaintiff does not allege otherwise. (*See, e.g.*, *id.* ¶¶ 42, 47, 69.)

Plaintiff's contention that Google "misrepresents the utility of the SQRs due to its hiding searches in the 'Other Search Terms'" also cannot support an FAL claim here. (FAC ¶ 271.) The information concerning what Search Query Reports will encompass – and the utility of this information – is all publicly available. Google also explicitly discloses in its Help Center Pages that "[s]ome search terms that don't have enough query activity are ***omitted*** from the search terms report" and are "grouped together as "other search terms." (Michaud Decl. Ex. A (emphasis added); *see also id.* Ex. B.) As Plaintiff itself concedes, Google "announced that it would only include in the SQRs 'terms that a significant number of users searched for, even if a term received a click.'" (FAC ¶ 69.) Given these explicit disclosures, it defies common sense to claim that a reasonable consumer would be led to believe that Google would provide every search query that triggered its ads. While "it is possible that some consumers might hazard such an assumption . . . '[a] representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed.'" *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (citation omitted).

Therefore, because Plaintiff failed to plead how Google made any false, deceptive, and misleading representations, and in light of Google's express statements that it would not be disclosing "Other Search Terms," Plaintiff's FAL claim and its request for restitution and injunctive relief should be dismissed.

### 6. Plaintiff Fails to State a Claim Under the UCL.

#### a. Plaintiff Lacks UCL Standing.

To have statutory standing under the UCL, Plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir.

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

26

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

2017) (emphasis in original) (citation omitted).  Plaintiff has done neither.

*First*, Plaintiff fails to allege it suffered an economic injury. As a threshold matter, Plaintiff only generally alleges Google's purported failure to disclose "other search terms" resulted in charges "for advertising that *may, or may not*, be responsive to its search terms and parameters, that [Google] *may or may not* have ever placed." (FAC ¶ 232.)  Without more, it is impossible to know what, if any, economic loss Plaintiff "may" have suffered as a result of the challenged conduct.  *See Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1137 (S.D. Cal. 2012).  But even assuming Plaintiff pled that ads were run based on "Other Search Terms" it did not choose and that Plaintiff was charged for those ads, it still has not alleged any harm:  the search query report shows that the Other Search Terms resulted in clicks, and conversions.  In other words, Plaintiff has not pled an economic injury.  Its evidence demonstrates it received precisely what it bargained for: placement of and success from ads served based on *Plaintiff's choice* of match type.  (*See, e.g.*, FAC ¶¶ 34, 245–246.)  Plaintiff does not allege that it paid more for its use of Google Ads than it would have paid had it known what data would or would not be disclosed in Search Query Reports (indeed, knowing that keywords would be couched in "Other Search Terms," Plaintiff continued running campaigns on the Ads platform).  Nor does Plaintiff allege that the service it received was of an inferior quality or otherwise devoid of the benefit Plaintiff contracted for. Where, as here, a plaintiff received the "benefit of their bargain," the plaintiff "ha[s] not shown they suffered actual economic injury[,]" and, thus, cannot establish standing under the UCL.  *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1591 (2008); *see also Suchard v. Sonoma Academy*, 109 Cal. App. 5th 1089, 1100-01 (2025); *Animal Legal Def. Fund v. Mendes*, 160 Cal. App. 4th 136, 147 (2008).

*Second*, even if Plaintiff's unspecified "loss" could confer standing (it does not), Plaintiff does not allege that loss flowed from *Google's* conduct as opposed to its own, separately dooming Plaintiff's bid to establish UCL standing.  *See Konik v. Time Warner Cable*, 2010 WL 11549435, at *5 (C.D. Cal. July 19, 2010) (the challenged conduct must be "an immediate cause of [their] injury-producing conduct").  Plaintiff concedes that it had at least three options to "specif[y] how close a match it will accept in order to bid" on search terms: (1) broad match; (2) phrase match; and (3) exact match. (FAC ¶¶ 32–40.)  Critically, Plaintiff does not allege which option *it* chose.

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

27

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

(*Id.* ¶¶ 193–199.)  If minimizing "Other Search Terms" was important to Plaintiff, it could have focused its campaigns around "exact match" bids.  Regardless, Plaintiff's own pleading makes clear that *it* was in full control of this selection, and Google's obligation to match.  Thus, Plaintiff lacks UCL statutory standing.

### b.    Plaintiff Fails to Allege Unlawful Conduct.

The UCL's "unlawful" prong covers "anything that can properly be called a business practice and that at the same time is forbidden by law."  *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 717–18 (2001) (emphasis omitted) (citation omitted).  Courts have remarked that the UCL "'borrows' violations of other laws and treats them as 'unlawful' practices independently actionable under the [UCL]."  *Id*. at 718 (citation omitted).  Where the allegedly wrongful conduct is not otherwise unlawful, a plaintiff cannot state a claim under the unlawful prong of the UCL.  *Id*.  Because Plaintiff's FAL claim fails, upon which it relies to satisfy the unlawful prong (FAC ¶ 289), Plaintiff's claim under the UCL's "unlawful" prong necessarily fails. (*See* Section IV(C)(5), *supra*.)

### c.    Plaintiff Fails to Allege Fraudulent Conduct.

The "fraudulent" prong of the UCL and FAL overlap substantially, such that a plaintiff's pleading burden is largely the same under both statutes.  *Shaeffer*, 44 Cal. App. 5th at 1135–36. A fraudulent business practice is one in which members of the public are likely to be deceived. *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1556 (2007). But the "failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL."  *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006). Just as under the FAL, Plaintiff cannot state a claim under the fraudulent prong of the UCL without establishing a legal basis for imposing an obligation on Google to disclose "other search terms" to advertisers.  *See Berryman*, 152 Cal. App. 4th at 1557; (*see also* Section (IV)(C)(5), *supra*). Accordingly, Plaintiff's claim under the "fraudulent" prong fails.

### d.    Plaintiff Fails to Allege Unfair Conduct.

Plaintiff's claim under the "unfair" prong appears to be rooted in Plaintiff's allegation that Google has been held liable for anticompetitive conduct in the advertising market.  (*See* FAC ¶¶

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

28

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

291, 298–299.)  What constitutes an "unfair" business practice under the UCL is not clearly settled, but "it is not unlimited[,]" *Smith*, 93 Cal. App. 4th at 719, and, where, as here, a plaintiff bases its claim on an antitrust violation but is not a direct competitor of the defendant, a plaintiff must demonstrate "that [defendant's] actions [that caused the plaintiff harm] can be tethered to some 'actual or threatened impact on competition.'"  *Reilly v. Apple Inc.*, 2022 WL 1215305, at *7 (N.D. Cal. Apr. 25, 2022) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999)); *see also Rodriguez v. Wells Fargo Bank, N.A.*, 2019 WL 13472212, at *2 (N.D. Cal. Jan. 24, 2019) (the tethering test requires conduct that violates a public policy that is "tethered to specific constitutional, statutory or regulatory provisions" (citation omitted)); *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (same).

Plaintiff's "tether" is to antitrust findings against Google in another action, but, significantly, the anticompetitive conduct identified there is completely unrelated to the conduct Plaintiff alleges here.  Plaintiff points to *United States v. Google LLC*, 747 F. Supp. 3d 1 (D.D.C. 2024) (*Antitrust I*) in which the court found that Google entered into exclusive distribution agreements with browser developers and carriers that forced Google's rivals, like Bing and Yahoo, to distribute their competing search engine services through less efficient means resulting in fewer users and fewer ad dollars.  That court found anticompetitive conduct because Bing and Yahoo could not offer their competitive services in the search services marketplace on equal footing.[3]

But Plaintiff does not compete in the market for search services.  Nor does it allege that it suffered direct harm as a consumer *as a result of* the search services marketplace dynamic.  Instead, Plaintiff simply does not like that "other search terms" are not disclosed in Search Query Reports. But disliking how a service functions and being disappointed in the amount of business your ads generate are not bases to find harm under the UCL.

Similarly, a plaintiff cannot complain of unfair conduct where, as here, a defendant

---

[3] While not addressed in Plaintiff's UCL claim, Plaintiff cites to another antitrust decision in the FAC, *United States v. Google LLC*, 778 F. Supp. 3d 797 (E.D. Va. 2025), which is about Google's conduct in the publisher ad server market, the ad exchange market, and the advertiser ad network market, and has no discussion on the advertiser's access to "Other Search Terms."  (FAC ¶ 4, n.6.) For the same reasons stated here, this decision also does not go to support the unfair prong of Plaintiff's UCL claim because Plaintiff is not a competitor in these markets.

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

29

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

complied with the terms of its contract with the plaintiff.  *See Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1046 (C.D. Cal. 2008) ("The 'unfairness' prong of the UCL 'does not give the courts a general license to review the fairness of contracts.'"), *aff'd* 349 F. App'x 174 (9th Cir. 2009).  Indeed, while Plaintiff appears to take issue with the "scant contractual commitments" the Terms impose on Google (FAC ¶ 28), "the UCL cannot be used to rewrite their contracts or to determine whether the terms of their contracts are fair." *Spiegler*, 552 F. Supp. 2d at 1046. And, to the extent Plaintiff's "unfairness" claim is predicated on Google's alleged breach of its contract with Plaintiff, "[s]imply asserting that a party breached a contract is not enough to make the breach 'unfair' under the UCL. The breach must *independently* constitute unfair conduct[.]" *Soriano v. Countrywide Home Loans, Inc*., 2011 WL 2600759, at *12 (N.D. Cal. June 30, 2011) (emphasis in original).

Finally, the FAC argues that Plaintiff's allegations satisfy the balancing test because Google's "justification for charging Plaintiff and the Class for advertising about which Defendant does not reveal any information under the guise of privacy concerns is baseless" because Google "never provides any personally identifiable information about any persons or entities that click on Google Ads that result in charges to Plaintiff and the Class."  (FAC ¶ 287.)  But these allegations still fail to allege specified harm to *Plaintiff*, or any putative class member, from not receiving such information. *See Drum*, 182 Cal. App. 4th at 256.  As discussed in Section IV(C)(1), *supra*, though Plaintiff alleges *potential* harms that *may* arise from the challenged conduct, it again fails to allege that it *personally* suffered any.

### e.    Plaintiff's Request for Injunctive Relief Must Be Denied.

Because Plaintiff failed to bring a viable claim under the UCL, Plaintiff's request for injunctive relief requiring Google to "cease refusing to provide to Plaintiff and all current and future Google Ads users necessary information concerning the 'Other Search Terms'" and to "cease making false claims in its advertising" must also be denied.  Even if Plaintiff's UCL claim were to survive in this case, what Plaintiff is asking for is an extraordinary remedy.  Even the court in *United States v. Google* denied those plaintiffs' request to "restore the pre-2020 [Search Query Reports]" because the plaintiffs have not "convincingly shown that added data disclosure [in the

Cooley LLP
Attorneys at Law
Downtown Los Angeles

30

Google LLC's Motion to Strike,
Compel to Arbitration, or Dismiss
5:25-cv-05480-PCP

1   SQRs] will stimulate competition." *United States v. Google LLC*, 2025 WL 2523010, at \*91–92

2   (Sep. 2, 2025) (*Antitrust II*). The court observed that such relief "would lead to an 'explosion of the

3   amount of information' reported to advertisers." *Id.* at \*92 (citation omitted). Further, the same

4   court opined that the requested relief to make available "any other metric necessary for the

5   advertiser to evaluate its ad performance[,]" is "likely to create administrative headaches for the

6   court[,]" because it "potentially opens the door to advertisers asking for all manner of data, leading

7   to conflicts over disclosure with Google that the court will have to resolve." *Id.* at \*93 (citation

8   omitted). Here, Plaintiff's request for the disclosure of informing concerning "Other Search

9   Terms" must be denied on same grounds.

10      As to the second injunctive relief asking Google to "cease making false claims," this relief

11  must also be denied because Plaintiff failed to plead how Google made any false, deceptive, and

12  misleading representations, given Google's explicit disclosure that it would not be disclosing

13  "Other Search Terms." *See* Section IV(C)(5), *supra*.

14                    **7.      Plaintiff Fails to State a Claim for Declaratory Relief.**

15      Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy," the court

16  "may declare the rights and other legal relations of any interested party seeking such declaration,

17  whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "This statute does not

18  create new substantive rights, but merely expands the remedies available in federal courts." *Shell*

19  *Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014). "To

20  determine whether a declaratory judgment action presents a justiciable case or controversy, courts

21  consider 'whether the facts alleged, under all the circumstances, show that there is a substantial

22  controversy, between parties having adverse legal interests, of sufficient immediacy and reality to

23  warrant the issuance of a declaratory judgment.'" *Id*. (citation omitted).

24      Here, Plaintiff seeks declaratory judgment that the Arbitration Provision, limitation of

25  liability provision, and class action waiver in the Terms are unconscionable and, thus,

26  unenforceable. (FAC ¶ 307.) But, as discussed in Section IV(A)(3), *supra*, the Arbitration

27  Provision and class action waiver are enforceable. The limitation of liability provision is similarly

28  lawful, and each of Plaintiff's arguments to the contrary fall flat.

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

31

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

First, Plaintiff argues the limitation of liability provision benefits only Google. (FAC ¶¶ 95–96.) But this attempt to paint the limitation of liability provision as overly one-sided is unavailing, and, in some instances, false. Contrary to Plaintiff's allegation that the provision requires Plaintiff to indemnify "claims by [Google] against Plaintiff for 'use or breach' by Plaintiff," (FAC ¶ 95), the provision actually requires Plaintiff to indemnify Google for claims by "*third-part[ies]* . . . to the extent arising out of or related to Ads, Targets, Destinations, Services, Use or any breach of these terms *by [Plaintiff]*." (Mobin Decl. Ex. B § 11 (emphasis added).)

Next, Plaintiff alleges that the provision fails to offer direct damages. (FAC ¶¶ 97–98.) But a court in this district looking at this exact same limitation of liability provision determined that its plain language does "not foreclose direct damages." *Dreamstime.com, LLC v. Google, LLC*, 2019 WL 2372280, at *3 (N.D. Cal. June 5, 2019). Instead, the provision limits recovery to direct damages incurred, i.e., the amount actually charged to an account. Because advertisers are billed monthly, direct damages in this context equate to the advertiser's monthly invoice, which cannot exceed the amount *actually paid or charged* for that time period, otherwise Plaintiff's damages would be consequential damages instead of direct. Importantly, this provision complies with California law, preventing a user from recovering a "greater amount in damages for the breach of an obligation[] than he could have gained by the full performance[.]" Cal. Civ. Code § 3358.

Plaintiff also argues that the limitation of liability provision "results in an effective waiver" of statutory damages. (FAC ¶ 100.) The Court can easily reject this: the provision is expressly limited to be void when prohibited by applicable law. (Mobin Decl., Ex. B § 10 (providing that the limit is applied "TO THE FULLEST EXTENT *PERMITTED BY LAW*" (italic emphasis added)).) Similar provisions are "routinely upheld by courts[.]" *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *9 (N.D. Cal. Mar. 5, 2021) (enforcing provision that "purport[ed] to waive liability for all damages of any kind" (citations omitted)).

Finally, Plaintiff argues that because it is pursuing the FAL and UCL claims "as a private attorney general for which it seeks injunctive relief," those claims are "not subject to the arbitration provision." (FAC ¶ 191.) Plaintiff misunderstands the law. The standard for non-waivable public injunctive relief under California law is that the requested relief must be limited to "forward-

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

32

GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP

looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons[.]" *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021). "[W]hen the injunctive relief being sought is for the benefit of a discrete class of persons, or would require consideration of the private rights and obligations of individual non-parties, it has been held to be private injunctive relief." *Id.* at 543 (reversing district court's denial of motion to compel because the requested injunctive relief was to benefit only Comcast cable subscribers). Likewise, here, the FAC seeks injunctive relief on behalf of "Plaintiff and the Class Members," specifically "Plaintiff and all current and future Google Ads users[.]" (FAC ¶¶ 283, 300, 302.) Therefore, because the requested relief does not "*primarily* benefit the general public as a more diffuse whole[,]" but refers to a class-specific relief, Plaintiff fails to demonstrate how the Arbitration Provision is unenforceable here. *Hodges*, 21 F.4th at 549 (emphasis in original).

In the absence of any unconscionable terms in the Ads Terms, there is no actual controversy nor sufficient immediacy to warrant the issuance of a declaratory judgment.

## V.    CONCLUSION

Google respectfully requests the Court enter an order striking Plaintiff's FAC, or compelling Plaintiff's claims to arbitration and staying or dismissing this case, or alternatively, dismissing the FAC in its entirety for failure to state a claim.

Dated: November 5, 2025                    COOLEY LLP

                                           By: */s/ Teresa H. Michaud*
                                               Teresa H. Michaud

                                           Attorneys for Defendant
                                           GOOGLE LLC

COOLEY LLP
ATTORNEYS AT LAW
DOWNTOWN LOS ANGELES

33

**GOOGLE LLC'S MOTION TO STRIKE,
COMPEL TO ARBITRATION, OR DISMISS
5:25-CV-05480-PCP**