ROBBINS GELLER RUDMAN
& DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
shawnw@rgrdlaw.com

WITES & ROGERS, P.A.
MARC A. WITES
(admitted *pro hac vice*, Fla. Bar No. 24783)
MICHELE M. DESOER (119667)
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: 954/933-4400
mwites@witeslaw.com
mdesoer@witeslaw.com

Attorneys for Plaintiff
PVC FENCE WHOLESALE, LLC
and the CLASS

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PVC FENCE WHOLESALE, LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE LLC, a Delaware LLC,<br><br>Defendants. | Case No. 5:25-cv-05480-PCP<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE, COMPEL TO ARBITRATION, OR DISMISS AMENDED COMPLAINT<br><br>Date: January 22, 2026<br>Time: 10:00 a.m.<br>Dept: 8<br>JUDGE: HON. P. CASEY PITTS |

**TABLE OF CONTENTS**


**Page**

I. INTRODUCTION ....... 1

II. STATEMENT OF CERTAIN UNDERLYING FACTS ....... 4

III. STANDARDS OF REVIEW ....... 6

A. Motion to Compel Arbitration ....... 6

B. Motion to Dismiss for Failure to State a Claim ....... 6

IV. LEGAL ARGUMENT ....... 7

A. The Court Should Deny Google's Motion to Strike ....... 7

B. Google's Arbitration Clause Is Unconscionable and Unenforceable ....... 8

1. The Arbitration Agreement Is Procedurally Unconscionable ....... 9

a. Google Abuses Its Monopoly Power to Take Advantage of Advertisers ....... 9

b. The Opt-Out Provision, Buried in a Contract of Adhesion, Does Not Save the Arbitration Clause ....... 10

2. Substantive Unconscionability Permeates the Arbitration Agreement ....... 12

a. The Class Action Waiver and Damages Limitation Render the Arbitration Agreement Substantively Unconscionable ....... 12

(1) The Class Action Waiver ....... 13

(2) The Damages Limitation ....... 14

(3) Regardless of This Court's Determination on Arbitration, the Damages Limitation Should Be Stricken ....... 16

b. The Elimination of Any Preclusive Effect of Arbitral Rulings Further Renders the Arbitration Agreement Substantively Unconscionable ....... 17

c. The Entire Arbitration Agreement Should Be Stricken ....... 17

3. Plaintiff's UCL and FAL Claims Cannot Be Forced into Arbitration ....... 18

C. Plaintiff's Allegations Satisfy Article III Standing ....... 18

D. Plaintiff Adequately States a Breach of Contract Claim ....... 19

Page


1. The Program Terms Expressly Incorporate External Policies and Representations that Supply Essential Contract Terms ....20

a. The Program Terms Expressly Incorporate "All Other Policies Made Available by Google" ....20

b. The Program Terms Standing Alone Are Manifestly Incomplete and Would Create an Illusory Contract ....21

c. California Law Permits Parol Evidence to Supply Missing Terms Consistent with the Written Agreement ....22

d. Implied Terms Further Define the Parties' Agreement ....23

2. Google Breaches Multiple Express and Implied Contract Terms Through Data Concealment ....23

a. Google Breaches Its Obligation to Place Ads Only Consistent with Advertisers' Search Parameters ....24

b. Google Breaches Its Promise to Provide Functional and Complete Search Query Reports ....24

3. Plaintiff's Damages Are Concrete, Measurable, and Directly Caused by Google's Breaches ....25

E. Google Breached the Implied Covenant of Good Faith and Fair Dealing ....26

F. Plaintiff's Quasi-Contract Claim Is Properly Pled in the Alternative ....27

G. Plaintiff's FAL Claim Is Properly Pled ....28

1. Google Made Affirmative Misrepresentations and Omitted Information about Google Ads and SQRs ....28

2. Whether Google's Omissions Deceived Users Is Not Properly Decided on a Motion to Dismiss ....29

3. Plaintiff's Allegations Easily Satisfy Rule 9(b) ....30

H. Plaintiff Has Sufficiently Alleged a UCL Claim ....30

1. Plaintiff Has UCL Standing Because it Suffered Damages ....30

2. The Allegations Against Google Plausibly Demonstrate Fraudulent, Unlawful, and Unfair Business Acts ....31

a. Google's Conduct Is Fraudulent ....31

b. Google's Conduct Is Unlawful ....32

c. Google's Conduct Is Unfair ....32

I. Declaratory Relief Is Necessary ....33

**Page**

V. CONCLUSION ....................................................................................................................34

## TABLE OF AUTHORITIES

Page

**CASES**

*Adam v. McFarlane*,
2015 WL 12655552 (C.D. Cal. June 1, 2015) ....................34

*Am. Bankers Mgmt. Co., Inc. v. Heryford*,
885 F.3d 629 (9th Cir. 2018) ....................15

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)....................13

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ....................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ....................27

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................13

*Beecher v. Google N. Am. Inc.*,
2018 WL 4904914 (N.D. Cal. Oct. 9, 2018)....................21

*Berlanga v. Univ. of S.F.*,
100 Cal. App. 5th 75 (2024), *reh'g denied* (Mar. 15, 2024)....................27, 28

*Bodenburg v. Apple, Inc.*,
146 F.4th 761 (9th Cir. 2025) ....................30

*Boyd v. SunButter, LLC*,
762 F. Supp. 3d. 931 (S.D. Cal. 2025)....................29

*Cal. Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) ....................2, 18

*Castro v. Wells Fargo Bank, N.A.*,
2012 WL 2077294 (C.D. Cal. June 6, 2012) ....................19

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ....................32, 33

*Chin v. Advanced Fresh Concepts Franchise Corp.*,
194 Cal. App. 4th 704 (2011) ....................14

*Clark v. Barrett Bus. Servs., Inc.*,
763 F. Supp. 3d 1122 (E.D. Cal. 2025)....................8, 9

Page

*Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*,
2011 WL 6099394 (N.D. Cal. Dec. 7, 2011) ........ 27

*Comm. On Child.'s Television, Inc. v. Gen. Foods Corp.*,
35 Cal. 3d 197 (1983) ........ 30

*Cunico Corp. v. Custom Alloy Corp.*,
2017 WL 8793221 (C.D. Cal. Dec. 15, 2017),
*aff'd*, 772 F. App'x 595 (9th Cir. 2019) ........ 20

*Daly v. United Healthcare Ins. Co.*,
2010 WL 4510911 (N.D. Cal. Nov. 1, 2010) ........ 3, 26, 27

*Day v. GEICO Cas. Co.*,
580 F. Supp. 3d 830 (N.D. Cal. 2022) ........ 32, 33

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987) ........ 8

*De La Torre v. CashCall, Inc.*,
5 Cal. 5th 966 (2018) ........ 9

*Discover Bank v. Super. Ct.*,
36 Cal. 4th 148 (2005) ........ 14

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) ........ 13

*Esbensen v. Userware Int'l, Inc.*,
11 Cal. App. 4th 631 (1992) *reh'g denied and opinion modified* (Jan. 7, 1993) ........ 22

*George v. Auto. Club of S. Cal.*,
201 Cal. App. 4th 1112 (2011) ........ 22

*Gerlinger v. Amazon.com, Inc.*,
311 F. Supp. 2d 838 (N.D. Cal. 2004) ........ 28

*GHK Assocs. v. Mayer Grp., Inc.*,
224 Cal. App. 3d 856 (1990) ........ 25, 26

*Gostev v. Skillz Platform, Inc.*,
88 Cal. App. 5th 1035 (2023), *rev. denied* (June 14, 2023) ........ 14

*Gutierrez v. Carmax Auto Superstores Cal.*,
19 Cal. App. 5th 1234 (2018) ........ 29

*Hadley v. Kellogg Sales Co.*,
273 F. Supp. 3d 1052 (N.D. Cal. 2017) ........ 31

*Harris v. TAP Worldwide, LLC*,
248 Cal. App. 4th 373 (2016) ........ 22

**Page**


*Hayes v. District of Columbia*,
275 F.R.D. 343 (D.D.C. 2011) ....... 7, 8

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024),
*cert. denied*, 2025 WL 2823733 (U.S. Oct. 6, 2025) ....... 2, 6, 9, 12

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ....... 29

*Houtchens v. Google LLC*,
649 F. Supp. 3d 933 (N.D. Cal. 2023) ....... 15, 16

*Idaho Conservation League v. Bonneville Power Admin.*,
83 F.4th 1182 (9th Cir. 2023) ....... 19

*In re Google Digital Advert. Antitrust Litig.*,
2025 WL 3012840 (S.D.N.Y. Oct. 27, 2025) ....... 17

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....... 5

*Int'l Padi, Inc. v. Diverlink*,
2005 WL 1635347 (9th Cir. July 13, 2005) ....... 18

*Iravanian v. Translations.com, Inc.*,
687 F. Supp. 3d 871 (N.D. Cal. 2023) ....... 10

*Jeong v. Nexo Cap. Inc.*,
2023 WL 2717255 (N.D. Cal. Mar. 29, 2023) ....... 13, 14

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....... 30

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....... 7

*Knapke v. PeopleConnect, Inc.*,
38 F.4th 824 (9th Cir. 2022) ....... 6

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ....... 31

*Kulp v. Munchkin, Inc.*,
678 F. Supp. 3d 1169 (C.D. Cal. 2023) ....... 29

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) ....... 31

*Lhotka v. Geographic Expeditions, Inc.*,
181 Cal. App. 4th 816 (2010) ....... 15

*Luna v. Kemira Specialty, Inc.*,
575 F. Supp. 2d 1166 (C.D. Cal. 2008) ....... 18

**Page**

*MacClelland v. Cellco P'ship*,
609 F. Supp. 3d 1024 (N.D. Cal. 2022) ....................15, 17, 18

*Machado v. System4 LLC*,
989 N.E.2d 464 (Mass. 2013) ....................13

*Macias v. Excel Bldg. Servs. LLC*,
767 F. Supp. 2d 1002 (N.D. Cal. 2011) ....................9

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ....................7

*Marshall v. Ameriprise Fin. Servs.*,
735 F. Supp. 3d 1229 (E.D. Cal. 2024) ....................15

*Massel v. Successfulmatch.com*,
2025 WL 2452371 (9th Cir. Aug. 26, 2025) ....................11, 12

*Masterson v. Sine*,
68 Cal. 2d 222 (1968) ....................22

*May v. Google LLC*,
2024 WL 4681604 (N.D. Cal. Nov. 4, 2024) ....................32, 33

*McGill v. Citibank, N.A.*,
2 Cal. 5th 945 (2017) ....................2, 18

*Meyer v. Kalanick*,
185 F. Supp. 3d 448 (S.D.N.Y. 2016) ....................13

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ....................10, 11

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020) ....................30

*Morales v. Palomar Health*,
2014 WL 3943603 (S.D. Cal. Aug. 12, 2014) ....................8

*Morrison v. Yippee Ent., Inc.*,
2025 WL 2389424 (9th Cir. Aug. 18, 2025) ....................11

*Muratore v. Am. Alternative Invs., LLC*,
2018 WL 6137620 (C.D. Cal. Apr. 2, 2018) ....................27

*Nationwide Biweekly Admin., Inc. v. Super. Ct.*,
9 Cal. 5th 279 (2020) ....................31

*Nolen v. PeopleConnect, Inc.*,
2023 WL 4303645 (N.D. Cal. June 30, 2023) ....................7

*Overton v. Uber Techs., Inc.*,
333 F. Supp. 3d 927 (N.D. Cal. 2018) ....................28

Page

*Oxnard Manor LP v. Hallmark Specialty Ins. Co.*,
2023 WL 8191128 (C.D. Cal. Sept. 15, 2023) ....................4

*Pappas v. AMN Healthcare Servs.*,
762 F. Supp. 3d 862 (N.D. Cal. 2025) ....................9

*People v. Ashford Univ., LLC*,
100 Cal. App. 5th 485 (2024) ....................32

*Principal Life Ins. Co. v. Robinson*,
394 F.3d 665 (9th Cir. 2005) ....................34

*Racine & Laramie, Ltd. v. Cal. Dep't of Parks & Recreation*,
11 Cal. App. 4th 1026 (1992) ....................26

*Retired Emps. Ass'n of Orange Cnty, Inc. v. Cnty. of Orange*,
52 Cal. 4th 1171 (2011) ....................23

*Rios v. HRB Digital LLC*,
2025 WL 3003768 (N.D. Cal. Oct. 27, 2025)....................2, 9, 10, 11

*Roberts v. AT&T Mobility LLC*,
801 F. App'x 492 (9th Cir. 2020) ....................2, 18

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
34 Cal. 4th 979 (2004) ....................24

*Rodriguez v. Google LLC*,
2021 WL 6621070 (N.D. Cal. Aug. 18, 2021) ....................21

*Shaeffer v. Califia Farms, LLC*,
44 Cal. App. 5th 1125 (2020) ....................28

*Shaw v. Regents of Univ. of Cal.*,
58 Cal. App. 4th 44 (1997) ....................20

*Sonic-Calabasas A, Inc. v. Moreno*,
57 Cal. 4th 1109 (2013) ....................16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................18

*Stewart v. Electrolux Home Prods.*,
304 F. Supp. 3d 894 (E.D. Cal. 2018)....................30

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................18

*Trudeau v. Google LLC*,
349 F. Supp. 3d 869 (N.D. Cal. 2018),
*aff'd*, 816 F. App'x 68 (9th Cir. 2020)....................12, 15, 16

*Tucson v. City of Seattle*,
91 F.4th 1318 (9th Cir. 2024) ....................19

**Page**

*United States v. Google, LLC*,
2025 WL 2523010 (D.D.C. Sept. 2, 2025) ....................1, 4, 5, 33

*United States v. Google, LLC*,
747 F. Supp. 3d 1 (D.D.C. 2024) .................... *passim*

*Van v. LLR, Inc.*,
962 F.3d 1160 (9th Cir. 2020) ....................3

*Veera v. Banana Rep., LLC*,
6 Cal. App. 5th 907 (2016) ....................28

*Vine v. PLS Fin. Servs., Inc.*,
807 F. App'x 320 (5th Cir. 2020) ....................13

*Whitaker v. John's of Willow Glen Inc.*,
2021 WL 4990239 (N.D. Cal. Oct. 27, 2021)....................7

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) ....................29, 31

*Wood v. Cnty. of Stanislaus*,
2023 WL 3093618 (E.D. Cal. Apr. 26, 2023)....................8

*Woods v. Google Inc.*,
2011 WL 3501403 (N.D. Cal. Aug. 10, 2011) ....................21

*Yoshida v. Vista Energy*,
2022 WL 88505 (E.D. Cal. Jan. 6, 2022) ....................15

**STATUTES, RULES, AND REGULATIONS**

9 U.S.C. §2....................6

California Civil Code §1670.5....................8

Federal Rules of Civil Procedure
Rule 8(d)(2)....................4, 27
Rule 8(d)(3)....................4
Rule 8(a)(2)....................6, 25
Rule 9(b) ....................30
Rule 12(b)(6)....................7, 34
Rule 15 ....................8
Rule 15(a)....................7, 8
Rule 15(a)(1) ....................7

Plaintiff PVC Fence Wholesale, LLC ("Plaintiff" or "PVC") respectfully submits this response in opposition to Defendant Google, LLC's ("Google" or "Defendant") Motion to Strike, Compel to Arbitration, or Dismiss Plaintiff's First Amended Complaint ("Motion" or "Mot.") [ECF 36].

**I. INTRODUCTION**

The facts of this case are straightforward. Google, one of the largest companies in the world with a valuation exceeding $3 trillion—decided "greed is [still] good."[1] Google prioritizes profit over integrity by using its Google Ads program to deceive its customers, primarily small businesses, out of their hard-earned money. Since 2020, Google has accomplished this grift, by hiding a significant portion its client charges inside an impenetrable "black box" that not even Houdini could open. Yet, Google promises advertisers, like Plaintiff, "transparency" that is meant to provide them with the ability to control how they spend their advertising dollars. Google's promise is misleading because it masks charges behind the label "Other Search Terms." This practice prevents advertisers from verifying the legitimacy of Google's charges, and strips them of the promised opportunity to refine their search parameters, ultimately hindering their ability to maximize their advertising budgets.

Indeed, as detailed in Plaintiff's First Amended Complaint ("FAC") [ECF 33], legions of small businesses have complained about Google's unfair practices but have no option but to continue paying Google. This is because "Google is a monopolist," and "has monopolized the market for general search text advertising." *United States v. Google, LLC*, 747 F. Supp. 3d 1, 32, 139 (D.D.C. 2024) ("*Google Antitrust I*"); *see also United States v. Google, LLC*, 2025 WL 2523010, at *1 (D.D.C. Sept. 2, 2025) ("*Google Antitrust II*").[2] As a direct result of its monopoly, Google controls the search text advertising market, charges excessive fees, and degrades the quality of its text ad offerings by refusing to disclose the basis of a significant portion of its charges; without any legitimate reason for doing so. *See Google Antitrust II*, 2025 WL 2523010, at *6.

[1] *Wall Street* (20th Century Fox, 1987).

[2] Unless otherwise noted, all emphasis is added and citations are omitted.

Undeniably, Google's scheme has enabled it to reap untold ***billions*** of dollars from Plaintiff and other small businesses.

Now, after over five years of blatant and unchecked deception, Google seeks to evade responsibility—first by attempting to enforce an unconscionable arbitration clause and, second, by falsely claiming that Plaintiff cannot state a legal claim against it. Both are wrong.

***First***, Google's attempt to compel arbitration should be rejected. Plaintiff's FAC alleges in painstaking detail how Google's arbitration clause in its Program Terms and Conditions ("Program Terms") is both procedurally and substantively unconscionable, meeting all of the requirements under California and Ninth Circuit law. Indeed, the FAC alleges no less than ***six*** different facts—none of which Google genuinely disputes—demonstrating that it would be extremely unfair to compel Plaintiff to arbitration. Google asserts that it has an impermeable shield against a finding of procedural unconscionability based on a difficult-to-find, let alone exercise, opt-out. However, the existence of an opt-out is not a "get out of jail free" card. *See, e.g.*, *Rios v. HRB Digital LLC*, 2025 WL 3003768, at *6 (N.D. Cal. Oct. 27, 2025).

Because Google's arbitration clause is "procedurally unconscionable to an extreme degree," and contains many "elements . . . that render[] [it] substantively unconscionable," *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 681 (9th Cir. 2024) (cleaned up) (finding Live Nation's arbitration clause unconscionable and unenforceable), *cert. denied*, 2025 WL 2823733 (U.S. Oct. 6, 2025), Plaintiff should not be compelled to arbitrate.

Even if this Court determines that ***some*** of Plaintiff's claims must be arbitrated (it should not), precedent is clear: this Court must recognize, ***as it did last year***, that Google's arbitration agreement "is unenforceable as to [Plaintiff's] UCL [and FAL] claim[s] for public injunctive relief." *Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1037 (N.D. Cal. 2024) (Pitts, J.); *accord Roberts v. AT&T Mobility LLC*, 801 F. App'x 492, 496 (9th Cir. 2020) (arbitration agreement unconscionable where it prevented obtaining public injunctive relief); *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 963, 95 (2017) (same). Thus, if nothing else, Plaintiff's individual injunctive relief claims cannot be compelled to arbitration.

Google's attacks on the merits of Plaintiff's claims fare no better.[3] Google's Motion ignores Plaintiff's detailed factual allegations, attempts to improperly insert new facts not contained in the FAC, and misapplies the relevant law. Putting aside that the district court in *Google Antitrust I* already found Google's claimed rationale for hiding critically important—and promised—information from its advertisers to be "suspect," 747 F. Supp. 3d at 84, Plaintiff's allegations raise more than plausible claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, false advertising, and unfair business practices.

Whether Google's promises were express or implied, it is undeniable that Google made promises it did not keep, all while continuing to charge Plaintiff thousands of dollars every month and refusing to disclose the basis for the charges. Google's claim that its Program Terms constitute the entirety of its contract with Plaintiff is patently false. The Program Terms—drafted by Google—expressly states that it is "subject to applicable Google policies available at google.com/ads/policies, ***and all other policies made available by Google to Customer***[.]" Google's decision to include such expansive incorporation language in its Program Terms cannot be ignored. Additionlly, the Program Terms on their face cannot be considered a complete contract because they lack the essential elements, such as details regarding ***what*** Google is charging Plaintiff for and ***how*** these charges are calculated. Indeed, the Program Terms contain no reciprocal obligations whatsoever on Google's part. Because Google breached its numerous promises to Plaintiff, Google is liable for breach of contract.

Google also breached the implied covenant of good faith and fair dealing. The covenant requires that "neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Daly v. United Healthcare Ins. Co.*, 2010 WL 4510911, at *3 (N.D. Cal. Nov. 1, 2010). By hiding advertising charges behind "Other Search Terms," Google prevents Plaintiff from benefiting from everything Google promises to provide in the Google Ads program.

[3] Google's argument that Plaintiff lacks Article III standing (Mot. at 16-17), is frivolous and requires little attention. Loss of money is a "concrete injury." *Van v. LLR, Inc.*, 962 F.3d 1160, 1161, 1164 (9th Cir. 2020). *See infra*, §IV(C).

Next, while simultaneously disclaiming any contractual obligations between Plaintiff and Google relating to the subject matter of this case (*i.e.*, the Search Query Reports ("SQRs")), Google asserts Plaintiff's quasi-contract claim for restitution also fails on the ground that it cannot be pled in the alternative to a contract-based claim. Not so. The Federal Rules of Civil Procedure expressly permit alternative and even inconsistent claims. Fed. R. Civ. P. 8(d)(2)-(3); *Oxnard Manor LP v. Hallmark Specialty Ins. Co.*, 2023 WL 8191128, at *2 (C.D. Cal. Sept. 15, 2023) ("where a plaintiff plausibly pleads causes of action in both contract and quasi-contract, both causes of action may proceed past the pleadings stage").

Furthermore, Plaintiff's statutory false advertising and unfair business practices claims are well pled.[4] Plaintiff's false advertising ("FAL") claim more than adequately pleads that Google falsely promises to supply information that would allow advertisers to verify the accuracy of Google's charges and optimize their advertising spend. The decisions in *Google Antitrust I* and *Google Antitrust II* confirm that Google's purported justifications for hiding this data are false, and that Google has no legitimate reason to do so. Similarly, Plaintiff's claims under the Unfair Competition Law ("UCL") clearly demonstrate that Google's conduct has been fraudulent, unlawful, and unfair, no matter which unfairness test is applied.

Finally, regarding Plaintiff's requests for declaratory relief, certain clauses in the Program Terms should be declared unenforceable, especially as to Plaintiff's entitlement to injunctive relief under both its FAL and UCL claims.

Ultimately, Google's Motion does not provide sufficient grounds to strike the FAC, compel arbitration, or dismiss any of Plaintiff's legal claims, and therefore should be denied.

## II. STATEMENT OF CERTAIN UNDERLYING FACTS

Google ignores key allegations that are central to Plaintiff's claims. The Program Terms provide only "scant contractual commitments or obligations by Defendant in connection with its role as the operator of the Google Ads program." ¶28.[5] The Program Terms themselves are

[4] Google's claim that Plaintiff lacks UCL standing (Mot. at 26-27) is as meritless as its Article III argument.

[5] "¶" refers to allegations in the FAC.

virtually silent on how Google Ads function, how ad placements are auctioned among advertisers, or how Google charges its customers. ¶¶27-28. Notably, they do not include a payment schedule or explain how Google bills users like Plaintiff. *Id*. Instead, as alleged, Google provides this essential information in the contemporaneous documents that it publishes about the Google Ads program ("Promotional Materials"). *See* ¶¶29-30, 33-35, 37-38, 40. These Promotional Materials evidence: (a) Google's commitment to placing ads in response to search queries; and (b) the information Google provides to help users (i) verify correct ad placement, and (ii) refine their searches to maximize their advertising strategies. ¶¶35, 39-40.

Plaintiff's allegations of Google's misconduct, including Google's breach of promises to its advertising customers, are supported by Judge Mehta's detailed findings of fact in *Google Antitrust I*, many of which are incorporated in Plaintiff's FAC.[6] ¶¶3, 43, 50, 55, 66, 72, 75-76, 78-79, 81, 84, 287 (describing how between 2007 and 2020, Google disclosed search terms linked to ads but stopped providing SQRs in 2020, citing privacy concerns—a move the *Google Antitrust I* and *Google Antitrust II* courts found not credible. Google admitted that advertisers used SQRs to evaluate ad effectiveness and refine keyword targeting and that discontinuing comprehensive SQRs would harm advertisers). Ultimately, Plaintiff's claims relate to these facts, and how Google continues to break its promises to advertisers, in violation of California law.

Next, Plaintiff clearly alleges damages. Due to Google's SQR scheme, Plaintiff spent, and continues to spend, a significant portion of its advertising budget that it would not otherwise have spent because it is completely unable to: (a) verify the legitimacy of Google's charges; or (b) refine searches to include effective search terms or exclude unproductive ones, despite Google's promises that it could. ¶¶87, 229, 233, 250, 257, 269, 281. Essentially, Plaintiff paid for searches it cannot not optimize, and which may or may not be legitimate. As a result of Google's conduct, Plaintiff paid nearly 38% of the total $49,452.90 it was charged for terms Google hid under the "Other Search Terms" moniker. ¶197.

---

[6] *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1024 (N.D. Cal. 2014) (courts "may take judicial notice of matters that are . . . [p]roper subjects of judicial notice when ruling on a motion to dismiss includ[ing]. . . court documents already in the public record and documents filed in other courts.").

Finally, and most critically, Google's relentless attempt to impose an arbitration clause that is both procedurally and substantively unconscionable cannot be overlooked. Google's position is fundamentally weakened by its neglect of the detailed allegations demonstrating the arbitration provision is unconscionable. Plaintiff clearly indicates how the arbitration clause is embedded in a contract of adhesion (¶¶26, 92), with a confusing and hidden opt-out provision (¶¶119-128, 130-137, 140-141, 156-161). When advertisers, like Plaintiff, manage to uncover the buried opt-out provisions (¶¶142-154), it exposes the procedural unconscionability of the arbitration clause. Additionally, the strict 30-day window to exercise the opt-out makes it even harder for advertisers to decline arbitration. ¶¶138, 153-154. The substantive unconscionability is also evidenced by the Program Terms' damages limitation (¶¶163-174), its prohibition on class actions (¶¶175, 183, 185-190), and its coercive attempt to strip advertisers of their statutory remedies (¶¶176-177, 191-192). Taken together, these allegations unquestionably demonstrate that Google's arbitration clause is fundamentally unfair and unconscionable, compelling careful judicial scrutiny.

## III. STANDARDS OF REVIEW

### A. Motion to Compel Arbitration

A "'party seeking to compel arbitration . . . must prove the existence of a valid agreement by a preponderance of the evidence.'" *Knapke v. PeopleConnect, Inc*., 38 F.4th 824, 832 (9th Cir. 2022). Thus, it is not the existence of an "agreement" to arbitrate that matters, but whether that agreement is actually "valid." *Heckman*, 120 F.4th at 680.

"In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Id.* (cleaned up). "Under the [Federal Arbitration Act ("FAA")], a court may declare an arbitration agreement unenforceable upon such grounds as exist at law or in equity for the revocation of any contract, 9 U.S.C. §2, and may invalidate an arbitration agreement by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* (cleaned up).

### B. Motion to Dismiss for Failure to State a Claim

Rule 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint cannot be

dismissed under Rule 12(b)(6) where a plaintiff's "factual allegations . . . suggest that the claim has at least a plausible chance of success." *Nolen v. PeopleConnect, Inc.*, 2023 WL 4303645, at *1 (N.D. Cal. June 30, 2023) (cleaned up). In assessing whether a complaint satisfies this requirement, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Id.* (cleaned up) (quoting *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To the extent Google asserts contrary "facts," these issues of disputed facts are "inappropriate for resolution at this juncture via a motion to dismiss." *Whitaker v. John's of Willow Glen Inc.*, 2021 WL 4990239, at *2 (N.D. Cal. Oct. 27, 2021); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("[D]istrict courts may not consider material outside the pleadings when assessing the sufficiency of a complaint . . . [other than] 'documents incorporated into the complaint by reference, and matters of which a court make take judicial notice.'").

## IV. LEGAL ARGUMENT

### A. The Court Should Deny Google's Motion to Strike

Google moves to strike Plaintiff's FAC because the Court only gave Plaintiff until October 7, 2025, to file an "opposition" to Google's motion to dismiss and did not extend the 21-day deadline to amend under Rule 15(a)(1). Mot. at 8. Plaintiff recognizes its inadvertent mistake and sincerely apologizes. However, striking the FAC at this stage would not only be unjust but would also squander valuable time and resources for both the Court and the parties involved.

*Hayes v. District of Columbia*, 275 F.R.D. 343 (D.D.C. 2011), is directly on point. There, the court initially denied the plaintiff leave to amend her complaint, which was filed more than 21 days after the motion to dismiss was filed, but instead filed on the deadline set by an order granting an extension of time "to file her opposition" to that motion. *Id*. at 344. Importantly, the plaintiff had not sought an extension of time to amend her complaint. *Id*. After denial, the plaintiff moved for reconsideration, arguing that "she was entitled to amend her complaint as a matter of course under Rule 15(a), and, [contended] the Court was required to accept her . . . amended complaint

as filed." *Id*. at 344. Despite denying reconsideration, the court recognized the importance "of efficient judicial administration," and chose to "construe the motion for reconsideration, . . . as a motion *nunc pro tunc* to extend the period in which the plaintiff may amend her complaint." *Id*. at 346. The court then treated the plaintiff's failure properly to request an extension of the Rule 15(a) deadline as an act of excusable neglect. *Id*. The court reasoned this was the proper result given "the early stage of this litigation." *Id*.

*Hayes* is consistent with the general rule that courts must generally grant leave to amend "when justice so requires," and that, when evaluating such requests, courts should prioritize Rule 15's primary purpose, "to facilitate decision on the merits rather than on the pleadings or technicalities." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185-86 (9th Cir. 1987); *see also Morales v. Palomar Health*, 2014 WL 3943603, at *5 (S.D. Cal. Aug. 12, 2014) (where plaintiff filed an amended complaint a few days after the 21-day deadline in response to a motion to dismiss, and the court held that "[g]iven the stage at which Plaintiff filed her FAC and the policy of freely granting leave to amend when justice requires, the Court would have freely granted Plaintiff leave to amend her initial Complaint in response to the then-pending motions to dismiss. . . . Moreover, [the court determined that] to the extent that Plaintiff's filing of her FAC can be deemed a 'response' to the then-pending motions to dismiss, [it] was timely.").[7] This consistent application of the rule underscores the judiciary's commitment to ensure that cases are decided on their merits.

**B. Google's Arbitration Clause Is Unconscionable and Unenforceable**

California Civil Code §1670.5 provides the statutory basis to apply the doctrine of unconscionability to arbitration contracts, enabling courts to refuse enforcement of a contract or clause deemed unconscionable at the time of its formation. "A finding of unconscionability requires a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Clark v. Barrett Bus.*

[7] Although Plaintiff submits that following the path taken in *Hayes* is most efficient, should the Court be inclined to grant Google's motion to strike, Plaintiff respectfully requests an opportunity to file a formal motion for leave to file an amended complaint. *See Wood v. Cnty. of Stanislaus*, 2023 WL 3093618, at *2 (E.D. Cal. Apr. 26, 2023) ("To the extent Plaintiff seeks leave to file an amended complaint, he should file a properly noticed motion under Rule 15 rather than raise these arguments in opposition to Defendant's motion to strike.").

*Servs., Inc.*, 763 F. Supp. 3d 1122, 1129 (E.D. Cal. 2025) (cleaned up). While "procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract . . . they need not be present in the same degree." *Pappas v. AMN Healthcare Servs.*, 762 F. Supp. 3d 862, 870 (N.D. Cal. 2025) (cleaned up). "California courts apply a 'sliding scale' to determine whether to invalidate an agreement . . . 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.*

### 1. The Arbitration Agreement Is Procedurally Unconscionable

The procedural prong of unconscionability looks at how the agreement was negotiated, focusing on the oppressive conduct of the stronger party. *Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011). Oppression results from unequal bargaining power, resulting in a lack of genuine negotiation or choice. *Id.* The procedural unconscionability analysis starts with determining "'whether the contract is one of adhesion,' defined as 'a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms.'" *Heckman*, 120 F.4th 670 at 681.

#### a. Google Abuses Its Monopoly Power to Take Advantage of Advertisers

Here, Google, a monopolist, embedded a procedurally unconscionable arbitration agreement in its Program Terms. Google exploited its monopoly power to impose an unfair contract of adhesion, and obscured the opt-out provision, making it hard for advertisers, like Plaintiff, to determine their rights. As Judge Chen recently explained, "procedural unconscionability is highly dependent on context, and . . . requires inquiry into the commercial setting, purpose, and effect of the provision." *Rios*, 2025 WL 3003768, at *6 (cleaned up). In determining procedural unconscionability, "[t]he court must consider whether there was (1) undue oppression arising from 'an inequality of bargaining power,' including . . . factors tending to show relative bargaining power such as the parties' sophistication, . . . and the availability of alternatives; and (2) surprise owing to, for example, the 'terms of the bargain [being] hidden in a prolix printed form' or pressure to hurry and sign." *De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 983 (2018).

This Court has also established that oppression occurs when a contract lacks negotiation and meaningful choice, while surprise occurs when the unconscionable provisions are concealed in lengthy printed forms. *Iravanian v. Translations.com, Inc.*, 687 F. Supp. 3d 871, 877 (N.D. Cal. 2023).

Here, there is no question that the Program Terms constitute a contract of adhesion. ¶¶85, 92, 115. What Google ignores is that its arbitration provisions are procedurally unconscionable not only because they comprise an oppressive contract of adhesion but ***also*** because Google's monopoly over online search advertising leaves advertisers, like Plaintiff, with no viable alternative to Google Ads. ¶¶85, 92-93. Undeniably, Google's overwhelming dominance in online advertising effectively eviscerates any negotiating power advertisers may have. ¶¶13, 83. By consistently ignoring these facts, along with binding precedent, and failing to address the oppressive nature of Google's adhesive contract, Google concedes that the Program Terms are at least minimally procedurally unconscionable. *Rios*, 2025 WL 3003768, at *6 (adhesion contract demonstrates procedural unconscionability). Additionally, Google's explanation of the arbitration provisions and the opt-out option is confusing, convoluted, and involves a lengthy process that is difficult to effectively navigate. ¶¶118-119, 124, 137, 141-142, 152, 154-155, 161.

**b. The Opt-Out Provision, Buried in a Contract of Adhesion, Does Not Save the Arbitration Clause**

Contrary to Google's position (Mot. at 11), an opt-out option in an arbitration provision does not act like a magic wand to insulate an arbitration agreement from a finding of procedural unconscionability. In fact, in *Rios*, the court evaluated an arbitration agreement that included a thirty-day opt-out provision like Google's. Relying on California law, the *Rios* court emphasized the need for courts to evaluate the totality of circumstance, holding that "the existence of an opt-out clause does not automatically render an arbitration agreement procedurally conscionable; even if an agreement is not adhesive, it can still be found sufficiently surprise-laden or oppressive to implicate procedural unconscionability." *Rios*, 2025 WL 3003768, at *7.

The *Rios* court firmly rejected the conclusion from *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016)—the case Google latches onto—that an opt-out option necessarily means that

an agreement cannot be procedurally unconscionable. 2025 WL 3003768, at *8. *Rios* observed that "in the decade since *Mohamed,* California appellate courts have consistently and unanimously rejected the notion that an opt-out provision categorically insulates arbitration agreements from a finding o[f] procedural unconscionability." *Id.* Ultimately, that the notion that "an opt-out clause categorically shields an agreement from a finding of procedural unconscionability . . . is not consistent with California law." *Id.*

Here, there is no question that the opt-out provision does nothing to eliminate the procedural unconscionability of the arbitration clause. As Plaintiff alleges, finding the arbitration provision and reviewing its terms requires multiple steps leading to a miniscule copy of the entirety of the Program Terms. ¶¶117-152. Users who agree initially to the Program Terms only to return within thirty days to evaluate the provision face a near Sisyphean task to find the provision, and then only find it in all but unreadable small print. ¶¶142-155.

Critically, for advertisers who, like Plaintiff, were users prior to the addition of the arbitration agreement, the process to evaluate the revised terms led to a page that suggested that failure to accept the terms ***in their entirety*** would result in the ***total cessation*** of their ads being placed. ¶¶159-161; FAC, Ex. J ("No, I do not accept the terms and conditions. ***Note: if you decline the Terms your ads will be paused***."). This language leads to the conclusion that users could no longer use Google Ads if they failed to accept ***all*** the terms including the arbitration agreement. This opt-out, like the one in *Rios*, "is burdensome and potentially illusory," 2025 WL 3003768, at *9, and exemplifies why the existence of an opt-out provision does not provide an impenetrable shield negating a finding of procedural unconscionability.

Google's attempt to compare its opt-out notice to the terms in *Morrison v. Yippee Ent., Inc.*, 2025 WL 2389424, at *1 (9th Cir. Aug. 18, 2025) is misleading. In that case, the Terms of Service were hyperlinked on the subscription page. *Id.* In contrast, Google's webform link is not clickable and has to be copied and pasted into a browser, which leads to a page that crucially omits the 30-day opt-out deadline. ¶¶153-154. Similarly, Google incorrectly equates its presentation of the opt-out notice to the hyperlinked "Service Agreement" examined in *Massel v. Successfulmatch.com*, 2025 WL 2452371, at *1 (9th Cir. Aug. 26, 2025). Whereas in *Massel*, the

"Service Agreement" was accessible through a live and underlined hyperlink directly above the "continue" button, *see id.*, locating Google's opt-out terms requires extensive navigation and necessitates copying and pasting the address into a web browser, and finally requires selection between two poorly worded and confusing options. ¶¶153-154, 159-161.

Lastly, Google cites to *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 877 (N.D. Cal. 2018), *aff'd*, 816 F. App'x 68 (9th Cir. 2020), for its contention that Google previously provided an opportunity to opt-out of the arbitration provision. Mot. at 13. What Google conveniently overlooks is that the court's conclusion was based on the fact that "Trudeau [did] not meaningfully dispute the voluntariness of the opt out procedure." *Trudeau*, 349 F. Supp. 3d at 877. The same cannot be said in this case, as the allegations in the FAC highlight the oppressive nature of Google's adhesion contract and the difficulties associated with finding and exercising the opt-out choice. These factors demonstrate that Google's arbitration clause is procedurally unconscionable.

### 2. Substantive Unconscionability Permeates the Arbitration Agreement

Google's arbitration provision is rife with one-sided, substantively unconscionable provisions. "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Heckman*, 120 F.4th at 683 (cleaned up). When there is "'substantial procedural unconscionability . . . even a relatively low degree of substantive unconscionability may suffice to render the agreement unenforceable.'" *Id.* The substantive unconscionability of multiple provisions in Google's arbitration agreement all of which seek to deter users from pursuing claims, coupled with the fact that it is being imposed by an adjudicated monopolist precisely with regard to Google Ads, establishes that the arbitration agreement should be rejected as unconscionable.

#### a. The Class Action Waiver and Damages Limitation Render the Arbitration Agreement Substantively Unconscionable

Here, the contract seeks to reduce compensable damages by employing a Class Action Waiver alongside a strict Limitation of Liability ("Damages Limitation"). Google's use of scattered provisions would lead any party reviewing the arbitration provision away from realizing

that recoverable damages are severely limited. Google's design and manipulation of the Program Terms effectively shields the multi-trillion-dollar-valued Google from liability, regardless of the extent of its own wrongful conduct, and are unconscionable.

**(1) The Class Action Waiver**

Google relies on *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011),[8] to support its position that class-action waivers are routinely enforced. Mot. at 15. However, Google fatally ignores that, after *Concepcion*, courts have recognized that class action waivers can be challenged—whether in arbitration or litigation—where a plaintiff "can demonstrate that he or she effectively cannot pursue a claim against [a] defendant in individual arbitration according to the terms of the [arbitration] agreement." *Machado v. System4 LLC*, 989 N.E.2d 464, 513 (Mass. 2013) (cleaned up). Google's linking of the arbitration agreement to the class action waiver[9] indicates that if the arbitration agreement is deemed unconscionable, then the class action waiver cannot survive. *See, e.g.*, *Meyer v. Kalanick*, 185 F. Supp. 3d 448, 453-54 (S.D.N.Y. 2016) (decided under California law) ("the bolded sentence is most plausibly read as an explanation of the rights that the parties are giving up in agreeing to arbitrate disputes, and not as an independently effective waiver of the right to pursue a class action outside the arbitration context"); *accord Vine v. PLS Fin. Servs., Inc.*, 807 F. App'x 320, 328 (5th Cir. 2020) ("We agree with the district court that the most plausible way to interpret a class action waiver in the middle of an arbitration provision is as part of the explanation of the rules, rights, and procedures that apply if a dispute is arbitrated—not as an independently effective waiver of the right to pursue a class action outside the arbitration context.") (cleaned up). Alternatively, should the Court determine that the class waiver is not coupled with the arbitration agreement, then "the [*Discover Bank*] rule remains in force." *Jeong v.*

---

[8] Google also cites to *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018) (finding that the National Labor Relations Act, which guarantees workers the right to engage in activities for the purpose of collective bargaining, does not reflect a manifest congressional intention to displace the FAA); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013) (failing to examine the unconscionability of the class action waiver), but neither case is applicable here because neither case examines the unconscionable nature of its respective arbitration agreement).

[9] The waiver states "Google, Customer, and Advertiser agree that, ***by entering into this arbitration agreement***, all parties are waiving their respective rights to a trial by jury or to participate in a class or representative action." FAC, Ex. A, §13(A).

*Nexo Cap. Inc.*, 2023 WL 2717255, at *4 n.1 (N.D. Cal. Mar. 29, 2023) (citing *Discover Bank v. Super. Ct.*, 36 Cal. 4th 148, 161 (2005)) (class action waivers which act as "exculpatory contracts in a contract of adhesion, at least to the extent they operate to insulate a party from liability that otherwise would be imposed under California law, are generally unconscionable.").

**(2) The Damages Limitation**

Although Google distinguishes the Damages Limitation provision (FAC, Ex. A, §10) from the arbitration provision (FAC, Ex. A, §13), Google does not dispute that this limitation still applies in arbitration and facially limits an advertiser's ability to seek redress, affecting its access to legal representation and fair compensation for any damages suffered. Google calls its arbitration process the "Dispute Resolution Agreement," but seeking damages is an inherent part of any effective dispute resolution. As such, the Damages Limitation is inextricably intertwined with evaluation of the unconscionability of the arbitration agreement.

"A damages limitation may be unconscionable if it contravenes public policy by limiting remedies available in the statute under which a plaintiff proceeds, ***or*** if it is one-sided." *Chin v. Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App. 4th 704, 712 (2011). As Plaintiff alleges, the Damages Limitation is an inherent part of the arbitration agreement that is unreasonably one-sided, as the only exceptions benefit Google. ¶¶90-91, 94-95, 97-98, 100-101.

***First***, while ***Google*** is permitted to seek ***unlimited damages*** from its advertisers (¶91), Plaintiff, and other advertisers, are strictly limited to recovering damages from Google to the amount an advertiser paid "IN THE THIRTY DAYS ***BEFORE*** THE DATE OF THE ACTIVITY FIRST GIVING RISE TO THE CLAIM." FAC, Ex. A, §10. The limitation of damages to only one month's payments made to Google ***before Google's wrongful act*** grossly undercuts an advertiser's ability to recover actual damages incurred, particularly for ongoing claims.

***Second***, while advertisers, like Plaintiff, face caps on damages they can recover, Google does not (¶105), demonstrating an overwhelming lack of mutuality and fairness. *Gostev v. Skillz Platform, Inc.*, 88 Cal. App. 5th 1035, 1056 (2023), *rev. denied* (June 14, 2023) ("Mutuality is the 'paramount consideration' in assessing substantive conscionability."); *see also Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 104 (2000) (concluding that a damages

limitation that limits remedies available under the statute under which plaintiff proceeds is "contrary to public policy and unlawful.").[10]

In light of the above, Google's damages cap acts to discourage advertisers from seeking redress in ***any fora*** as the cost of retaining legal counsel almost certainly exceeds the potential recovery. Indeed, few, if any, lawyers would be willing to take on the world's largest company on contingency if the recovery is just a fraction of the actual damages. *Am. Bankers Mgmt. Co., Inc. v. Heryford*, 885 F.3d 629, 635 (9th Cir. 2018) (finding that in contingency arrangements lawyers must use their resources in fronting the costs of the litigation). Without access to counsel, the Damages Limitation renders the arbitration contract substantively unconscionable.

Google also misrepresents the court's analysis in *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 825 (2010). *See* Mot. at 15. In *Lhotka*, the court found that the arbitration terms virtually guarantee that the defendant would never be liable for more than what the plaintiffs paid "and that any recovery plaintiffs might obtain would be devoured by the expense they incur in pursing their remedy." *Lhotka*, 181 Cal. App. 4th at 825. As in *Lhotka*, Google's one-sided Damages Limitation exemplifies a "heads I win, tails you lose" clause, which courts have consistently condemned as substantively unconscionable. *Id.* (cleaned up); *Marshall v. Ameriprise Fin. Servs.*, 735 F. Supp. 3d 1229, 1246 (E.D. Cal. 2024) (because the damages limitation "only limit[s] the recovery that Plaintiff may seek, and provide[s] no reciprocal limitation on Defendant, the provisions are unfairly one-sided and therefore unconscionable.").

Finally, Google cites to *Trudeau*, 349 F. Supp. 3d at 872, 881, and *Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 944 (N.D. Cal. 2023), to support its contention that its arbitration provisions are enforceable. Mot. at 15. However, both cases are inapposite as the courts' decisions examined the opt-out provisions corresponding to those arbitration agreements, which were much

[10] Google's reliance on *Yoshida v. Vista Energy*, 2022 WL 88505, at *7 (E.D. Cal. Jan. 6, 2022), is also off-base. Mot. at 13. While the limitation of liability provision alone may not be enough to render the entire agreement void, when included in arbitration provisions, damages limitations are regularly found to be substantively unconscionable. *See MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1045 (N.D. Cal. 2022).

easier to find and exercise.[11] Moreover, *Houtchens* relates to an opt-out provision where a consumer could simply email Google with their name (649 F. Supp. 3d at 944); the process here is not so easy. *See* ¶¶119-155. Accordingly, the arbitration agreement is substantively unconscionable to a significant degree, which, when combined with its extreme procedural unconscionability renders it unenforceable.

**(3) Regardless of This Court's Determination on Arbitration, the Damages Limitation Should Be Stricken**

It is unequivocal that, regardless of the forum in which a claim is filed, the Damages Limitation is both procedurally and substantively unconscionable. The Damages Limitation is procedurally unconscionable not only because it is a contract of adhesion but ***also*** because "Plaintiff has no commercially viable alternative to place its advertising in response to internet searches other than to place advertisements with Google." ¶¶85, 92-93. It is also void of an opt-out provision that would allow an advertiser to accept or reject the Damages Limitation. In *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013), the court summarized that "the central idea that the unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' . . . but with terms that are 'unreasonably favorable to the more powerful party.'" The *Sonic-Calabasas* court concluded that "the core concern of the unconscionability doctrine is the 'absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Id.* Ultimately, the Damages Limitation exists solely to protect Google from its own egregious conduct, and is fundamentally one-sided as Google enjoys an unrestricted capacity to seek damages against its advertisers. Because advertisers have no viable alternative to Google Ads (¶¶13, 83) they are forced to agree to a series of terms that deprive them of the ability to effectively seek redress. Therefore, the Damages Limitation must be struck down to ensure fairness and accountability.

[11] *Trudeau* is discussed *supra* §B.1.b., as related to the opt-out provisions found in the Program Terms.

**b. The Elimination of Any Preclusive Effect of Arbitral Rulings Further Renders the Arbitration Agreement Substantively Unconscionable**

Google's arbitration agreement also provides that "Arbitration rulings will not have preclusive effect in any proceedings involving different Customers or Advertisers in any forum." FAC, Ex. A, §13(C). This provision again improperly shields Google from the consequences of its actions. This provision allows Google to evade a finding against it if ***another claimant*** pursues an identical, or virtually identical, claim. The same would not be true before a court at law. *See, e.g.*, *In re Google Digital Advert. Antitrust Litig.*, 2025 WL 3012840, at *17-18 (S.D.N.Y. Oct. 27, 2025) (granting partial summary judgment ***against Google*** based on issue preclusion/collateral estoppel arising from Google's trial loss in *Google Antitrust*). Here, an adjudicated monopolist seeks to evade the estoppel effect of findings against it to the detriment of its users while simultaneously trying to shield itself from even being forced to adequately compensate users for its wrongdoing.

**c. The Entire Arbitration Agreement Should Be Stricken**

Severance of the unconscionable provisions does not go far enough. As noted in *MacClelland*, "[i]f the Court were to sever the numerous unconscionable provisions in a case such as this, companies could be incentivized to retain unenforceable provisions designed to chill customers' vindication of their rights, then simply propose to sever these provisions in the rare event that they are challenged successfully in court." 609 F. Supp. 3d at 1046. The *MacClelland* court declined to cater to defendant by severing the offending provisions concluding that "the number of unconscionable provisions, their nature, and the overall effect [appeared to be intended] to force Verizon consumers into an inferior (and, in many circumstances, wholly ineffective) forum." *Id.* (cleaned up). Multiple provisions in Google's arbitration agreement are substantively unconscionable and seek to deter users from pursuing their claims, confirming that the arbitration agreement must be rejected *in toto*.

### 3. Plaintiff's UCL and FAL Claims Cannot Be Forced into Arbitration

Plaintiff's representative claims brought as a private attorney general for public relief cannot be forced into arbitration. *See, e.g.*, *Roberts*, 801 F. App'x at 496. The injunctive relief Plaintiff requests under its FAL and UCL claims qualify as public injunctive relief under *McGill*.[12] As Google's arbitration agreement prevents Plaintiff from pursuing this relief in any forum, it violates the *McGill* rule. Thus, Google's agreement is unenforceable as to Plaintiff's FAL and UCL claims. *See id.* at 1037 (severing the UCL claim from the arbitration agreement and allowing that claim to proceed); *Cal. Crane Sch.*, 722 F. Supp. 3d at 1037 (arbitration "unenforceable as to [Plaintiff's] UCL claim for public injunctive relief.") (Pitts, J.).[13] Thus, even if Google's arbitration and class action waiver provisions are enforceable—points Plaintiff does not concede—Plaintiff's individual FAL and UCL claims cannot be compelled to arbitration.[14]

## C. Plaintiff's Allegations Satisfy Article III Standing

To establish Article III standing a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiff satisfies all these elements.

***First***, Plaintiff alleges it paid significant sums to Google for unidentified search terms for which it has received no benefit, suffering a financial injury. ¶199; *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("If a defendant has caused . . . monetary injury to the plaintiff,

---

[12] *McGill*, 2 Cal. 5th at 963 ( "the FAA does not require enforcement of a provision in a predispute arbitration agreement that, in violation of generally applicable California contract law, waives the right to seek in any forum public injunctive relief under the UCL, the CLRA, or the false advertising law.").

[13] A provision that states that users cannot enforce these rights is substantively unconscionable. *See MacClelland*, 609 F. Supp. 3d at 1045.

[14] Since the Court cannot compel arbitration of Plaintiff's injunctive-relief claim, this Court also retains jurisdiction over that claim insofar as the "value of the object of the litigation" (*i.e.*, the cost of the injunction Plaintiff seeks) is objectively in the billions of dollars. *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1172 (C.D. Cal. 2008) (cleaned up); *see also Int'l Padi, Inc. v. Diverlink*, 2005 WL 1635347, at *1 (9th Cir. July 13, 2005) ("[I]n determining the amount in controversy [for diversity jurisdiction], we may also include the value of the requested injunctive relief to either party.").

the plaintiff has suffered a concrete injury in fact under Article III."). This financial harm is neither hypothetical nor theoretical—it paid for ad placements and clicks, which it is unable to refine because Google hid them in "Other Search Terms," and wasted ad spend on search parameters it could have refined if afforded the promised information.

***Second***, the financial injury Plaintiff alleges directly results from Google hiding data under "Other Search Terms." Plaintiff pays for searches without the ability to determine if any of the searches lumped in this category are legitimate and, even if they are, to refine their search terms, resulting in a waste of their advertising dollars. *See Idaho Conservation League v. Bonneville Power Admin.*, 83 F.4th 1182, 1188 (9th Cir. 2023) ("[a]n injury is fairly traceable to a challenged action as long as the links in the proffered chain of causation are not hypothetical or tenuous and remain plausible.").

***Third***, Plaintiff's injury is likely to be redressed by a favorable judicial decision. *Tucson v. City of Seattle*, 91 F.4th 1318, 1325 (9th Cir. 2024) ("[R]edressability analyzes the connection between the alleged injury and requested judicial relief.") (cleaned up). Plaintiff seeks, and the Court can grant, both monetary compensation for the amount Google has improperly charged it and injunctive relief to prevent Google from continuing its wrongful acts.

### D. Plaintiff Adequately States a Breach of Contract Claim

Google's motion fundamentally misreads both the governing agreement and California contract law. While Google attempts to limit the contract to just the bare-bones Program Terms (Mot. at 17-21), this ignores that the Terms themselves ***expressly*** incorporate external policies. Basic principles of contract interpretation require consideration of these promises to establish the terms that provide Google's obligations in the parties' agreement.

To survive dismissal, Plaintiff need ***only*** allege "(1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages." *Castro v. Wells Fargo Bank, N.A.*, 2012 WL 2077294, at *1 (C.D. Cal. June 6, 2012).

Plaintiff has satisfied each element with detailed factual allegations that, when taken as true, establish Google's systematic breach of its contractual obligations.[15]

**1. The Program Terms Expressly Incorporate External Policies and Representations that Supply Essential Contract Terms**

The Program Terms do not constitute the entire contract between Plaintiff and Google. Therefore, the Court must consider all relevant materials necessary to understand the parties' complete agreement.

**a. The Program Terms Expressly Incorporate "All Other Policies Made Available by Google"**

"The general rule is that the terms of an extrinsic document may be incorporated by reference in a contract so long as (1) the reference is clear and unequivocal, (2) the reference is called to the attention of the other party and he consents thereto, and (3) the terms of the incorporated document are known or easily available to the contracting parties." *Cunico Corp. v. Custom Alloy Corp.*, 2017 WL 8793221, at *6 (C.D. Cal. Dec. 15, 2017) (cleaned up), *aff'd*, 772 F. App'x 595 (9th Cir. 2019). The Program Terms explicitly state: "Program Use is subject to applicable Google policies available at google.com/ads/policies, and ***all other policies made available by Google to Customer***, including any applicable Partner policies, and to the extent applicable[.]" FAC, Ex. A, §2. "[P]arties may incorporate by reference into their contract the terms of some other document." *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997). Here, Google chose the word "policies" without limitation.

The phrase "***all other policies*** made available by Google to Customer" necessarily encompasses every representation, guide, help document, and explanatory material Google provides to advertisers about how Google Ads functions. ¶216. Google, having drafted this expansive incorporation clause, cannot now claim that the very materials it makes available to explain its service fall outside of its own broad mandate. As Plaintiff alleges, these policies include Google's commitment to (1) place advertisements in compliance with an advertiser's selected terms, (2) enable users to use negative keywords to prevent irrelevant ad placement, (3) provide

[15] Defendant has not challenged (and cannot challenge) that the FAC establishes both the existence of the contract and Plaintiff's performance of its contractual obligations.

detailed invoices, and (4) provide users with access to SQRs that enable them to optimize their advertising campaigns. ¶¶220-225.

Google's cited authorities are inapt. In *Beecher v. Google N. Am. Inc.*, 2018 WL 4904914, at *2 (N.D. Cal. Oct. 9, 2018), the court held only that the plaintiff failed to plead incorporation of the terms it sought to include. Similarly, the court in *Rodriguez v. Google LLC*, 2021 WL 6621070, at *3 (N.D. Cal. Aug. 18, 2021), did not refuse to incorporate an extrinsic document but found that, even with the incorporated document, the plaintiff had failed to plead wrongdoing. "Because the SAC omits facts permitting the inference that Google neglected this obligation, plaintiffs cannot rely on the . . . Privacy Policy language to sustain a claim for breach of contract." *Id*. In *Woods v. Google Inc.*, 2011 WL 3501403, at *4 (N.D. Cal. Aug. 10, 2011), the court declined to incorporate by reference "more than a dozen pages" across two separate help center websites because it was "difficult to identify the terms of any actual and unambiguous contractual obligations." The same is not true here, where Plaintiff only seeks to incorporate ***two*** policy pages on ***one*** website and where Plaintiff has repeatedly alleged that Google failed to provide the services it promised to deliver. ¶¶228-232.

#### b. The Program Terms Standing Alone Are Manifestly Incomplete and Would Create an Illusory Contract

The Program Terms' incompleteness further necessitates consideration of external materials. The Program Terms contain virtually no substantive obligations regarding Google's advertising service. They merely state in generic terms that "Customer authorizes *Google* . . . to place Customer's advertising materials, feed data, and technology (collectively, 'Ads' . . .) on any content or property" and that "[t]he Program is an advertising platform on which Customer authorizes Google and its affiliates to use automated tools to format Ads." FAC, Ex. A, §1.

This skeletal framework—which does not obligate Google to do anything—cannot constitute the parties' complete contract. Under Google's interpretation, advertisers must provide consideration (payment) while Google has ***no reciprocal obligations whatsoever***: it can place ads anywhere or nowhere, provide data or not, and charge whatever it pleases without any enforceable standards. Such an arrangement fails the fundamental requirement of mutual consideration.

Therefore, the Court must either interpret the contract to incorporate Google's external policies and explanatory materials that supply the missing consideration and mutual obligations or find the Program Terms standing alone constitute an illusory and unenforceable agreement for lack of consideration. California law prohibits such one-sided agreements. "A contract is unenforceable as illusory when one of the parties has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder." *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 385 (2016). Further, "a contract is illusory where one party provides no legal consideration." *Id.*

Google's failure to assume any obligations under the Program Terms requires the conclusion that its obligations are elsewhere than within the four corners of the document.

**c. California Law Permits Parol Evidence to Supply Missing Terms Consistent with the Written Agreement**

Even if the Court were to find no express incorporation of the policies on which Plaintiff relies, California law permits consideration of parol evidence to supply terms that are consistent with, but missing from, written agreements. *Masterson v. Sine*, 68 Cal. 2d 222, 225 (1968). Specifically, the parol evidence rule does not bar evidence of collateral agreements on subjects the written contract does not address. *Id.*; *Esbensen v. Userware Int'l, Inc.*, 11 Cal. App. 4th 631, 637 (1992) *reh'g denied and opinion modified* (Jan. 7, 1993) (parol evidence "is admissible to prove additional terms of the contract not inconsistent with the express language of the writing"). Here, the Program Terms' omission of Google's obligations implicitly allows parol evidence due to the extensive missing terms.

In fact, Google's help guides, marketing materials, and support documentation do not contradict the Program Terms—they supply the operational details completely absent from, but wholly necessary to, those Terms. These materials explain what advertisers are charged for, how the service functions, and what data Google provides. Without these materials, the Program Terms would be commercially meaningless. Accordingly, this Court must consider Plaintiff's extrinsic evidence at this stage of the proceedings. *George v. Auto. Club of S. Cal.*, 201 Cal. App. 4th 1112,

1122 (2011) (holding that in the context of a demurrer trial courts "must conditionally consider the parol evidence alleged in the complaint").

**d. Implied Terms Further Define the Parties' Agreement**

"[A] contract implied in fact consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." *Retired Emps. Ass'n of Orange Cnty, Inc. v. Cnty. of Orange*, 52 Cal. 4th 1171, 1178 (2011) (cleaned up). Even where there is a written contract, terms may be implied so long as they do not vary the express terms. *Id.* "Implied contractual terms ordinarily stand on equal footing with express terms." *Id.* at 1179 (cleaned up).

Google expressly represents that the SQRs allow users to refine their searches to maximize their advertising returns by, *inter alia*, allowing users to identify negative search terms based on information gathered from SQRs. ¶¶41-48. This implies Google's obligation to act consistent with these representations. "Google began offering [SQRs] in 2007 to help advertisers determine whether to add new affirmative or negative keywords to their lists." *Google Antitrust I*, 747 F. Supp. 3d at 84. In fact, until 2020, Google provided the detailed search information that it now hides under "Other Search Terms." "Google was aware that SQRs were 'widely used by advertisers of all segments.'" *Id.*

Yet, the SQRs Google currently supplies are so opaque that, contrary to Google's representations, they do not afford users ***any*** ability to refine their searches or even determine whether Google charged them inappropriately. ¶¶49-56, 61-63. Here, Google lumped 38% of Plaintiff's charges under "Other Search Terms" without providing any explanation as to how Google had arrived at that determination. *See* ¶197 (alleging that Plaintiff paid Google $18,336.56 for undisclosed ("other") search terms from 2020 to 2025).

**2. Google Breaches Multiple Express and Implied Contract Terms Through Data Concealment**

Having established that the complete agreement includes incorporated and implied terms, Plaintiff identifies specific breaches supported by detailed factual allegations. Google's breaches are not technical violations but go to the heart of the bargained-for exchange.

**a. Google Breaches Its Obligation to Place Ads Only Consistent with Advertisers' Search Parameters**

Google's incorporated materials extensively explain the keyword matching system that governs ad placement. Google states that advertisers control where their ads appear through keyword selection and matching options (broad, phrase, or exact match). ¶34. Specifically, Google promises that:

- "Broad match" places ads for "searches that are related" to keywords;
- "Phrase match" places ads for "searches that include the meaning" of keywords; and
- "Exact match" places ads for "searches that have the same meaning or same intent" as keywords.

*Id*. By concealing 38% of charged search terms under "Other Search Terms," Google prevents Plaintiff from verifying whether these placement rules were followed and modifying its keywords to optimize its ad spend. ¶197. This concealment itself breaches both the express placement obligations and the implied terms that parties can verify performance of contractual obligations.

The breach is not speculative. When a party promises to perform according to specified criteria but then conceals the information necessary to verify compliance, the concealment itself constitutes breach. *Robinson Helicopter Co., Inc. v. Dana Corp*., 34 Cal. 4th 979, 993 (2004) ("'[a] party to a contract cannot rationally calculate the possibility that the other party will deliberately misrepresent terms critical to that contract.' No rational party would enter into a contract anticipating that they are or will be lied to.").

**b. Google Breaches Its Promise to Provide Functional and Complete Search Query Reports**

Google expressly represents that SQRs serve a specific purpose: providing insights into which search terms "triggered the placement of [the advertiser's] advertisements and whether placement in response to those triggering searches resulted in a user clicking through their ad onto the company's website." ¶47. This is represented as enabling advertisers to add new search terms, revise search parameters, or add negative keywords to "exclude [their] ads from showing on

searches with that term." ¶35. These are specific promises about what the reports will include and how users will be able to use them.

In *Google Antitrust I*, Judge Mehta explained that "[p]rior to 2020, SQRs included all queries that resulted in an ad click, even if there was only a single click." 747 F. Supp. 3d at 84. Although Google claimed that it changed its policy to only require "Other Search Terms" for "privacy reasons" the court squarely rejected this reasoning, noting that had used its monopoly for anticompetitive purposes shown through the fact that "advertisers receive less information in [SQRs]." *Id.* at 180.

By withholding 38% of search data under "Other Search Terms," Google makes it impossible for an advertiser to:

- Identify successful keywords to expand (because they're hidden)
- Identify unsuccessful keywords to exclude (because they're hidden)
- Verify ad relevance to searches (because searches are hidden)
- Optimize budget allocation (because performance data is hidden and it is unable to revise its terms to maximize the returns on its advertising budget)

Hiding search terms under "Other Search Terms" completely frustrates the SQR's stated purposes.

### 3. Plaintiff's Damages Are Concrete, Measurable, and Directly Caused by Google's Breaches

Google's assertion that damages are "speculative" ignores black-letter law that uncertainty as to the amount does not defeat a breach claim, especially where the defendant's conduct creates the uncertainty. "Where the ***fact*** of damages is certain, the amount of damages need not be calculated with absolute certainty." *GHK Assocs. v. Mayer Grp., Inc.*, 224 Cal. App. 3d 856, 873 (1990) (emphasis in original). At the pleading stage, a plaintiff need only allege facts showing damage occurred—precise quantification awaits trial. Fed. R. Civ. P. 8(a)(2). Plaintiff alleges two categories of concrete damages: direct overcharges for unverifiable ad placements, (¶¶197, 227), and lost optimization value and wasted ad spend due to lack of access to search data. ¶225.

Moreover, courts routinely sustain breach of contract claims where damages cannot be precisely calculated due to defendant's wrongful conduct. "The law requires only that some

reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation. This is especially true where, as here, it is the wrongful acts of the defendant that have created the difficulty in proving the amount of loss of profits[.]" *GHK Assocs.*, 224 Cal. App. 3d at 873-74. Google simply cannot escape liability by creating the very uncertainty it cites.

### E. Google Breached the Implied Covenant of Good Faith and Fair Dealing

The covenant of good faith and fair dealing requires that neither party harm the other party's right to benefit from the agreement and that each party do what is necessary to fulfill the contract's purpose. *Daly*, 2010 WL 4510911, at *3. Google's claim that the Program Terms do not require it to provide any of the information hidden under "Other Search Terms" or issue detailed invoices clearly confirms its breach of the covenant of good faith and fair dealing. *See* Mot. at 23. Claiming that it did not owe advertisers, like Plaintiff, a duty to disclose the basis for the charges for which it invoiced them directly undermines §8 (Payment) of the Program Terms. *See* FAC, Ex. A, §8. Without information and details as to the charges incurred, advertisers have no ability to verify the accuracy of their invoices and follow the procedure for seeking a remedy if Google does not deliver Ads to the selected Targets or Destinations, as outlined in §8. Additionally, the failure to provide this detail is in derogation of Google's promises to provide users with SQRs that allow users to refine their search parameters to maximize the effectiveness of their advertising budgets. Google thus blocks Plaintiff from benefitting from the Program Terms and fails to do what is necessary to fulfill its contractual obligations.

Google's reliance on *Racine & Laramie, Ltd. v. Cal. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026 (1992), is misplaced. In *Racine*, there was no breach of the covenant of good faith and fair dealing because there was no express contractual obligation to negotiate modification of a concession contract. *Id.* at 1032. The court specifically noted that "[t]here is ***no obligation*** to deal fairly or in good faith ***absent an existing contract***." *Id.* However, here, a binding contract exists between Plaintiff and Google, obligating Google to perform its side of the bargain subject to the covenant of good faith and fair dealing. Google markets its Google Ads program as a tool

that advertisers can use to retain complete control over the search terms and parameters and improve the effectiveness of their advertising based on detailed SQRs. ¶¶11, 30, 32, 37, 40, 44, 58. Google has clear obligations under Section 8 of the Program Terms, which require it to invoice advertisers for payments while enabling them to dispute any charges. Yet, advertisers cannot effectively contest charges without complete transparency in their billing. Therefore, because Google fails to provide Plaintiff with sufficient detail to allow Plaintiff to determine the validity of those charges, Google breaches the covenant of good faith and fair dealing.

Also, as explained in *Daly*, "it is quite possible for a breach of the implied covenant to be based on a different breach than the contract claim." 2010 WL 4510911, at *4. Because there is no obligation to allege breach of a contractual term when pursuing a claim for breach of the implied covenant, Google's argument that Plaintiff fails to allege an express contractual term that Google has breached is irrelevant. Mot. at 23. Accordingly, the Court should deny Google's Motion to Dismiss as to the breach of covenant claim.

**F. Plaintiff's Quasi-Contract Claim Is Properly Pled in the Alternative**

Google asserts that Plaintiff's quasi-contract claim must fail because it is duplicative of its breach of contract claim. Mot. at 23. Google is wrong. It is well-established that a quasi-contract claim should not be dismissed at the pleading stage simply because it appears duplicative or superfluous to other claims. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015) (citing Fed. R. Civ. P. 8(d)(2)). "[E]ven though a plaintiff may not ultimately prevail under both unjust enrichment and breach of contract, it may plead both in the alternative." *Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*, 2011 WL 6099394, at *9 (N.D. Cal. Dec. 7, 2011). Plaintiff specifically alleges, "[i]f there is no remedy for breach of contract, then Plaintiff and Class Members are left without a remedy at law and necessarily seek relief in equity." ¶260.

In addition, even when a written contract exists, quasi-contract claims proceed if plaintiff alleges circumstances rendering the contract ***unenforceable***. *Muratore v. Am. Alternative Invs., LLC*, 2018 WL 6137620, at *4 (C.D. Cal. Apr. 2, 2018) (denying motion to dismiss where plaintiff alleged potential of invalid contract). Google's reliance on *Berlanga v. Univ. of S.F.*, 100 Cal. App. 5th 75, 79 (2024), *reh'g denied* (Mar. 15, 2024), does not lead to a different result. There, the court

dismissed the plaintiff's quasi-contract claim because "the court found [***at summary judgment***]—and the parties both acknowledge—there was a contract between student appellants and USF regarding their enrollment. The court also did not find that contract unenforceable or invalid." *Id.* at 89. Further, *Overton v. Uber Techs., Inc.*, 333 F. Supp. 3d 927 (N.D. Cal. 2018), and *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838 (N.D. Cal. 2004), are distinguishable. In both cases, the court dismissed the plaintiffs' quasi-contract claims after finding that the express terms of the agreement covered the "same subject matter" as the plaintiffs' contract claims. The enforceability of the contract was not disputed in either case as it is here.

Here, Google maintains the Program Terms impose ***no*** obligations on it whatsoever—essentially denying any enforceable contractual duties. This position creates the exact uncertainty justifying alternative pleading, particularly under an equitable quasi-contract theory. Accordingly, Plaintiff's alternative quasi-contract claim should be allowed to proceed.

### G. Plaintiff's FAL Claim Is Properly Pled

Google concedes that the FAL prohibits "any advertising device . . . which is untrue or misleading," covering "advertisement(s) or promotional practice(s) [that are] likely to deceive if [they] include[] assertions that are (1) untrue, or (2) true, but are either actually misleading or which have the capacity, likelihood or tendency to deceive or confuse the public." *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1135 (2020) (cleaned up); *Veera v. Banana Rep., LLC*, 6 Cal. App. 5th 907, 914 (2016). The FAC identifies specific false representations and omissions in Google's advertising materials that violate the FAL.

#### 1. Google Made Affirmative Misrepresentations and Omitted Information about Google Ads and SQRs

Plaintiff alleges that Google falsely represented that it "places a Google Ads user's ad in response to the specific search terms and parameters as set by the user" (¶267) and provides

> reports that will allow the user to identify search terms and parameters that are successfully triggering conversions, identify those not triggering conversions, focus on ad parameters that are successful, and identify search terms that it should exclude because those terms are triggering ad placements by Defendant that do not result in conversions or potential customers.

¶268. These representations are demonstrably ***false***: Google charges for undisclosed keywords, hides critical search terms under "Other Search Terms," and provides reports so lacking in information that they impede Plaintiff's ability to refine its searches. ¶269. "It is fundamental that every affirmative misrepresentation of fact works a concealment of the true fact." *Boyd v. SunButter, LLC*, 762 F. Supp. 3d. 931, 946 (S.D. Cal. 2025) (cleaned up).

Beyond affirmative misrepresentations, the Ninth Circuit holds "[o]missions may be the basis of claims under California consumer protections laws" when "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018).[16] Moreover, California law recognizes "'the distinction between concealment and affirmative misrepresentation is tenuous' because the force and effect is the same." *Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1254 (2018). Here, Plaintiff alleges that Google omitted material information in its representations about Google Ads and SQRs. ¶270. *Kulp v. Munchkin, Inc.*, 678 F. Supp. 3d 1169 (C.D. Cal. 2023), on which Google relies, confirms the existence of disclosure duties when defendants have "exclusive knowledge of material facts," "actively conceal[] a material fact," or make "partial representations but also suppress[] some material facts." *Id.* at 1169. All three circumstances exist here: Google alone controls what search terms get hidden, actively conceals the scope of withheld data, and makes partial representations about providing useful reports while suppressing their actual uselessness.

### 2. Whether Google's Omissions Deceived Users Is Not Properly Decided on a Motion to Dismiss

"California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (reversing FAL dismissal). Google's assertion—unsupported by any allegations in the FAC—that it complies with its representations is improper

[16] *Hodsdon* was decided ***after*** *Stewart v. Electrolux Home Prods.*, 304 F. Supp. 3d 894 (E.D. Cal. 2018), a case on which Google relies. Mot. at 25. While *Hodsdon* does not expressly overrule *Stewart's* assertion, it drives a hole through the claim that "[an] FAL claim is not cognizable when based solely on an omission of material information." 304 F. Supp. 3d at 907.

at this stage of proceedings and, in any case, creates a question of fact that cannot be resolved on a motion to dismiss. Further, Google's attempt to introduce extrinsic evidence of its purported compliance through declarations (Mot., Exs. A-B) is procedurally improper.

**3. Plaintiff's Allegations Easily Satisfy Rule 9(b)**

Plaintiff satisfies Rule 9(b) by providing allegations "'specific enough to give defendants notice of the particular misconduct.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). While in *Bodenburg v. Apple, Inc.*, 146 F.4th 761 (9th Cir. 2025), the plaintiff could not point to any statements in the agreement that were truly deceptive or false, here, Plaintiff identifies specific misrepresentations (¶¶267-268), explains their falsity (¶269), and alleges resulting harm. Furthermore, Rule 9(b)'s requirements are relaxed when defendants possess superior knowledge of the fraudulent scheme. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020); *Comm. On Child.'s Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 217 (1983) ("Less specificity is required when 'it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy.'"). Google exclusively controls its advertising platform, determines which search terms to hide, and possesses all data about these practices. It is the one who made representations on its websites and knew users would rely on them despite their falsity. Having litigated these exact issues for years in antitrust proceedings, Google cannot credibly claim confusion about Plaintiff's allegations. Plaintiff has adequately plead an FAL claim that should proceed past the pleading stage.

**H. Plaintiff Has Sufficiently Alleged a UCL Claim**

**1. Plaintiff Has UCL Standing Because it Suffered Damages**

Google's assertion that Plaintiff has not suffered any economic injury is unequivocally false and refuted by the allegations in the FAC where Plaintiff alleges that it

> ha[s] suffered injury in fact and ha[s] lost money or property as a result of the unfair competition[,] [and] . . . ha[s] been billed for the placement of [its] ads despite Defendant's failure to provide information necessary . . . to identify ad placements that do not fall within [its] search terms to not squander [its] advertising budget on ads that should not have been triggered and/or search terms and parameters that do not result in sales.

¶297. Additionally, Plaintiff has alleged ***direct*** harm including improper charges (loss of money) and the inability to revise its search parameters causing it to incur costs for useless ad placement. "[L]ost money or property–economic injury–is itself a classic form of injury in fact." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011). Further worsening its situation, Google ignores Plaintiff's well pled allegations and wrongly claims that Plaintiff failed to allege that it did not receive the benefit of the bargain it contracted for. *See* ¶¶40, 44-45, 47-49, 52-58. Consistent with *Kwikset*, Plaintiff alleges it (a) overpaid for Google Ads and (b) had no option other than to use Google Ads, incurring costs that would otherwise have been unnecessary.

Google also disingenuously asserts that Plaintiff has not sufficiently shown that its damages resulted from Google's actions. Claiming that Plaintiff did not specify its chosen bidding parameters, Google attempts to distract from the core issue and improperly incorporates purported facts outside of Plaintiff's FAC. No matter which option Plaintiff selected, it is unable to evaluate the effectiveness of its ad campaigns or search parameters without information about the "Other Search Terms"—data that only Google can provide. Accordingly, Plaintiff has sufficiently pled damages, which flow from Google's misconduct.

### 2. The Allegations Against Google Plausibly Demonstrate Fraudulent, Unlawful, and Unfair Business Acts

California's UCL "prohibits unfair competition, including unlawful, unfair, and fraudulent business acts. The UCL covers a wide range of conduct." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). Indeed, the UCL and FAL "deliberately broaden the types of business practices that can properly be found to constitute unfair competition . . . and eliminate a number of elements that were required in common law actions for fraud." *Nationwide Biweekly Admin., Inc. v. Super. Ct.*, 9 Cal. 5th 279, 322 (2020). "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams*, 552 F.3d at 938.

#### a. Google's Conduct Is Fraudulent

In connection with class action complaints, courts have recognized that "a violation of the FAL . . . is also a violation of the fraudulent prong of the UCL." *Hadley v. Kellogg Sales Co.*, 273

F. Supp. 3d 1052, 1063 (N.D. Cal. 2017). Thus, as set forth in §IV(G), *supra*, Google's violation of the FAL satisfies the fraudulent prong of the UCL.

**b. Google's Conduct Is Unlawful**

"By proscribing any unlawful business practice, [the UCL] 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999) (cleaned up). Therefore, any practice that violates the FAL is also prohibited by the UCL. *People v. Ashford Univ., LLC*, 100 Cal. App. 5th 485, 507 (2024). By falsely claiming that Google would allow advertisers to control their own advertising and change advertising parameters to optimize ad spend, and that information regarding the "Other Search Terms" was excluded due to low search volume or privacy concerns, Google repeatedly misled customers and violated the FAL, and therefore also violated the UCL.

**c. Google's Conduct Is Unfair**

"The unfair prong of the UCL 'creates a cause of action for a business practice that is unfair even if not proscribed by some other law.'" *Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 844 (N.D. Cal. 2022). There are two tests to determine whether conduct is unfair:

> Some courts apply a balancing test in which the court "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." . . . Others apply the "tethering test," which asks whether the unfair act is "tethered to some legislatively declared policy" or whether there is "proof of some actual or threatened impact on competition."

*Id.* at 844-45. As in *Day*, "[a]t the pleading stage, Plaintiff's allegations suffice under either test." *Id.* at 845.

***First***, under the balancing test, "'an unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *May v. Google LLC*, 2024 WL 4681604, at *12 (N.D. Cal. Nov. 4, 2024). Here, the District Court in *Google Antitrust I* noted that Google started dumping searches into "Other Search Terms" "notwithstanding substantial projected data loss for advertisers and knowing that specific major advertisers, like Expedia and Booking.com, had stated they would be harmed." ¶55 (citing *Google Antitrust I*, 747 F. Supp. 3d at 84). Plaintiff further

alleges that "[t]he less fulsome SQRs negatively impacted advertisers, who already have limited insight into how Google's auctions work." ¶57 (citing *Google Antitrust I*, 747 F. Supp. 3d at 85). Google's asserted justifications are false. ¶¶67-76. In fact, "Google's own records show that the privacy rationale was suspect." ¶¶75-76 (citing *Google Antitrust I*, 747 F. Supp. 3d at 84). That court also noted that "Google's internal emails suggested that they "could [just] turn[]" the Other Search Terms issue into a "[privacy-focused thing] without a lot of thought," "queries are not PII, even if I am the only person ever to search for your SSN," and "queries aren't PII." ¶76 (citing *Google Antitrust I*, 747 F. Supp. 3d at 84.). Because there is ***no*** justification or utility for Google's decision in 2020 to start lumping large numbers of searches under "Other Search Terms," the harm suffered by Plaintiff and other users far outweighs any purported utility. ¶287.

***Second***, "[t]he tethering test is satisfied if Plaintiff identifies a practice that 'offends an established public policy.'" *Day*, 580 F. Supp. 3d at 845. "Plaintiffs need merely to show that the effects of defendant's conduct 'are comparable to or the same as a violation of the law, or otherwise significantly threaten or harm competition.'" *May*, 2024 WL 4681604, at *12. "[T]he word 'unfair' in [the UCL] means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns*, 20 Cal. 4th at 187. Plaintiff alleges that Google has "abus[ed] its role as a monopolist in the General Search Text Ads Market, in violation of the Sherman Act" consistent with the findings in *Google Antitrust I* and *Google Antitrust II*, "that Google Ads users: (a) overpaid for Google Ads; and (b) had no option other than to use Google Ads, costing money or property that would otherwise have been unnecessary." ¶¶290-291. Google's wrongful actions are directly tethered to its status as a monopolist in violation of the Sherman Act and satisfy the tethering test. Accordingly, Plaintiff pleads all necessary elements of a claim for violation of the UCL.

**I. Declaratory Relief Is Necessary**

"'A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the parties under a written instrument or with respect to property and requests that the rights and duties of the parties

be adjudged by the court.'" *Adam v. McFarlane*, 2015 WL 12655552, at *5 (C.D. Cal. June 1, 2015). Plaintiff alleges that the Arbitration Agreement is unenforceable in its entirety. By boldly asserting that the arbitration agreement and class action waiver are enforceable (Mot. at 31), Google itself demonstrates that there exists an actual "case or controversy" for which the Court should exercise its discretion to resolve through declaratory relief. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005). Plaintiff's request for declaratory relief is well-founded because the FAC expressly and unequivocally requests that the Court enter a judgment declaring the Damages Limitation and arbitration provision including its class action waiver unenforceable. ¶307.

## V. CONCLUSION

Google's Motion should be denied in its entirety. In the event the Court grants some of all of Google's Rule 12(b)(6) motion, Plaintiff requests leave to amend the FAC to address and cure any pleading deficiencies identified by the Court.

DATED: December 4, 2025

ROBBINS GELLER RUDMAN
& DOWD LLP
PAUL J. GELLER (admitted *pro hac vice*)
STUART A. DAVIDSON (admitted *pro hac vice*)
MARK J. DEARMAN (admitted *pro hac vice*)
ANNY M. MARTIN (*pro hac vice* forthcoming)

*s/ Stuart A. Davidson*
STUART A. DAVIDSON

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561/750-3000
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com
amartin@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
shawnw@rgrdlaw.com

WITES & ROGERS, P.A.
MARC A. WITES (admitted *pro hac vice*)
MICHELE M. DESOER (119667)
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: 954/933-4400
mwites@witeslaw.com
mdesoer@witeslaw.com

Attorneys for Plaintiff