United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PVC FENCE WHOLESALE, LLC,
Plaintiff,

v.

GOOGLE LLC,
Defendant.

Case No. 25-cv-05480-PCP

**ORDER COMPELLING ARBITRATION**

Re: Dkt. No. 36

Plaintiff PVC Fence Wholesale, LLC is a company that purchases online advertisements from defendant Google LLC through the Google Ads program. PVC Fence filed this putative class action to challenge "Google's unlawful practice of charging its customers for alleged advertising" without providing sufficient "information supporting or justifying the charges" (i.e., without always specifying the context in which Google displayed the advertisements). Google now moves to strike PVC Fence's first amended complaint, to compel arbitration of PVC Fence's claims, and, in the alternative, to dismiss PVC Fence's first amended complaint. For the reasons below, the Court denies the motion to strike, grants the motion to compel arbitration, and denies the motion to dismiss based on the parties' agreement to submit such issues to the arbitrator rather than the Court.

**BACKGROUND**

This action concerns Google's online advertising program: Google Ads. Through that program, customers can bid to place targeted advertisements on Google's search engine in response to specific queries submitted by users. Customers pay on a "per click" basis—that is, Google charges customers a fee only if a user actually clicks on the advertisement. PVC Fence, a Florida-based company, is a Google Ads customer that uses the program to advertise its fencing materials for sale.

United States District Court
Northern District of California

Google requires all Google Ads customers to agree to certain terms. In September 2017, Google added an arbitration provision to those terms, requiring binding individual arbitration of "all disputes and claims between Google and [the] Customer" that "arise out of or relate in any way to the [Ads] Program or [Ads] Terms." The arbitration provision also included a "30-day opt-out period," allowing customers to opt out of the arbitration provision by "notify[ing] Google" through a hyperlinked webform "within 30 days of the first acceptance date of any version of the[] Terms containing an arbitration provision." In addition to containing an arbitration provision in the body of the terms, the September 2017 terms included a notice in the first paragraph that the new terms "require the use of binding individual arbitration to resolve disputes rather than jury trials or class actions." The first paragraph also instructed customers that they "may opt out of the requirement to arbitrate disputes by following the instructions in [the relevant section] within 30 days of the first acceptance date of any version of these Terms containing an arbitration provision."

PVC Fence first created a Google Ads account in 2011, before the arbitration provision was implemented in September 2017. According to the declaration of Armete Mobin, a legal specialist on the Google Ads legal team, Google provided notice of the new arbitration provision to such pre-existing Google Ads customers through (1) a public blog post in August 2017, (2) direct emails to Google Ads customers, and (3) "an alert displayed to advertisers when they logged into their accounts." "Each of these notices contained the same or substantially similar language" and explained that Google was "rolling out new Terms and Conditions" including, "[i]n the U.S. … a provision to use arbitration to resolve disputes rather than jury trials or class actions." The notices instructed customers that they could "[f]ollow the instructions in the dispute resolution section of the terms to opt-out of this provision." The notices then provided a link to "review and accept" the new terms. Upon clicking the link, customers were taken to a page with the full terms in a scroll-box, where they were prompted to accept or reject the September 2017 terms. At the top of the page was another notice asking customers to "[p]lease review these terms carefully" as "[t]hey include the use of binding arbitration to resolve disputes rather than jury trials or class actions." The notice told customers to "follow the instructions in the terms below if you wish to

United States District Court
Northern District of California

opt out of this provision." In addition to providing opt-out information in the body of the terms, the notice at the top of the page also included a hyperlink labelled "Learn more," which linked to the webform to opt out of the arbitration provision.

"Google's records reflect that [PVC Fence] accepted the September 2017 Terms," including the arbitration provision, "on October 25, 2017." And Google's records "do not reflect any attempts by … PVC Fence[] to opt out of the Arbitration Provision." Ms. Mobin attested that, after accepting the arbitration provision, "PVC Fence continued to purchase advertising on the Google Ads platform."

PVC Fence filed this action against Google in 2025. Its operative first amended complaint alleges that Google falsely promises Google Ads customers that they may control the specific search parameters in response to which their advertisements will be displayed. According to PVC Fence, Google in fact occludes many of the queries in response to which advertisements are displayed, preventing customers like PVC Fence from exercising full control.

On behalf of a putative class of Google Ads customers, PVC Fence asserts claims for (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) quasi-contract; (4) false advertising in violation of California's False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500; (5) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and (6) a declaratory judgment. PVC Fence seeks monetary relief in the form of damages, restitution, and reasonable attorney's fees. It also seeks injunctive relief ordering Google to "cease and desist from publishing false, deceptive, and misleading marketing statements related to the Google Ads product and service"; "cease refusing to provide to [PVC Fence] and all current and future Google Ads users necessary information concerning the 'Other Search Term'"; and "cease making false claims in its advertising promulgated towards Google Ads users and potential users concerning the information it provides." Finally, PVC Fence seeks a declaration that Google's challenged practices are unlawful and that various provisions in the Google Ads terms are unenforceable.

Now before the Court is Google's motion to strike the first amended complaint, to compel arbitration of this action, and, in the alternative, to dismiss the first amended complaint.

**LEGAL STANDARD**

The Federal Arbitration Act (FAA) provides that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As this language makes clear, "an arbitration agreement is a contract like any other." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). The FAA "requires courts to rigorously enforce agreements to arbitrate." *Johnson v. Walmart, Inc.*, 57 F.4th 677, 681 (9th Cir. 2023).

In deciding a motion to compel arbitration, a court must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). But even if the answer to both questions is yes, the arbitration may be subject to "generally applicable contract defenses" like "fraud, duress, or unconscionability." *Lim v. TForce Logs.*, LLC, 8 F.4th 992, 999 (9th Cir. 2021). In determining whether a valid and enforceable arbitration agreement encompasses the parties' dispute, the Court applies the summary-judgment standard. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Thus, if the Court determines that a genuine dispute of material fact exists as to existence or enforceability of an agreement to arbitrate a plaintiff's claims, that arbitrability dispute generally must proceed to trial. *See* 9 U.S.C. § 4.

**ANALYSIS**

**I. Google's motion to strike the first amended complaint is denied.**

After Google moved to dismiss PVC Fence's original complaint, the parties stipulated to an extension of PVC Fence's deadline to file an "opposition" to that motion. But rather than file an opposition, PVC Fence filed its first amended complaint. Google therefore moves to strike the first amended complaint as untimely.

PVC Fence concedes that the parties' stipulation did not expressly permit it to file the first amended complaint and that it filed the first amended complaint after the deadline for amendment as a matter of course under Federal Rule of Civil Procedure 15(a). But PVC Fence asks the Court to grant an extension of time *nunc pro tunc* because its failure either to seek leave to amend or to

secure a stipulation authorizing its belated amendment was mistaken. *See Hayes v. District of Columbia*, 275 F.R.D. 343, 346 (D.D.C. 2011).

Given the liberal amendment policy embodied in the federal rules and "[i]n the interest of efficient judicial administration," *see id.*, the Court grants PVC Fence's requested *nunc pro tunc* extension. The Court therefore denies Google's motion to strike the first amended complaint.

## II. Google's motion to compel arbitration is granted.

Google asserts that PVC Fence's claims are subject to the arbitration provision added to the Google Ads terms in September 2017. PVC Fence does not dispute that it agreed to the arbitration provision and that the provision covers this dispute. Instead, PVC Fence argues that the arbitration provision is unenforceable on two grounds. First, PVC Fence argues that the arbitration provision is unconscionable. Second, it argues that the provision invalidly prohibits it from pursuing claims for public injunctive relief. Both arguments fail.

### A. The arbitration provision is not unconscionable.

PVC Fence contends that the arbitration provision is unconscionable. In California, "[a] contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019). Unconscionability includes both "a procedural and a substantive element." *Id.* The procedural element addresses the process by which the parties formed the contract and the substantive element addresses the fairness of the contract's terms. *Id.* "[P]rocedural and substantive unconscionability must both be present in order for a court ... to refuse to enforce a contract or clause," but "they need not be present in the same degree." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (citation modified).

Whether or not the arbitration provision is substantively unconscionable, PVC Fence has offered no evidence that it is procedurally unconscionable. PVC Fence's procedural unconscionability argument boils down to a contention that the September 2017 terms are an adhesive contract that PVC Fence had no opportunity to negotiate. But as detailed above, Google has presented evidence that the arbitration provision contained an unambiguous opt-out provision

allowing PVC Fence to decline the arbitration provision within 30 days of entering into the contract with Google. This Court has already explained that such an opt-out provision in Google's terms defeats any argument that an arbitration agreement is adhesive. *See Cal. Crane Sch., Inc. v. Google LLC* ("*Crane III*"), 722 F. Supp. 3d 1026, 1034 (N.D. Cal. 2024), *aff'd*, No. 24-4604, 2025 WL 2541913 (9th Cir. Sept. 4, 2025); *see also Cal. Crane Sch., Inc. v. Google LLC* ("*Crane I*"), 621 F. Supp. 3d 1024, 1030 (N.D. Cal. 2022); *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 877 (N.D. Cal. 2018) ("This Court finds that the 2017 [Terms] provided a meaningful opportunity to opt out of the arbitration provision."), *aff'd*, 816 F. App'x 68 (9th Cir. 2020).

PVC Fence's argument that the arbitration provision is adhesive notwithstanding the opt-out provision is unavailing.

First, PVC Fence insists that Google's "monopoly over online search advertising leaves advertisers" like PVC Fence "with no viable alternatives" and "effectively eviscerates any negotiating power advertisers may have." But as this Court has previously stated:

> Google's opt-out provision … undercuts [PVC Fence]'s position that Google had overwhelming bargaining power with respect to the arbitration agreement. In contrast to an unconscionable take-it-or-leave-it contract, the arbitration agreement here allowed a customer to take-it, opt-out-of-arbitration-and-then-take-it, or leave-it. Even if other terms of Google's Terms of Service were found to be adhesive, the same cannot be said of the Terms' arbitration provisions, which the Court must consider separate and apart from the remainder of the contract. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.").

*Crane III*, 722 F. Supp. 3d at 1034–35.

Second, PVC Fence argues that "even if an agreement is not adhesive, it can still be found sufficiently surprise-laden or oppressive to implicate procedural unconscionability." *See Rios v. HRB Digital LLC*, No. 25-cv-03530, 2025 WL 3003768, at *7 (N.D. Cal. Oct. 27, 2025). That may be true in some cases, such as where a defendant exerts pressure on a plaintiff not to exercise a right to opt out or where the opt out option is illusory. *See id.* at *8 (collecting such cases). In *Rios*, for example, another court in this district found that an arbitration agreement with an opt-out provision was unconscionable, though not adhesive, because the opt-out provision required

consumers to "submit a new opt-out request each year" such that "even users who once opted out may be swept back into arbitration unless they repeatedly navigate the process annually." *Id.* at *6.

By contrast, PVC Fence has offered no evidence that Google pressured advertisers not to opt out or otherwise made it difficult to opt out. PVC Fence asserts that Google did so by requiring advertisers to complete a "Sisyphean task" involving "multiple steps" to review the arbitration provision, which Google then presented in "a miniscule copy of the entirety of the Program Terms." Yet those assertions are based on the allegations in PVC Fence's unverified first amended complaint, which are not evidence. *See Hansen*, 1 F.4th at 670 (noting that a motion to compel arbitration is reviewed under the summary-judgment standard); *Moran v. Selig*, 447 F.3d 748, 759–60 (9th Cir. 2006) (noting that neither an unverified complaint nor the parties' opposition or reply briefs may be considered as evidence at the summary-judgment stage). And as detailed above, Google has offered substantial evidence that it provided unambiguous notice to advertisers of their ability to opt out in multiple places, including at the top of the page on which Google required advertisers to accept the September 2017 terms.

Accordingly, PVC Fence has not raised a genuine dispute as to the unconscionability of the arbitration provision, and it cannot avoid arbitration on that ground.

### B. None of PVC Fence's claims seek public injunctive relief

PVC Fence also argues that its UCL and FAL claims cannot be compelled to arbitration because those claims seek public injunctive relief. Under the *McGill* rule, an agreement to waive the right to seek public injunctive relief in any forum, including arbitration, cannot be enforced as a matter of California law. *See McGill v. Citibank, N.A.*, 2 Cal.5th 945, 956 (2017); *see also Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 830–31 (9th Cir. 2019) (holding that the FAA does not preempt this rule). Google concedes that PVC Fence cannot pursue public relief in arbitration under the provision at issue here, but contends that PVC Fence does not seek any form of public injunctive relief subject to the *McGill* rule.

As the Court has explained elsewhere, public injunctive relief "must have the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public, cannot constitute the pursuit of representative claims or relief on behalf of others, and should

United States District Court
Northern District of California

present diffuse benefits to the general public as a whole." *Crane III*, 722 F. Supp. 3d at 1036 (citing *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 541–42 (9th Cir. 2021)). Or as the Ninth Circuit has explained, such relief is "limited to forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons, and that do so without the need to consider the individual claims of any non-party." *Hodges*, 21 F.4th at 544. So where relief would only benefit a group of defendant's customers, or a particularly "discrete class of persons who are similarly situated to the plaintiff[]," it does not qualify as public injunctive relief. *See id.* at 545; *see also McGill*, 2 Cal.5th at 955 (explaining that public injunctive relief "by and large benefits the general public" and "benefits the plaintiff, if at all, only incidentally and/or as a member of the general public" (citation modified)).

Here, PVC Fence's FAL and UCL claims do not seek diffuse benefits to the public as a whole—they seek to benefit plaintiff and other similarly situated (current or future) users of Google Ads. For example, PVC Fence's FAL claim "seek[s] restitution" and "injunctive relief … requiring Google to cease and desist from publishing false, deceptive, and misleading marketing statements related to the Google Ads product and service." PVC Fence's UCL claim similarly seeks "restitution" and "declaratory and injunctive relief" that would require Google to (1) "cease refusing to provide [PVC Fence] and [other] Google Ads users necessary information" concerning placement of their advertisements and (2) "cease making false claims in its advertising promulgated towards Google Ads users and potential users concerning the information it provides." This requested relief would benefit only current and future Google Ads users, who allegedly suffer harm from Google's failure to provide advertisement-placement information and its misrepresentations about the information it offers to advertisement purchasers.

Where the California Supreme Court has held that injunctions prohibiting deceptive advertising practices amounted to public relief, however, the challenged practices were in markets in which nearly all individuals participate, such that the requested relief would necessarily benefit the public as a whole. *See, e.g.*, *McGill*, 2 Cal.5th at 952, 956–57 (consumer credit market); *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 315–16 (2003) (healthcare); *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1072, 1080 (1999) (same). PVC Fence offers no evidence

that most consumers participate in the advertisement-purchasing market, so there is no reason to conclude that relief directed to advertisement purchasers would provide an identifiable benefit to the general public.

At the hearing on this matter, PVC Fence argued that its requested relief constitutes public injunctive relief because it will have positive downstream effects on the market as a whole. The Court has previously held that prospective relief with such market-wide effects may amount to a public injunction. *See Crane III*, 722 F.Supp.3d at 1036–37. But in *Crane III*, the Court did so in the face of specific arguments describing how the relief would result in such market-wide benefits. The plaintiff in that case explained that its requested injunction prohibiting monopolistic activity in the online-search market "would provide diffuse benefits to the public by potentially bolstering competition in the search and search advertising markets, increasing consumer choice, improving data privacy, and decreasing costs for both general search engine users and digital advertisers like" the plaintiff. *Id.* at 1036. And the plaintiff detailed how "[g]reater competition could" in turn "accelerate innovation, bringing positive downstream effects on internet users as a whole." *Id.* at 1036–37. PVC Fence has provided no such explanation here. Its speculative and general assertions of downstream market-wide effects are insufficient to transform the particularized relief it seeks into a public injunction.

Because PVC Fence has not raised a genuine dispute about whether the arbitration provision is enforceable, either based on unconscionability or under the *McGill* rule, the Court must enforce the arbitration provision to the FAA. Google's motion to compel arbitration is therefore granted.

## III. Google's motion to dismiss the first amended complaint is denied.

In the alternative to its motion to compel arbitration, Google asks that the Court dismiss PVC Fence's first amended complaint for lack of standing and failure to state a claim. Because the parties have agreed that an arbitrator, and not the Court, must address such merits issues, the alternative motion is denied without prejudice. *Cf. Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (explaining that "a court may not decide a merits question that the parties have delegated to an arbitrator").

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court denies Google's motions to strike and to dismiss and grants its motion to compel arbitration. At Google's request, the Court stays the proceedings in this case pending mediation or arbitration. *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). By no later than March 1 and September 1 of each year, Google shall provide the Court with an update on the status of the arbitration proceedings.

**IT IS SO ORDERED.**

Dated: March 16, 2026

P. Casey Pitts
United States District Judge